# EXHIBIT A

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

**JOSEPH E. STIGLITZ**
**305 Riverside Drive, Apt 8B**
**New York, NY 10025**

       **Plaintiff**

       vs.

**RITA M. BANK**
**1900 M Street, N.W.**
**Suite 600**
**Washington, D.C . 20036-3565**

       **Defendant**

05-0008545

Case No.:

```
RECEIVED
CIVIL CLERK'S OFFICE

AUG 1 7 2005

SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC
```

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT FOR PROFESSIONAL NEGLIGENCE

    The Plaintiff, Joseph E. Stiglitz, brings this legal malpractice action against Rita M. Bank for professional negligence arising out of the legal representation of the Plaintiff and legal advice regarding divorce, and related legal representation.

### PARTIES AND JURISDICTION

    1.    Plaintiff, Joseph E. Stiglitz, (hereafter "Stiglitz" or "Plaintiff") formerly a resident of Washington, D.C. is currently a resident of New York City, New York.

    2.    Defendant, Rita M. Bank (hereafter "Bank" or "Defendant") is an attorney licensed to practice law in the District of Columbia who has actively engaged in the practice of matrimonial law in the District of Columbia during the year 2000 through the present with a principal office in the District of Columbia.

    3.    The legal services provided by Bank to Stiglitz were substantially performed in Washington, D.C.  Also, Bank and Stiglitz entered into an engagement

05 1826

**FILED**

SEP 1 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

agreement on or about August 30, 2000 which provided inter alia that Bank would perform legal services for Stiglitz as the "responsible attorney" for his representation in his divorce and Stiglitz agreed to Washington, D.C. as the forum in which any dispute regarding their agreement may be litigated.

## FACTUAL ALLEGATIONS AND CLAIMS

4.     The Plaintiff, Stiglitz, was married on December 23, 1978 in New York, New York to Jane Hannaway (hereafter "Hannaway"). The Plaintiff had been married and divorced once before this marriage and had two children by his prior marriage.

5.     There are two children of the marriage between Stiglitz and Hannaway, namely: Edward Hannaway Stiglitz (DOB 4/17/80) and Julia Hannaway Stiglitz (DOB 5/16/82).

6.     Stiglitz and Hannaway had separated approximately late May to early June of 2000, and without Stiglitz's knowledge Hannaway consulted with Bank or her Law Firm about potential legal representation related to divorce before Hannaway hired Sanford K. Ain (hereinafter "Ain") as her divorce attorney in approximately June of 2000. Upon retaining Bank for divorce representation in August of 2000, Stiglitz was not informed about Bank's prior consultation with Hannaway and any possible conflict that may have caused.

7.     From the beginning of the attorney/client relationship with Bank, Stiglitz repeatedly requested Bank to timely proceed to file for divorce at the earliest possible time in Washington, D.C. in order to limit the financial exposure he would incur if the divorce proceedings were to be protracted as he anticipated that certain future publication projects he was working on, along with the potential award of the Nobel Prize in

Economics in October of 2001 would generate income which he wished to protect from being awarded in a divorce to Hannaway.

8.    From the beginning of the attorney/client relationship, Bank assured Stiglitz that although it is typically difficult to settle a divorce matter within the first few months of the representation, nonetheless, Bank would negotiate a settlement within a short time thereafter; she assured Stiglitz that matters would be resolved within a year, so that there would be little difficulty in completing the divorce by October of 2001 by filing a lawsuit in Washington D.C. on Stiglitz' behalf.

9.    After negotiations continued beyond the initials 6 months of the representation, Stiglitz repeatedly expressed his concern to Bank that he wanted to limit Hannaway's claims including his on-going incomes paid into the marital estate to be potentially divided upon divorce.    Whereupon, Bank assured Stiglitz that he would be better off continuing to negotiate rather than filing suit.

10.    At no time during Bank's continued legal representation from August of 2000 through September 2002 did Bank ever inform Stiglitz that in accordance with the matrimonial law in the District of Columbia all assets and incomes accrued after the date of a divorce hearing would not be included in the marital estate to be divided between Stiglitz and Hannaway.    On the contrary, Bank informed Stiglitz that continued negotiation beyond April 1, 2002 would not put him into jeopardy of sharing income earned after that date, so long as such income was deposited in a separate bank account; and following Bank's advice, Stiglitz thereupon opened a new bank account.  Because Stiglitz was not informed that continued negotiation without filing suit would extend the time during which income earned and assets acquired would continue to be treated as

- 3 -

marital assets. Stiglitz acquiesced to Bank's advice to continue negotiations without first filing for divorce in the District of Columbia until early September, 2002, when he explicitly instructed her to file suit, if there was not a meaningful response to the offer of settlement that he had made in early July, 2002.

11.   As of September 2001, Stiglitz accepted a position at Columbia University in New York City as a professor of economics. At various times, he consulted with Bank about the various venues in which a suit might be filed before choosing to designate New York as his permanent residence. States considered were California (where they still held a home, where Stiglitz was a registered voter, and where they had spent much of their marital life before coming to D.C. to serve in government); New York, and in D.C. He explicitly expressed the concern about one venue or the other giving an advantage to him or to his wife. He was never advised against establishing residence in New York, that establishing residence in New York would expose him to a suit in New York, or that a suit in New York would have an adverse consequence on the economic distribution between Hannaway and Stiglitz. He was never informed that as of September 1, 2002, he would be exposed to a suit filed in New York, and that therefore he should consider filing in D.C. On the contrary, even after September 1, 2002 he was advised not to file a suit in D.C. and Bank erroneously informed Stiglitz that a suit filed in New York would not have an adverse affect on the outcome of the economic distribution between Stiglitz and Hannaway upon divorce. He was informed that it would not matter whether divorce proceedings were filed in Washington, D.C. or New York from a financial benefit standpoint for Stiglitz. When the subject of enhanced earnings or celebrity status was raised, he was erroneously informed that it would not be relevant.

- 4 -

12.     Prior to October 13, 2001, Stiglitz continuously urged Bank to take action because of the possibility that he would be the recipient of the Nobel Prize in economics and he did not wish to have Hannaway share in the prize funds.

13.     Notwithstanding Stiglitz's concerns expressed to Bank, Bank continued to advise strongly against filing suit. She also continued to negotiate with the attorney for Hannaway, Ain, throughout the Fall and Winter of 2001 into the Spring of 2002.

14.     After Stiglitz established residency in New York in September 2001 on or about October 13, 2001, it was announced that he had been designated as a recipient of the Nobel Prize in economics which resulted in the receipt of prize funds in excess of $300,000.00 in January 2002.   In spite of the increased exposure to claims for future enhanced earnings or celebrity status that might be made as a result of international recognition for his achievements in his field of economics were a suit filed in New York, Banks' advice remained unchanged –she remained unconcerned about his establishing or maintaining residence in New York, and about the potential threat of a suit filed in New York.  She continued to advise not to file suit, and eventually failed to carry out an explicit request to file suit.

15.     Between January 2002 and July 2002, settlement offers and counter offers continued to be exchanged between Bank and Ain on behalf of their respective clients during which time Bank advised Stiglitz not to accept an offer made by Ain on behalf of Hannaway to settle for ½ of all of their assets, including one half of everything that had accrued during the marriage and one half of pension funds claimed by Stiglitz to be premarital assets.  Bank failed to advise Stiglitz that in the event that Hannaway chose to file for divorce in New York City as of September 2002 after Stiglitz had been a resident

- 5 -

there for one year, that Hannaway would be in a position to claim earnings "enhancement" and "celebrity status" in New York which would vastly increase the amount of a potential award to Hannaway from Stiglitz's future incomes from consulting, public speaking, and publications which were then being published and which were contemplated to be published in the future. While noting the costs of filing in Washington D.C., she also failed to inform him of the large costs associated with defending oneself in New York against a claim for enhanced earnings and/or celebrity status.

16.    Had Bank informed Stiglitz of his potential exposure for economic loss and extreme legal expense which would be incurred by such a proceeding in New York City, Stiglitz would have rejected Banks advice not to accept Hannaway's offer, and considered the settlement offer proposed by Ain on behalf of Hannaway in the spring of 2002 and saved millions of dollars in legal fees, expert fees, and future incomes and royalties over the ultimate outcome which resulted after an action for divorce was filed in New York City by Hannaway against Stiglitz on or about September 16, 2002.

17.    Throughout the Spring and Summer of 2002, Stiglitz continued to demand that Bank file suit in Washington, D.C. immediately and ultimately Bank communicated on behalf of Stiglitz that she would file such a suit if the parties had not settled their differences. Shortly after September 3, 2002, Bank prepared a signed Complaint and forward same to Ain with the threat of filing within one week.

18.    Finally, Stiglitz gave an explicit instruction to Bank to file suit on September 13, 2002 if a meaningful offer was not received by then. No offer was received. Bank never filed suit on Stiglitz's behalf as he had instructed her to do and

instead he was served with the pleading filed in New York on or about September 17, 2002 without suit ever having been filed by Bank on his behalf in Washington, D.C.

19.     On or about October 3, 2002, Bank informed Stiglitz for the first time that she was going to join with Ain in a law firm and she could not represent Stiglitz's interest further.

20.     After October 3, 2002, Stiglitz was informed that Ain and Bank had had discussions about merger beginning as early as the Spring or early Summer 2002 and that Ain had so informed his client, Hannaway, that a conflict existed and that she would have to obtain new counsel weeks, and perhaps months before Stiglitz was so informed by Bank. Hannaway responded to this information by seeking new counsel and filing for divorce in New York.

21.     During the Spring and Summer of 2002, a book authored by Stiglitz entitled Globalization and It's Discontents was published and became a global best seller ultimately being translated in approximately 28 languages. Thereafter, in October 2002, Stiglitz authored a book entitled Roaring Nineties which was also well received along with other publications authored by Stiglitz in this same time period and thereafter.

22.     Thereafter, in the New York proceedings, Hannaway, through subsequent counsel, claimed future royalties from Stiglitz's publications and enhanced earnings due to Stiglitz's "celebrity status." Defending against these claims in the New York proceedings resulted in extensive time commitment by Stiglitz valued in excess of One Million Dollars ($1,000,000.00); legal fees and expert witness fees in excess of One Million Dollars ($1,000,000.00); and an ultimate settlement with Hannaway in excess of Five Hundred Thousand Dollars ($500,000.00) more than Stiglitz would have incurred in

the settlement offer by Hannaway in 2002. In addition, Stiglitz had incurred numerous additional expenditures and losses as a direct and proximate result of the legal advice given to him by Bank. Bank's contemplation of joining Ain in a law firm, and eventual decision to do so, created a conflict of interest which Bank failed to disclose to Stiglitz prior to October 3, 2002, tainting her advice not to file suit and her failure to follow Stiglitz' express instructions to file suit in Washington D.C.

23.    At all times relevant hereto, the Defendant Bank held herself out to Stiglitz and the public as an attorney knowledgeable in handling domestic relations and divorce litigation in Washington, D.C. and the Superior Court. Bank owed Plaintiff Stiglitz that degree of learning and diligence ordinarily possessed and used by members of her profession practicing on the same or similar circumstances in the divorce and domestic relations field in the District of Columbia. At no time did she inform Stiglitz that she was not competent to provide advice about the economic consequences of the choice of different venues; and at no time did she advise him to seek counsel either in New York or California about the possibility of his or Hannaway filing suit in those jurisdictions or the consequences which might result.

24.    Bank failed to use that degree of care and skill which a reasonably competent attorney acting under similar circumstances would use and was negligent in at least the following ways by failing to timely and competently:

(a)  advise Plaintiff that Bank or her Law Firm had previously consulted with Hannaway about divorce;

- 8 -

(b) advise Plaintiff that a marital distribution in the District of Columbia would be as of the date of the hearing on divorce, and that by filing earlier, one enhanced the chance of an earlier hearing;

(c) advise plaintiff not to establish permanent residency in New York;

(d) advise Plaintiff of his exposure to a risk of a suit being filed in New York as of one year after establishing residence in New York;

(e) advise Stiglitz of the disadvantageous economic outcome he would experience if Hannaway were to file for divorce in New York City, New York as of September 2002 because of that jurisdiction's marital law regarding "celebrity status" and "enhanced earnings" recovery of Stiglitz's future royalties, speaking, and consulting fees or of the extra legal and other costs he might experience in trying to defend himself against such a disadvantageous economic outcome;

(f) pursue settlement negotiations vigorously, and when it became clear that such negotiations were not proceeding successfully, file suit in a timely way, in order to protect the substantial income that Stiglitz was receiving, that Stiglitz was likely to receive upon the receipt of the Nobel Prize, a concern which Stiglitz apprised her 16 months before the award, or that Stiglitz was likely to receive upon the publication of his book Globalization;

(g) follow Stiglitz's instructions to file a Complaint for Divorce in Washington, D.C., and, if there were reason for her refusal or inability to file suit at the time requested, inform him of the reason for her refusal or inability to file suit, so that he could obtain alternative counsel;

- 9 -

(h)  advise Stiglitz in July 2002 to accept the proposed settlement offer by Ain on behalf of Hannaway for approximately ½ of the marital assets in lieu of subjecting Stiglitz to greatly increased exposure under divorce law of New York City which also entailed greatly increased legal fees, expert witness fees, and lost opportunity costs for time incurred by Plaintiff Stiglitz;

(i)  disclose a conflict of interest from the time Bank first entertained joining Ain in the practice of law in order to Stiglitz to have adequate opportunity to obtain independent counsel who would diligently and zealously protect his interests.

25.    Banks was otherwise negligent, without any negligence on the part of Stiglitz directly contributing thereto and Bank's negligence was not discovered by Stiglitz until after the divorce proceedings were filed on September 16, 2002.

26.    As a direct and proximate result of Bank's negligent breach of duties as described hereinabove, Stiglitz was damaged by the losses incurred in the payment of additional attorney's fees, expert fees, litigation costs, lost opportunity costs for his time, and increased payments to Hannaway including those costs and payments incurred in order to resolve her claims for "celebrity status" and "enhanced earnings" for royalties, consulting and speaker fees, attorney's fees, and costs incurred by reason of the divorce proceedings filed in New York City, New  York, on September 16, 2002 and was otherwise damaged.

WHEREFORE, the Plaintiff Joseph E. Stiglitz demands judgment against the Defendant Rita M. Bank in the amount of Five Million Dollars ($5,000,000.00) including prejudgment interests, plus costs and post judgment interests and any other relief which this Court finds him entitled.

Respectfully Submitted,

David G. Whitworth Jr., #224139
Whitworth & Trunnell, P.A.
2101 Defense Highway
Crofton, Maryland 21114
(301) 261-0035—Telephone
(301) 261-0114—Facsimile
*Attorney for Plaintiff*

# IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

JOSEPH E. STIGLITZ
305 Riverside Drive, Apt 8B
New York, NY 10025

        Plaintiff

    vs.

RITA M. BANK
1900 M Street, N.W.
Suite 600
Washington, D.C . 20036-3565

        Defendant

Case No.:

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEMAND FOR JURY TRIAL

    Plaintiff, Joseph E. Stiglitz, by and through the undersigned counsel, respectfully requests a trial by jury on all issues presented in his Complaint.

Respectfully Submitted,

David G. Whitworth Jr., #224139
Whitworth & Trunnell, P.A.
2101 Defense Highway
Crofton, Maryland 21114
(410) 721-7169—Telephone
(301) 261-0114—Facsimile
*Attorney for Plaintiff*