# The Lewis
## Law Firm

A Professional Corporation

**Attorneys at Law**
805 15th Street, N.W., Suite 200
Washington, D.C. 20005
Main (202) 408-0655
Fax (202) 408-9826
www.lewislawfirm.com

**Offices In**
Fairfax, Virginia
Rockville, Maryland
Washington, D.C.

November 14, 2006

David G. Whitworth, Jr.
Whitworth & Trunnell, P.A.
2102 Defense Highway
Crofton, Maryland 21114

Dear Mr. Whitworth:

You have asked me to review the facts concerning the professional negligence claims of your client, Dr. Joseph Stiglitz (hereinafter, the Plaintiff) against Rita M. Bank, Esquire (hereinafter, the Defendant), and to provide you with an opinion as to whether the Defendant committed legal malpractice in failing to (1) negotiate a settlement of the Plaintiff's divorce in the District of Columbia within a reasonable time; (2) file suit in the District of Columbia within a reasonable time; (3) advise the Plaintiff of the potentially adverse ramifications of establishing residency in the New York City, New York; (4) advise the Plaintiff of his exposure under New York law, that provides for consideration and inclusion of celebrity status and enhanced earnings as marital assets subject to distribution during a divorce proceeding; and (5) to inform the Plaintiff of her intention to establish a law firm with his former spouse's counsel during her representation of the Plaintiff within a reasonable time.

The standard of care for the practice of law in the District of Columbia requires a lawyer to exercise that degree of reasonable care and skill expected of lawyers acting under similar circumstances. A lawyer must exercise that degree of reasonable care and skill expected of someone who has "special training" (*i.e.*, training as a lawyer), coupled with enough "experience," to handle the case under the circumstances. Having reviewed the documents that you have provided me, and based on my analysis, I conclude that Ms. Bank's representation of Dr. Stiglitz fell below the standard of care for an attorney under similar circumstances in the District of Columbia.

Facts

Dr. Joseph Stiglitz was married to Jane Hannaway (hereinafter, Hannaway) in 1978. The couple separated in late May to early June of 2000. The Plaintiff retained the Defendant on August 30, 2000 to represent and assist him in obtain resolution of issues arising from his marriage, and to pursue a divorce in the District of Columbia. The Defendant advised the Plaintiff that there should be a "cooling-off" period of approximately six (6) months before she began settlement negotiations with Hannaway. Thus, the Defendant did not begin negotiations until well after she was retained.

EXHIBIT

Z.

ALL-STATE LEGAL®

*The Lewis*
*Law Firm*
A Professional Corporation

The Defendant exchanged communications, information, and positions on settlement with Hannaway's counsel until October 2002. No settlement was ever reached, nor was divorce litigation ever commenced by the Defendant. Ultimately, Hannaway filed for divorce in New York City on September 17, 2002.

During the period of Defendant's representation, the Plaintiff was offered employment opportunities in the District of Columbia, New York, and California. The Plaintiff explicitly requested the Defendant to advise him of the jurisdiction that would be most favorable to him for the divorce proceeding based upon his options for relocation. The Defendant never advised the Plaintiff of the relative consequences of having his rights determined or his divorce determined under District of Columbia versus New York law. The Plaintiff relocated to New York City in or about September 2001, accepting a position at Columbia University.

The process of settlement negotiations in the District of Columbia continued slowly. Having not yet filed for divorce and not having achieved final settlement, the Plaintiff expressly instructed the Defendant at least two times prior to being served with the New York action to file a lawsuit for divorce in the District of Columbia if no meaningful settlement offer was received by a certain date. On the last of these occasions, the Plaintiff instructed the Defendant to file a lawsuit by September 13, 2002 if no settlement offer was received by that date. None was received, and, the Defendant did not file a lawsuit in the District of Columbia. Thereafter, Hannaway filed for divorce in New York in September 2002, one year after the Plaintiff had established residency in New York.

After Plaintiff was served on September 17, 2002 with the New York divorce action, he contacted the Defendant to inform her that he had been served. The Plaintiff did not file an action in the District of Columbia, but continued to attempt to negotiate a settlement in the District of Columbia. No settlement was ever reached in the District of Columbia.

On or about October 3, 2002, the Defendant informed the Plaintiff that she intended to form a law firm with Hannaway's attorney. She informed the Plaintiff that discussions of the plans to form a law firm with opposing counsel began as early as the spring or early summer of 2002.

Due to his then-wife having filed the New York lawsuit, the Plaintiff was required to engage New York counsel. Thereafter, the Plaintiff learned he had substantially more financial exposure in New York than if the divorce or settlement had proceeded in the District of Columbia, including how New York law would likely view future royalties from his publications, enhanced earnings, and his "celebrity" status as marital assets subject to distribution in a New York divorce.

The Plaintiff incurred substantial costs, attorneys' fees, and expert witness fees in the New York proceedings. The Plaintiff incurred attorneys and expert fees in excess of Nine Hundred Eighty Thousand Dollars ($980,000.00) in the New York litigation, which directly related to litigating Hannaway's claims of enhanced earnings and celebrity status. The attorneys' fees in the District of

*The Lewis*
*Law Firm*
A Professional Corporation

Columbia would have been substantially less, and he would not have incurred expert witness fees to oppose Hannaway's claims for his royalties and future earnings based upon enhanced earnings or celebrity status. By comparison, the attorneys' fees in the District of Columbia would have been in the range of One Hundred Thousand Dollars ($100,000.00) to Two Hundred Thousand Dollars ($200,000.00).

Due to his increased exposure at that point in the New York courts, and in mitigation of his damages, Plaintiff ultimately reached a settlement agreement with Hannaway under which she received far more than she would have recovered had their divorce either been settled or litigated in the District of Columbia. As a direct and proximate result, the Plaintiff suffered net damages totaling Three Million Four Hundred Sixty Thousand Dollars ($3,460,000.00) to Three Million Nine Hundred Fifty Thousand Dollars ($3,950,000.00) in the New York litigation. This calculation is based upon Plaintiff's income, future royalties, enhanced earnings, celebrity status, payments of Hannaway's legal bills and the additional time required by the Plaintiff to defend himself in the New York litigation.

In my view, at a minimum, the Defendant should have done the following in order to comply with the applicable standard of care:

1. Begun settlement negotiations on behalf of the Plaintiff within a reasonable time after she was retained, certainly far sooner than she did. This was especially true given Plaintiff's stated and reasonable concern about his anticipated receipt of the Nobel Prize in October 2001.

2. Filed a Complaint for Absolute Divorce no later than June 2001 in the District of Columbia. Had the Defendant filed in the District of Columbia, a no-fault jurisdiction, the Plaintiff would not have been exposed to a divorce action filed on the grounds of adultery, as was the case when the New York action was filed. Moreover, the Plaintiff would not have been exposed to the celebrity status or enhanced earnings claims Hannaway made in the New York litigation, and the matter would likely have been concluded far sooner, and with less exposure based on the then-existing marital estate.

3. If not before, then filed the Complaint for Absolute Divorce in the District of Columbia on September 13, 2002, as instructed by the Plaintiff, and as she agreed she would do. Had the Defendant filed suit in the District of Columbia, the matter would likely have been tracked for trial within six (6) to twelve (12) months from the date of filing

4. Upon being advised by the Plaintiff that he was considering relocating to New York City , advised the Plaintiff regarding New York law and practice, including issues of future royalties, enhanced earnings, and celebrity status, and their potential impact upon the divorce proceedings and settlement. The Defendant, who has held herself out as exclusively a practitioner of matrimonial law in the District of Columbia for many years, would have had knowledge of the celebrity status and

*The Lewis*
  *Law Firm*
A Professional Corporation

enhanced earnings components of New York law. To the extent the Defendant did not believe herself sufficiently knowledgeable regarding New York divorce law, then she was obligated to advise the Plaintiff to seek advice from a New York attorney, or to consult one on behalf of her client. She was obliged to advise the Plaintiff of New York residency requirements for divorce, and of his potential risk to be sued there after he resided there for the requisite period.

5. Disclosed in May or June 2002 at the latest her contacts with Hannaway's attorney regarding their intent to form a law firm. At that time, the Defendant should have disclosed to Plaintiff her potential conflict, advised him to seek independent counsel on the matter, and afforded him a meaningful opportunity to seek and retain new counsel.

6. Filed suit in the District of Columbia, or advised the Plaintiff to consult other District of Columbia counsel regarding the possibility of filing a proceeding in the District of Columbia even after Hannaway filed suit in New York. This would have at least permitted one or both jurisdiction's courts to consider the appropriate jurisdiction to hear the divorce based on the relevant circumstances, including the parties' stronger ties to the District of Columbia, which was their last matrimonial domicile.

I was pleased to accommodate your request to review this matter. I certainly hope the matter can be resolved amicably. Please let me know if you have additional questions.

Sincerely,

Glenn C. Lewis, Esquire

4