# EXHIBIT 3

LAW OFFICES
# KUDER, SMOLLAR & FRIEDMAN, P.C.

1925 K STREET, N.W.
SUITE 200
WASHINGTON, D. C. 20006

(202) 331-7522
FAX: (202) 331-0388
LAWYERS@KSFLAW.COM

ARMIN U. KUDER†
PAUL R. SMOLLAR°
SUSAN M. FRIEDMAN†
THERESA M. MIHALIK°
KATHRINA S. PETERSON†
MERIDITH S. JACOBS†

MARYLAND OFFICE
SUITE 300
110 NORTH WASHINGTON STREET
ROCKVILLE, MARYLAND 20850

† MARYLAND & D.C. BAR
° VIRGINIA & D.C. BAR

February 9, 2007

Richard A. Simpson, Esquire
Ross, Dixon & Bell, LLP
2001 K Street, N.W.
Washington, D.C. 20006

Re:   **Joseph E. Stiglitz v. Rita M. Bank**
       **Civil Action No. 05-1826-RJL**

Dear Richard:

You have engaged me to review and comment upon certain aspects of the claim of professional malpractice asserted by Professor Joseph Stiglitz against your client Rita M. Bank, Esquire, and especially the opinions proffered by Glenn C. Lewis, Esquire, relating to the matter. I also have reviewed the opinions of Marcy L. Wachtel, Esquire, concerning the outcome and costs of negotiations and proceedings in New York City.

Pursuant to our engagement agreement, I am being paid at my customary hourly rate for the review of records and information provided to me, and for the formulation of my conclusions and opinions. My remuneration is not contingent upon any particular result or the outcome of the litigation against Ms. Bank. Should I be required to participate further in the litigation, I will continue to be compensated on an hourly basis.

In order to carry out this assignment, I have reviewed the deposition testimony of Professor Stiglitz, Ms. Bank and Ms. Jane Hannaway, and the pleadings, motions, and exhibits listed on Exhibit A attached to this report.

### Overview

The basic facts behind this litigation are not in dispute. However, there are a number of important facts which are disputed between Professor Stiglitz and Ms. Bank. For example, Professor Stiglitz asserts that Ms. Bank failed to file suit when instructed to do so; whereas Ms. Bank recalls that notwithstanding following instructions to set deadlines in correspondence with opposing counsel, Professor Stiglitz was anxious to avoid litigation and did not

Richard A. Simpson, Esquire
February 7, 2007
Page 2

unambiguously authorize initiating a court case. Depending on the resolution of this and other factual disputes, it is possible to conclude that Ms. Bank's representation did not meet the standard of care appropriate for the practice of matrimonial law in the District of Columbia. I believe Mr. Lewis, in fact, has resolved contested factual issues in favor of Professor Stiglitz in order to arrive at several of his conclusions. He has not made that clear in his statement of "facts." In other instances, Mr. Lewis sets forth as facts matters of opinion or prognostication, such as costs for litigation in the District of Columbia and his prediction of the outcome of a settlement, or of litigation, in the District of Columbia. I conclude differently for reasons set forth below.

### Standard of Care

Mr. Lewis – and Ms. Wachtel – satisfactorily set forth Ms. Bank's obligation as an attorney to exercise that degree of care and skill reasonable for an attorney of her experience acting under similar circumstances. (Battle v. Thornton, 646 A.2d 315 (D.C. 1994))

### Resolution of Factual Disputes

I have read the depositions of the parties and Ms. Hannaway. There are obvious matters of dispute. Professor Stiglitz states that he requested advice as to the most favorable jurisdiction in which to base his proceeding. (See Mr. Lewis's letter of March 14, 2006 ("Lewis Op.," page 2, paragraph 2)) Ms. Bank describes only general conversations and a client eager to negotiate without court proceedings. Ms. Hannaway describes Professor Stiglitz as "stonewalling" and trying to negotiate "asymmetrically" (without equal knowledge of his financial information), the subject of Professor Stiglitz's renown. She says she filed suit in New York where Professor Stiglitz's financial information was located, but still preferred to negotiate in the District of Columbia. Her view gives some support to Ms. Bank's recitation.

Professor Stiglitz states he gave explicit orders to file suit in September 2002, which Ms. Bank ignored or overlooked. She states that Professor Stiglitz equivocated, wanting to avoid rancor and contention.

It is not my role to resolve, nor could I resolve, these, and other, matters where Ms. Bank and Mr. Stiglitz dispute the facts. If, in fact, Ms. Bank ignored an explicit direction to file suit, unless the client order were countermanded, that would constitute professional malpractice. There is no basis in the record I have which permits me to make a final determination that Ms. Bank ignored an explicit direction.

Richard A. Simpson, Esquire
February 7, 2007
Page 3

### Mr. Lewis' Findings Concerning Fees and Costs

Without distinguishing between facts (Mr. Stiglitz's actual expenses in New York) and opinion (possible D.C. fees and expenses), Mr. Lewis asserts that attorney's fees in D.C. would have been "substantially less" and that there would have been no expert witness fees based on "enhanced earnings" and "celebrity status." He states such costs in D.C. would have been $100,000 to $200,000. (Lewis Op. p. 3) In my opinion, this is way off the mark.

First, Mr. Lewis assumes that there would have been no issue as to celebrity status or enhanced earning. This is extremely unlikely. Ms. Hannaway's attorney, Sanford K. Ain, was very familiar with the theories of celebrity status and enhanced earnings, and various state decisions dealing with such issues. He has written on them. There are no District of Columbia legal decisions denying nor affirming those theories. It is highly likely that had there been contested litigation in D.C., those issues would have been briefed and tried, given Professor Stiglitz's receipt of the Nobel Prize, and Mr. Ain's professional competence. In negotiations, he would have argued these points. Further, in contested litigation, the losing side likely would have appealed if there were sufficient dollars involved. To determine the dollars involved, experts would have been required, just as in New York. The favorable decisions in New York may have made the law clearer, but they did not increase the legal fees and related costs of truly contested litigation.

Ms. Hannaway complains under oath that Professor Stiglitz's failure to give her information generated delay and fees. She is clear that she would not settle in D.C. without receipt of the financial information she sought by filing in New York. If a party is dilatory in producing information, it can be quite costly for that party. In one such case more than 15 years ago, fees were awarded to the wife from the husband in the amount of approximately $150,000, which were two thirds of her total fees. More recently a judge entered an award of $875,000 to a wife <u>pendente</u> <u>lite</u>, with on-going additional fees. I have participated in cases with Ms. Bank's former firm where their clients' fees exceeded $500,000. There are numerous variables which can affect fees and costs in litigation, especially how helpful and responsible one's own client is, the novelty of issues or factual circumstances, and how the other side conducts the case. In this case, if it had gone to litigation in D.C., all of those factors would appear to be present in a way that would have greatly increased the costs. Recognizing the extreme range of the possibilities, I would be more comfortable with estimating Professor Stiglitz's own fees to be in the $400,000 to $700,000 range, not counting any appeal. There also would have been substantial expert fees. Without a settlement, I do not see any significant difference between the two jurisdictions in this case.

Richard A. Simpson, Esquire
February 7, 2007
Page 4

### Other Damages

Mr. Lewis opines that Professor Stiglitz suffered damages of $3,460,000 to $3,950,000 including some unspecified amounts for (1) "Plaintiff's income, future royalties enhanced earnings and celebrity status"; (2) payments of Ms. Hannaway's legal bills, and (3) the additional time required by the Plaintiff to defend himself in New York. (Lewis Op., p.3) In my opinion there is no such causation nor damages.

With respect to income, royalties and the enhanced earnings and celebrity status claims, it appears that Mr. Lewis is saying that the final settlement in the New York litigation varied greatly from what would have happened in the District of Columbia if suit had been initiated here, either in a court decision or settlement. Since the New York settlement presumably took into account judgments about what the Court would have decided,[1] I have to compare what a reasonable settlement in the District of Columbia might have been as an alternative to litigation. In making that judgment, I have to assume that litigation in D.C. would have involved the same course of discovery as Ms. Hannaway demanded and pursued in New York with respect to income, assets, and claims of non-marital property. I also assume that Mr. Ain would have demanded substantiation of claims of non-marital property, would have sought compensation for Mr. Stiglitz's prize money, royalties and other income, would have claimed marital income and property to the date of divorce,[2] would have argued the factors set forth in D.C. Code, Section 16-910(b), and would have requested attorney's fees for his client. I conclude that a settlement at the same stage in District of Columbia proceedings would not have been significantly different than the New York settlement in its overall economic impact. I note that Ms. Hannaway testified to this effect (except for the diminution caused by increased attorneys fees).

As for payment of Ms. Hannaway's fees (element (2)), I believe there likely would not have been a difference between the two jurisdictions in this case. In fact, Professor Stiglitz ultimately did not pay Ms. Hannaway's fees in the settlement.[3]

With respect to the value of Prof. Stiglitz's time (element (3)), it is clear that New York was the more convenient forum for Prof. Stiglitz, not for Ms. Hannaway, and it would have

---

[1] New York counsel has characterized the settlement as reasonable on that basis.

[2] An apparent difference from New York. See Stipulation and Settlement of the parties.

[3] He did pay 80% of certain mutually retained experts. In the District, the most likely scenario would have been the employment of opposing experts as Mr. Ain tried to forge new principles of law.

Richard A. Simpson, Esquire
February 7, 2007
Page 5

required less of his time to proceed there than in the District of Columbia, with less incidental expense. In conclusion, I see no proximate cause whatsoever for Mr. Lewis's assertion of damages, nor any basis for his numbers.

### **Failure to Exercise Due Care**

I will address Mr. Lewis's six (6) specific claims of deficient representation by Ms. Bank (Op., pages 3-4).

1.      Failure to commence settlement negotiation within a reasonable time. Even after Ms. Bank began negotiations, it is clear that collecting data, and Ms. Hannaway's perception of Professor Stiglitz's "stonewalling," makes it highly unlikely the Nobel Prize would not have been an issue. I see no professional negligence in the advice to wait some time for the abandoned party to cool down, to gather information, and to see where one is going. Nor did the client seem to object. Ms. Hannaway felt her husband was delaying things for his own purposes.

2.      Filing a complaint early in the District of Columbia would have been contrary to the client's stated goals, and provoked more immediate expenses. It could only be justified in hindsight, and only if one assumes Ms. Hannaway's attorney would not have sought vigorously to enhance her position. Not filing immediately was reasonable for the client and the attorney.

3.      I agree that it would be professional malpractice to ignore specific instructions from a client to file suit. The record on this is not as clear as Mr. Lewis says, nor, in my opinion, would proceedings in the District of Columbia have produced a greatly different result. Litigation in the District would have been assigned to any of several judges, or to the Domestic "T" calendar upon motion of a party. Time to trial can vary greatly, from judge to judge and case to case, but never in any complex case would it have been in six (6) months. Ten (10) to twelve (12) months is a better estimate, and trial dates of more than twelve (12) months after filing are common.

4.      I agree that learning that her client was contemplating a move, Ms. Bank should have discussed that with the client. Again, the parties have different recollections about such discussions. For reasons stated above, it is my opinion that even if Professor Stiglitz's version were accepted completely, it is speculative whether he would have acted differently. And it is my opinion that the ultimate outcome was not materially affected by his choice of residence.

5.      Mr. Lewis states that Ms. Bank had a duty to inform her client in May or June 2002 that she was negotiating with Mr. Ain to form a partnership. There is no evidence that they were negotiating in May or June. Ms. Bank was clear that she had no such intent in May or June. I do not believe there was an obligation to inform the client until the project moved from the thinking stage to the formation of a partnership. Lawyers are called professionals in part because

Richard A. Simpson, Esquire
February 7, 2007
Page 6


they are required to put the client's interest before a personal interest. There is nothing in what I have reviewed that suggests that Ms. Bank did otherwise. Reviewing the mutual rejections of settlement proposals in 2002, and the eventual outcome, I see no selling out of a client and no connection between Ms. Bank's eventual partnership and the settlement.

      6.     Filing suit in the District of Columbia after suit had been filed in New York would have increased litigation costs considerably as the contending sides filed motions, oppositions and affidavits. Under general legal principles, a plaintiff's (Ms. Hannaway) choice of forum is to be respected absent compelling circumstances, and the first of two actions concerning the identical subject will take priority, again absent unusual circumstances. I disagree that failing to file after Ms. Hannaway filed was a violation of the standard of care.

Please let me know if you have any questions or other matters for me to address. I thank you for the opportunity to participate in this interesting matter.

Very truly yours,

Armin U. Kuder

AUK:lls
Enclosure

F:\CLIENT.6\6253.01\Letters.07\2-7cl-auk.wpd

**EXHIBIT A**

**DOCUMENTS REVIEWED BY ARMIN U. KUDER:**

Stipulation of Settlement in Index no. 350584/02 (Supreme Court of the State of New York County of New York) signed by Jane Hannaway and Joseph Eugene Stiglitz on August 4, 2004.

Plaintiff's Complaint for Professional Negligence filed with the Court on August 17, 2005

Defendant's Answer to Plaintiff's Complaint for Professional Negligence filed with the Court on October 6, 2005

Plaintiff's Answer to Defendant's First Set of Interrogatories sent to Meredith Werner on April 3, 2006

Defendant Rita M. Bank's Response to Plaintiff's Request for Admissions sent on March 17, 2006 to David G. Whitworth Jr.

Plaintiff's *Revised* Supplemental Response to Defendant's First Set of Interrogatories and Objection to Second Set of Interrogatories sent to Meredith Werner on July 6, 2006

Plaintiff's Expert Witness Designation filed with the Court on November 15, 2006

Transcript of the Video Taped Deposition of Plaintiff Joseph E. Stiglitz taken on April 21, 2006

Transcript of the Continued Video Taped Deposition of Plaintiff Joseph E. Stiglitz taken on July 21, 2006

Transcript of the Deposition of Rita M. Bank taken on April 20, 2006

Transcript of the Deposition of Rita M. Bank taken on August 17, 2006

Defendant Rita Bank's Supplemental Document Production (including handwritten notes discussed in August 17, 2006 deposition)

Recitals from the Supreme Court of the Sate of New York County of New York Index No. 350584/02 Stipulation of Settlement

Transcript of the Deposition of Jane Hannaway taken on January, 23, 2007