IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH E. STIGLITZ, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-1826 RJL |
| RITA M. BANK, | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE EXPERT REPORT OF MICHAEL CRAGG AND TO PRECLUDE MICHAEL CRAGG FROM TESTIFYING TO ANY OF THE TOPICS ADDRESSED IN HIS REPORT**

Defendant, Rita M. Bank ("Bank"), by and through undersigned counsel, respectfully submits this memorandum in support of her Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg From Testifying to Any of the Topics Addressed in His Report. Michael Cragg is an expert retained by Plaintiff Joseph E. Stiglitz ("Stiglitz"). In support of her motion, Bank states as follows:

**I.      INTRODUCTION**

The Expert Report of Michael Cragg (the "Cragg Report") was submitted only seven days before the close of expert discovery and almost a full year after the deadline for expert witness designations. The submission was in contravention of the scheduling order agreed upon by the parties and approved by the Court. Bank seeks an order striking the Cragg Report and precluding Cragg from testifying to any of the topics addressed therein and an award of the fees and costs she has incurred in connection with this Motion. In the event the Court chooses not to strike the Cragg Report, Stiglitz should bear the fees and costs that Bank's expert will incur in connection with responding to the dilatory Cragg Report.

Under Fed. R. Civ. P. 16 and Fed. R. Civ. P. 37, courts consider four factors when determining whether or not to impose sanctions in connection with discovery violations. Each of these factors supports the imposition of sanctions against Stiglitz. First, Stiglitz has no excuse for failing to timely submit the report. Second, the testimony is important to Bank's case. In fact, Bank has prepared her defense based, in part, on the lack of a damages report from Stiglitz. Third, Bank would be prejudiced if Stiglitz were permitted to present the untimely Cragg Report or related expert testimony. She would be required to expend substantial additional fees to rebut the Cragg Report. In addition, the fees already incurred by Bank in connection with her damages expert will have been wasted, as her expert will have to conduct a new analysis and then redraft almost his entire report. Fourth, another continuance would be unfair and should not be permitted. The case has been pending for more than two years; Stiglitz did not even seek leave to submit an additional expert report almost a year after the deadline for designating experts; and Stiglitz should be required to comply with the Court's orders.

## II.   FACTUAL BACKGROUND

On November 15, 2006, in accordance with the parties' agreed upon schedule, Stiglitz submitted his expert witness designation. *See* December 4, 2006 Scheduling Order; DE 15. Stiglitz designated Glenn C. Lewis as a standard of care expert and Marcy L. Wachtel as another standard of care expert. Stiglitz did not submit a report by a damages expert. According to his designation, Stiglitz planned to offer his own testimony on damages and referred to his deposition testimony and discovery responses as evidence of his damages. *See* DE 15, pg. 8. Stiglitz admitted that his testimony was "predominantly factual," but noted that he was "drawing upon his experience and expertise as a recognized economic expert." *Id.*

However, Stiglitz attempted to hedge his bets by including the following statement in his designation:

> Plaintiff reserves the right to elicit expert testimony from any of the financial experts retained in the underlying matter, either by the Plaintiff and/or by Jane Hannaway, Plaintiff's ex-wife. Specifically, Plaintiff reserves the right to call the following individuals:
>
> A. John R. Johnson, Managing Partner …
>
> B. Michael I. Cragg, Ph.D. … .
>
> During their testimony, the aforementioned experts may refer to any and all of the materials they reviewed previously, or to any supplemental documentation provided at or in preparation of trial. Copies of the expert reports, including their qualifications, were previously provided to Defendant in the course of discovery.

*See* DE 15, pg. 7. By letter dated December 4, 2006, Bank advised Stiglitz that the designation of Messrs. Johnson and Cragg was deficient. *See* Ex. 1. Bank pointed out that the designation did not disclose any opinions of these experts regarding the damages allegedly sustained by Mr. Stiglitz in this case, but rather referred to the expert reports presented by these gentlemen in the underlying divorce litigation in New York – reports that have little to nothing to do with Stiglitz's quantum of alleged damages in this case. Upon receipt of Bank's letter, Stiglitz could have easily cured the deficiency by submitting a report from one or both of the purported experts. Instead, Stiglitz did not respond the December 4, 2006 letter or supplement his expert witness disclosures.

Pursuant to the schedule, on January 15, 2007, Bank submitted her expert witness designation. *See* December 4, 2006 Scheduling Order. Bank designated Robert F. Aucone as a damages expert; Armin U. Kuder as a standard of care expert; and Professor Catherine J. Ross as a standard of care expert. *See* DE 18.

Aucone's opinion was necessarily limited to the information provided by Stiglitz. Aucone pointed out in his report that Stiglitz's statement of damages, as set forth in his deposition testimony and interrogatory responses, was not subject to the same requirements as an expert report. As a result, the damages alleged by Stiglitz could not be recalculated or tested by

Aucone. *Id.*, Exhibit 1, p. 2. Aucone stated that "the damages as expressed by Dr. Stiglitz do not meet the minimum standards for determination of damages. Specifically, little or no specific documentation has been offered by Dr. Stiglitz to support the amounts, no calculations have been provided by Dr. Stiglitz which could be checked for accuracy and reasonableness, and most amounts are, at best, estimates and are for unusually large, even dollar amounts." *Id.*, Exhibit 1, p. 4. Thus, Aucone's report, which came at significant expense to Bank, was based entirely on the asymmetric information provided by Stiglitz as of January 15, 2007.[1]

The Court's December 4, 2006 Scheduling Order provided for the submission of rebuttal expert disclosures, requiring that such expert disclosures be made by February 15, 2007. This deadline came and went without any additional submissions by Stiglitz.

In the spring of 2007, the parties agreed to participate in mediation and to put off further expert discovery until after the mediation. The parties scheduled an initial mediation session for May 23, 2007 and the Court agreed to extend expert discovery to June 30, 2007. *See* May 7, 2007 Order. In the event the mediation was unsuccessful, depositions of the five experts were scheduled for late May and June. *See* Ex. 3.

The initial mediation session was not successful, but the parties agreed to participate in another session. Due to scheduling conflicts, the second session was not scheduled until September 24, 2007. The Court extended the expert discovery deadline twice more, first until September 15, 2007 and next until November 16, 2007. *See* June 5, 2007 Order; September 5, 2007 Order. The expert depositions scheduled for late May and June were pushed back until November 2007. *See* Ex. 4.

---

[1] Aucone billed $21,476.00 in connection with the research, analysis and drafting of his report. *See* Ex. 2.

4

On September 5, 2007, entirely out of the blue, Stiglitz advised Bank that the Cragg Report should be completed within the next two weeks. *See* Ex. 5. This was the first indication that Stiglitz apparently intended to offer any expert testimony (other than his own) to support his alleged damages in this case. The inadequate "designation" of Michael Cragg on November 15, 2006 referred to expert reports relating to the underlying case that previously had been produced in discovery. The same day Bank advised Stiglitz that she would not accept an expert report ten months past the deadline. *Id.* Two weeks passed and Stiglitz did not provide an additional expert report.

The parties proceeded with expert discovery. Expert documents were exchanged on October 29, 2007. Stiglitz produced documents that appeared to be associated with an expert report by Michael Cragg, but the documents were meaningless because Bank still had not received the Cragg Report.

At 4:45 pm on Friday, November 9, 2007, almost a full year after the November 15, 2006 due date, Stiglitz provided Bank with the Cragg Report. *See* Ex. 6. Aucone's deposition was scheduled for the following Tuesday, November 13, 2007. By the end of the day on Friday, November 9, Bank's counsel had already spent significant time preparing for Aucone's deposition. The timing of Stiglitz's submission of the Cragg Report left Aucone and Bank's counsel with no time to analyze the new report in advance of Aucone's deposition.

Bank's counsel continued to prepare for Aucone's deposition as planned, including flying to Denver, where Aucone is located, on November 12 to prepare for the deposition the next day. At about 10:30 am on the day before the deposition, Stiglitz's counsel cancelled the deposition; allegedly because he was short-staffed. Bank's counsel was already en route to Denver by the time Stiglitz's counsel notified anyone of his staffing problems, and thus wasted a significant amount of time and expense to prepare for a deposition that did not take place. Stiglitz's counsel

5

later admitted that he had cancelled the deposition in part because he assumed that Aucone would not be prepared to respond to the Cragg Report.

**III.    ARGUMENT**

    **A.    The Untimely Reports Should be Excluded under Rules 16 and 37.**

The Cragg Report was submitted almost a full year beyond the deadline for submission of expert reports. It is untimely and should be stricken. Furthermore, Cragg should be precluded from testifying to any of the topics addressed in his report. This Court has authority under Fed. R. Civ. P. 16 and 37 to exclude expert testimony for the failure to make timely expert disclosures. Specifically, Fed. R. Civ. P. 16(f) provides that "[i]f a party or party's attorney fails to obey a scheduling or pretrial order, … the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just." Rule 37(c)(1) provides that "a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Courts have interpreted these rules to prevent the submission of untimely expert reports. *See, e.g., Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D. N.C. 2002) (noting that, for violations of Rule 16(f), including for failure to comply with the deadlines in a scheduling order, "the Court may impose the full range of sanctions, including precluding the expert's testimony"); *see also Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 724 (E.D. Va. 2001) ("Rule 37(c)(1) has been described as a self-executing sanction for failure to make a disclosure required by Rule 26(a), designed to provide a strong inducement for disclosure.") (internal quotations and citation omitted).

The elements used by courts to determine whether an expert report should be excluded under Rules 16 and 37, although sometimes ordered or stated somewhat differently, are virtually

the same: (1) the reason for failing to timely complete the report; (2) importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) availability of a continuance to cure such prejudice. *See Rambus*, 145 F. Supp. 2d at 726, 736. Here, the elements lead to one conclusion – the Cragg Report should be excluded.

### 1.  **There is no valid reason for the dilatory filing of the Cragg Report.**

There is no valid reason for Stiglitz's violation of the Court's Scheduling Order. Stiglitz had all of the information needed for a damages analysis well in advance of the November 15, 2006 deadline. *See id.* at 734 (noting that this factor is weighed against the proponent of the expert testimony if the expert had information available, but chose to ignore it); *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 102 (D. D.C. 2005) (holding that a party would not be permitted to use belatedly subpoenaed information to remedy deficient expert reports after the expert and discovery deadlines, especially when the information in question was easily obtainable during the discovery period.").[2]

Stiglitz was advised in early December 2006 that his reservation of the right to submit a report by Cragg was insufficient. Stiglitz did not bother to respond, much less request an extension of time. *See Akeva LLC*, 212 F.R.D. at 311-12 (excluding the expert's second test opinion for several reasons, including plaintiff's failure to seek an extension of time*); In re Greater Southeast Community Hosp. Corp. I*, 365 B.R. 315, 321 (Bkrtcy. D.C. 2007) (same). There is simply no justification for Stiglitz's one-year delay in submitting the Cragg Report.

---

[2] Alternatively, had he wished to do so, Stiglitz could have offered a rebuttal expert witness on damages by the February 15, 2007 deadline. As discussed *infra,* however, the Cragg Report is not properly considered a rebuttal report in any event.

### 2. The lack of an expert damages report was important to the preparation of Bank's defense.

The second factor – the importance of the report – is viewed from the perspective of both parties. From Bank's perspective, the absence of an expert report is important. A significant part of Bank's defense is based upon Stiglitz's inability to prove the damages he has alleged. Stiglitz should not be permitted to disrupt Bank's defense at this late date. *Rambus*, 145 F. Supp. 2d at 734-35 (holding that where one party has prepared its defense based on a prior report, it is proper to exclude the testimony). To the extent that Stiglitz argues that the Cragg Report is an important part of his case, one naturally wonders why he waited until a year after the deadline to provide it to Bank. *See Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 598-99 (4th Cir. 2003) (applying South Carolina law) (noting fact that expert testimony might be helpful to the party offering it "also points out why it should have been disclosed in a timely manner"). Stiglitz will not be left without means to attempt to prove his alleged damages, rather he will simply be limited to whatever damages can be properly proven by his own testimony, per his expert disclosures and interrogatory responses. Moreover, where the other factors weigh in favor of exclusion, this factor alone does not change the analysis. *See id.*

### 3. Bank will be unduly prejudiced if Stiglitz is permitted to rely upon the Cragg Report.

Third, Bank will be unduly prejudiced if Stiglitz is permitted to rely upon the Cragg Report. As described above, Aucone's report was based, in part, on the premise that Stiglitz would be acting as his own expert. Substantial time and research was devoted to the issue of why Stiglitz is not a proper expert. In addition, Aucone's detailed damages analysis was based solely on the information provided by Stiglitz, largely his deposition testimony and interrogatory responses. If Stiglitz is now permitted to offer the Cragg Report and testimony based on the

report, Bank will be unable to offer expert testimony to rebut Cragg without incurring substantial additional expense. *See Sherwin-Williams*, 318 F.3d at 598 (noting that the "rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts"). This alone is sufficient reason to strike the untimely Cragg Report. *See id.*

Moreover, Bank will suffer additional prejudice in this case if the Cragg Report is permitted and Cragg is allowed to testify. As noted above, Aucone's report pointed out, in detail, a multitude of inadequacies in connection with Stiglitz's damages analysis. Aucone was prepared to testify to these inaccuracies – and his own expert opinion – on November 13, 2007. If Stiglitz is allowed to submit a report at this late date, Stiglitz will be getting the proverbial second bite at the apple. Bank will be required to incur additional time and expense for Aucone to review and respond to the Cragg Report. The time and money spent responding to Stiglitz's initial damages calculations would have been wasted. Allowing the Cragg Report will unnecessarily waste time and money, and certainly is not the result intended by the rules related to expert discovery. *See Akeva*, 212 F.R.D. at 312; *see also Sherwin-Williams*, 318 F.3d at 595-96.

### 4. Further delay of this litigation would be unfair and unwarranted.

Finally, there is no viable alternative to cure the prejudice. Stiglitz filed this suit against Bank in August 2005. The parties have requested and the Court has granted numerous extensions. Expert discovery, which closed on November 16, 2007, should not be reopened solely to accommodate Stiglitz. This is especially true in light of the fact that there was no reason to delay the submission of the Cragg Report for a full year. This Court's need to manage its docket is "sufficiently important to alone justify the exclusion of an untimely disclosed expert report or opinion even in the absence of prejudice to the opposing party." *Akeva*, 212 F.R.D. at

9

311; *see also Praxair, Inc. v. Atmi, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005) ("[S]ometimes, such exclusion is necessary; fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities."). Increasingly, courts in the District of Columbia and elsewhere are demanding strict compliance with scheduling orders. "Strict adherence to discovery rules are necessary to prohibit not only trial by ambush, but discovery gaming wherein a party . . . does not pay sufficient attention in the first instance to develop[ing] expert testimony. All of this imposes costs on the court and the opposing parties, both in the short and long run." *Akeva*, 212 F.R.D. at 311; *see also Dag Enterprises*, 226 F.R.D. at 105 ("A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" (internal citations omitted)).

For these reasons, the Court should exclude the Cragg Report and preclude any testimony related to it. *See, e.g., Praxair*, 231 F.R.D. at 463-64 (excluding evidence related to supplemental expert report because opposing party had no opportunity to conduct rebuttal expert discovery and allowing other party time for additional expert discovery would disrupt the trial schedule). If the Cragg Report is not stricken, then, at an absolute minimum, the Court should order Stiglitz to reimburse Bank for any fees and costs she incurs in connection with responding to the Cragg Report as well as the fees and expenses incurred in connection with the belatedly aborted deposition of Bank's expert.

    **B.**    **The Cragg Report is not a Supplemental Report.**

"Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony when the party learns of new information." *Sherwin-Williams*, 318 F.3d at 595-96. Here, however, Cragg never submitted an initial report, and, thus, there is nothing to supplement. Rule 26(e) does not cover "failures of omission because the expert did an inadequate or incomplete preparation." *Akeva*, 212 F.R.D. at 310 (citing *Keener v. United States*, 181 F.R.D.

10

639, 641 (D. Mont. 1998); *Schweizer v. DEKALB Swine Breeders, Inc.*, 954 F. Supp. 1495, 1510 (D. Kan. 1997) (no reason opinions could not have been stated earlier)). "To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek havoc in docket control and amount to unlimited expert opinion preparation." *Id.* Furthermore, the Cragg Report is based almost entirely on information available to Stiglitz in November 2006, when the report should have been submitted. The Cragg Report is nothing more than an attempt to make up for inadequate and incomplete preparation and should not be permitted.

The fact that Stiglitz attempted to reserve the right to submit the Cragg Report should have no effect. To allow a party to reserve a right to submit a report a year after the deadline is contrary to the law and would work substantial injustice. Fed. R. Civ. P. 26(a)(2) calls for a complete explanation of the theories being offered by the expert and the reasons, bases and data therefore. A reservation of the right to develop and explain the expert's theory later does not meet this requirement. *See Rambus* 145 F. Supp. 2d at 728-29 ("The unilateral assertion of a 'reservation of rights,' on which [the plaintiff] fastens its justification for [the expert's] belated report, simply is of no effect.").

It is clear that Stiglitz made no effort submit a timely expert damages report and there is no justification for the inordinate delay. Accordingly, the late submission of the Cragg Report is a result of inadequate preparation and does not constitute a supplemental report under Rule 26(e)(1).

**C.     The Cragg Report is not a Rebuttal Report.**

The Cragg Report does not qualify as a rebuttal report because Cragg did not even mention Aucone or his conclusions in his report. In any event, if Stiglitz intended the Cragg Report to serve as a rebuttal report, he missed the deadline set forth in the Court's Scheduling

Order by almost nine months. *See* December 4, 2006 Scheduling Order. Thus, to the extent that the Cragg Report can be considered a rebuttal report, it should be stricken for the same reasons as described above.

### D. In Addition to Striking the Cragg Report, the Court Should Award Bank Attorneys' Fees.

The Court should impose sanctions against Stiglitz in the form of attorney's fees in order to encourage adequate pretrial preparation, to ensure that Stiglitz will not profit from his own failures and to eliminate prejudice to Bank. *See Akeva*, 212 F.R.D. at 312.

Both Rule 16 and Rule 37 permit the Court to impose sanctions in the form of attorney's fees and reasonable expenses for any non-compliance. *See Novak v. Capital Management & Development Corp.*, 241 F.R.D. 389, 396 (D. D.C. 2007) (holding that "[t]he simple truth of the matter is that Defendants did not make the disclosures as to their expert witnesses that are required by the Federal Rules of Civil Procedure and Plaintiffs had no choice but to move to strike them." The court awarded attorneys' fees and costs to the Plaintiffs related to the motion to strike.); *Akeva*, 212 F.R.D. at 312 ("When there is a substantial violation of Rule 16(f), even without bad faith, deliberation or other aggravating factors, some sanctions in the form of attorney's fees and cost-shifting is not inappropriate in order to (1) act as a general deterrent to violation of the court's order, (2) encourage adequate pretrial preparation, (3) ensure the party will not profit by its own failures, and (4) eliminate prejudice to the opposing party. (citing *Old Country Toyota Corp. v. Toyota Motor Distributors, Inc.*, 168 F.R.D. 134 (E.D. N.Y. 1996)).

Here, there has been a substantial violation of the Court's Orders and the Federal Rules of Civil Procedure. Bank had no choice but to file this Motion. She should not have to bear the costs associated with Stiglitz's failure to timely submit his expert reports.

**III.    CONCLUSION**

For the foregoing reasons, Bank respectfully requests entry of the attached Order granting Bank's Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg From Testifying to Any of the Topics Addressed in His Report and providing for fees in connection with this Motion.  In the event the Court chooses not to strike the Cragg Report, Bank requests that she be awarded the fees and costs associated with responding to the Cragg Report, and in connection with the belatedly cancelled deposition of her own expert.

Respectfully submitted,

| | |
|---|---|
| DATED: November 27, 2007 | ___s/ Meredith E. Werner___<br>Richard A. Simpson, D.C. Bar No. 411893<br>Charles A. Jones, D.C. Bar No. 449127<br>Meredith E. Werner, D.C. Bar No. 493455<br>ROSS, DIXON & BELL, LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006-1040<br>Phone: (202) 662-2000<br>Fax: (202) 662-2134<br><br>*Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

 I hereby certify that a copy of the foregoing Memorandum in Support of the Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg From Testifying to Any of the Topics Addressed in His Report was filed electronically with the Court on November 27, 2007.

               s/ Meredith E. Werner
               Meredith E. Werner

360775 v 1