## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **JOSEPH E. STIGLITZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1826 RJL** |
| | ) | |
| **RITA M. BANK,** | ) | |
| | ) | |
| **Defendant** | ) | |

_____)

### MEMORANDUM IN SUPPORT OF PLAINTIFF JOSEPH E. STIGLITZ'S OPPOSITION TO DEFENDANT RITA BANK'S MOTION TO STRIKE THE EXPERT REPORT OF MICHAEL CRAGG AND TO PRECLUDE MICHAEL CRAGG FROM TESTIFYING TO ANY OF THE TOPICS ADDRESSED IN THE REPORT

Plaintiff, Joseph E. Stiglitz (hereinafter referred to as "Stiglitz" or "Plaintiff"), by and through his undersigned counsel, David G. Whitworth, Jr. and Toni-Ann DiMaggio of Whitworth & Trunnell, PA, and Linda M. Hamilton, and pursuant to Federal Rule 16(f), 26(a)(3), 26(e), and 37(c), hereby files this Memorandum in Support of Plaintiff's Opposition to Defendant Rita Bank's Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg from Testifying to any of the Topics addressed in the Report.

### I.     RELEVANT FACTS

This matter arises out of a legal malpractice action wherein the Plaintiff alleges the Defendant breached the standard of care when representing the Plaintiff's interests in his divorce case. Specifically, the Plaintiff alleged the Defendant breached the applicable standard of care when she: (i) failed to negotiate a settlement of the Plaintiff's divorce in the District of Columbia; (ii) failed to file suit in the District of Columbia upon Plaintiff's specific instruction to

1

do so, and before the Plaintiff established residency in an alternate jurisdiction; (iii) failed to advise the Plaintiff of the potential ramifications of establishing residency in the State of New York and in Manhattan; and (iv) failed to protect the Plaintiff from the enhanced earnings and celebrity status consequences he faced in New York. Plaintiff is a world renowned economist, professor, international bestselling author, and a Nobel Prize Winner in Economics.

On November 15, 2006, in accordance with the Court's Scheduling Order and by agreement of the parties, the Plaintiff designated two standard of care experts, namely Glenn C. Lewis and Marcy L. Wachtel.[1] In addition, the Plaintiff named two (2) economic experts used in the underlying divorce litigation, including Michael I. Cragg, Ph.D. (hereinafter referred to as "Cragg"), and the Plaintiff reserved the right to testify on his own behalf as both a fact and expert witness. In Plaintiff's Expert Witness Designation, Plaintiff incorporated by reference the Expert Report of Michael Cragg, dated January 26, 2004, and the Expert Rebuttal Report of Michael Cragg, dated March 9, 2004. The Defendant had the opportunity to review both reports in or around February 2005, and further, both reports were exchanged in discovery on March 21, 2006, or prior thereto. Moreover, Plaintiff's Expert Witness Designation, reserved the right to supplement as discovery continued and reserved "the right to elicit expert testimony from any of the parties, fact witnesses, or other experts who may be called to testify in this case and to further designate additional expert testimony or opinions based on additional discovery that may be obtained in this case or the opinions of other experts that may be designated by the defense." See Plaintiff's Expert Witness Designation, page 7, attached hereto and incorporated herein as

---

[1] Pursuant to the December 4, 2006 Scheduling Order, the deadline for Plaintiff's Expert Witness Disclosures was November 15, 2006; the deadline for Defendant's Expert Witness Disclosures was January 15, 2007; and the deadline for the close of expert discovery was April 15, 2007. However, through the deadline for Defendant's Expert Witness Disclosures was extended by consent to February 8, 2007.

Exhibit A.  Thus, as early as November 15, 2006, the Plaintiff placed the Defendant on notice that Plaintiff's experts, including Cragg, would respond to newly discovered evidence or testimony.

Although the Defendant sent Plaintiff's counsel a letter on December 4, 2006, indicating "we believe you are precluded from eliciting opinions at trial from Messrs. Johnson and/or Cragg regarding damaged allegedly sustained by Mr. Stiglitz as a result of the alleged malpractice," the Defendant never formally objected to or moved to strike the Plaintiff's Expert Witness Designation in accordance with the Court's rules.  See Defense Counsel's letter, dated December 4, 2006, attached hereto and incorporated herein as Exhibit B.  Despite the contentions contained in the December 4, 2006 letter, Plaintiff's counsel did not agree the designation was improper, and Plaintiff's counsel communicated their beliefs to opposing counsel.

Thereafter, on February 8, 2007, the Defendant timely disclosed their expert witnesses, including Robert F. Aucone (hereinafter referred to as "Aucone"), a purported damages expert. Aucone's expert witness report failed to provide any substantive analysis, rather Aucone's report merely restated black letter law regarding the Federal Rules of Evidence and the difference between lay opinion testimony and expert witness testimony.  Aucone is a certified public accountant, not an attorney, and thus has no authority to cite his opinions as they relate to the meaning of the Federal Rules of Evidence.

As early as January 4, 2007, the parties discussed the possibility of private mediation. However, due to the parties' difficult travel schedules and trial calendars, the parties were unable to schedule mediation before May 23, 2007.  Due to the issues surrounding scheduling a mediation date, the parties agreed to amend the current Scheduling Order to allow for the parties to attempt to mediate the case prior to expending significant monies conducting expert discovery

and depositions.[2]  Nevertheless, in an effort to avoid unnecessary delay of the proceedings, with each new mediation date, the parties scheduled potential dates for expert witness depositions.

On April 10, 2007, in anticipation of the new mediation date and the pending Joint Motion for Extension of Time, Plaintiff's counsel proposed dates to depose Plaintiff's and Defendant's expert witnesses, and further, Plaintiff's counsel inquired as to when the Defendant wanted to depose Cragg.  *See* April 10, 2007, email attached hereto and incorporated herein as Exhibit C.  On April 11, 2007, Defendant's counsel sent Plaintiff's counsel an email suggesting they did not believe Plaintiff's properly designated Cragg, "and in hopes of avoiding unnecessary conflict, we agree that we should defer scheduling depositions of those individuals until such time as you decide that you do wish to call them as experts in the case and the court rules that you may do so."  See April 11, 2007 email attached hereto and incorporated herein as Exhibit D.

The parties attended mediation on May 23, 2007; however, they were unsuccessful in resolving the matter.  Through joint agreement, the parties agreed to continue mediation to a mutually agreeable date.  The parties filed two (2) additional joint motions for extension of time to extend the deadline for the close of expert discovery until after the parties could conclude mediation on September 24, 2007.  As the parties had done previously, counsel worked to schedule dates to depose Plaintiff's and Defendant's expert witnesses.  On September 5, 2007, Plaintiff's counsel alerted Defendant's counsel of Cragg's pending supplemental expert report and invited the Defendant to schedule the deposition of Cragg.  *See* September 5, 2007, email attached hereto and incorporated herein as Exhibit E.  Cragg's supplemental report was prepared

---

[2] Thereafter, the parties, through joint motions for extension of time, filed two (2) subsequent extensions of time to extend the deadline for the close of expert discovery until after the parties could conclude mediation on May 23, 2007.

in response to the depositions of the fact witnesses and the supplemental interrogatories of the parties, including the testimony specifically related to damages.  Defendant's counsel declined to schedule said deposition alleging, "Cragg was not designated as an expert."  *See* September 5, 2007, email attached hereto and incorporated herein as Exhibit F.

On October 29, 2007, eighteen (18) days prior to the close of expert discovery, Plaintiff's counsel supplemented Plaintiff's Expert Witness Designation in accordance with Rule 26(a)(2) and 26(e), by providing the Defendant's with the Disclosure Report of Michael Cragg and fifty (50) pages of documentation including documents Cragg reviewed in reaching his opinion expressed therein, as well as correspondence.  *See* October 29, 2007 letter, attached hereto without exhibits and incorporated herein as Exhibit G.

Although expert discovery was scheduled to close on November 16, 2007, the parties scheduled the depositions of the parties' expert witnesses between November 11, 2007 and November 19, 2007.  At all times relevant hereto, the parties scheduled Aucone's deposition for November 13, 2007, to be conducted via video conference, and remotely from the office of Defendant's counsel.  At no time relevant hereto did the Defendant's counsel indicate to Plaintiff's counsel that they intended to fly to Denver, Colorado for the video conference.  Rather to the contrary, Defendant's counsel invited Plaintiff's counsel to their Washington, DC offices as they had videoconferencing capabilities.

On November 9, 2007, one (1) week prior to the close of expert discovery, Plaintiff's counsel provided the Defendant with Cragg's supplemental report and exhibits.  A copy of Cragg's supplemental report is attached hereto without exhibits and incorporated herein as Exhibit H.

Thereafter, on November 15, 2007, November 16, 2007, and November 30, 2007 respectively, Defendant's counsel supplemented Bank's document production as related to Defendant's expert, Catherine E. Ross and Defendant's expert, Armin F. Kuder.  On November 27, Defendant filed a Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg from Testifying to any of the Topics addressed in the Report.

To date, the Court has not scheduled a Pretrial Conference or a trial date in the above captioned matter.  Moreover, although the Court scheduled a Status Conference for November 28, 2007, the Court, *sua sponte*, cancelled the Status Conference and the matter has not been rescheduled.

## II.     ISSUES PRESENTED

The Defendant seeks to strike the expert report of Cragg, dated November 9, 2007, and further to preclude Cragg from testifying to the topics addressed in his report.  First, the Court must make a determination as to whether the Plaintiff violated Rule 16(f) by violating the Court's Scheduling Order as it related to Rule 26(a)(2) and the appropriate disclosure of expert witnesses, or Rule 26(e) and the supplementation of disclosures.  If the Court determines the Plaintiff's violated the Scheduling Order by improperly designating Cragg, or if the Court determines the Plaintiff's supplemental report was not "supplemental", then the Court must determine whether the failure was harmless.  Finally, if the Court determines the Plaintiff committed said failures or violations, and if the failures or violations were harmless to the Defendant, the Court must determine what sanctions, if any, are appropriate under Rule 37(c).

### III.    ARGUMENT

A.    PURSUANT TO RULE 16(F), THE PLAINTIFF WAS IN FULL COMPLIANCE WITH THE COURT'S SCHEDULING ORDER AND THUS ABLE TO SUPPLEMENT AND AMEND PLAINTIFF'S EXPERT WITNESS DESIGNATION.

The Plaintiff did not violate the Court's Scheduling Order by supplementing the report of an expert witness previously identified by the Plaintiffs.  Generally, "when a dispute arises concerning violation of expert disclosure obligations pursuant to a court approved discovery plan, the Court should first look to Rule 16(f) for determining both compliance and sanctions." *Akeva, LLC v. Mizuno Corporation*, 212 F.R.D. 306, 309 (M.D. N.C. 2002).  Specifically, Rule 16(f) governs sanctions when a party "fails to obey a scheduling order."  Fed. R. Civ. P. 16(f).

The *Akeva* defendants filed two (2) motions to preclude the plaintiff's expert reports. *Akeva* at 308.  One motion addressed a subsequent report of plaintiff's expert, determined not to be a supplemental or rebuttal report, and the second motion addressed the report of an additional expert designated three (3) days after the close of discovery.  *Id*. at 308-309.  At the time discovery closed, the *Akeva* Court had already set a trial date.  *Id*.  Although the *Akeva* Court precluded the testimony of one expert, the *Akeva* Court allowed the testimony of the other, determining the designation was "marginally expeditiously" and made "with no ulterior motives."  *Id*. at 312.  Moreover, only after the Court addressed whether the *Akeva* plaintiff's violated Rule 16(f), did the *Akeva* Court address sanctions.

Defendant skips the first step in her analysis of Rule 16(f) regarding whether the Plaintiff complied with the Court's scheduling order.  Unlike *Akeva*, Plaintiff timely and appropriately filed his expert designation of Cragg in November of 2006.  Pursuant to Rule 26(a)(2) and in accordance with the agreed upon scheduling order, Plaintiff timely identified Cragg in Plaintiff's Expert Witness Designation.  Further, Plaintiff appropriately incorporated by reference the

Expert Report of Michael Cragg, dated January 26, 2004, and the Expert Rebuttal Report of Michael Cragg, dated March 9, 2004, previously provided to the Defendant through discovery on March 21, 2006, or prior thereto.  Moreover, Plaintiff reserved the right to supplement his expert witness designation and Plaintiff's counsel informed Defendant's counsel of Cragg's specific intention to supplement his report as discovery continued.  Despite Defendant's letter dated December 4, 2006, stating what counsel "believed" about the viability of Plaintiff's Expert Witness Designation, Defendant never formally filed a motion to preclude Cragg from testifying until November 27, 2007, more than one (1) year after Plaintiff designated Cragg.

Here, Plaintiff supplemented Cragg's report within the expert discovery deadline, which is dissimilar to *Akeva*.  Plaintiff provided supplements to Plaintiff's Expert Witness Designation and the reports incorporated therein on October 29, 2007 and November 9, 2007.  In an effort to attempt mediation and reduce litigation costs and specifically those costs associated with experts, the parties agreed to extend the expert discovery deadline to November 16, 2007, approximately one (1) year beyond Plaintiff's initial deadline to disclose expert witnesses.  While mediation was pending, the parties agreed to postpone expert discovery.  In addition, both Plaintiff and the Defendant took advantage of the extended deadline, exchanging supplemental documents in accordance with Rule 26(a)(2) after the parties initially designated their experts.  In fact, Defendant continued to supplement her expert discovery until November 30, 2007, twenty-one (21) days after the Plaintiff filed Cragg's supplemental report.  Thus, it would be inequitable to preclude the Plaintiff from introducing Cragg's report or to preclude Cragg from testifying.  Should the Court grant Defendant's motion, the effect would be a sanction of the Plaintiff for discovery choices made by both parties.

As the deadline for Expert Witness Discovery did not close until November 16, 2007, the Plaintiff did not violate the Court's Scheduling Order or Rule 16(f) by supplementing his expert witness designation and report on October 29, 2007, and November 9, 2007, respectively. Moreover, unlike *Akeva*, this Court has not scheduled a Pretrial Conference or set the matter in for trial.  Rule 16(f) governs the imposition of sanctions related to compliance with Pretrial Conferences, scheduling, and case management.  Thus, as the Plaintiff did not violate the Court's Scheduling Order and this Court has not scheduled a Pretrial Conference, Plaintiff cannot be in violation of Rule 16(f).

B.     PURSUANT TO RULE 26(A)(3) AND LOCAL RULE 16.5, THE PLAINTIFF WAS IN FULL COMPLIANCE WITH THE COURT'S SCHEDULING ORDER AND THUS ABLE TO SUPPLEMENT AND AMEND PLAINTIFF'S EXPERT WITNESS DESIGNATION.

To date, the Court has not scheduled a Pretrial Conference or trial in the above captioned matter.  Rule 26(a)(3) provides "the supplementation of expert testimony must be made by the time disclosures are due under 26(a)(3)." *See Porter et al v. Hamilton Beach/Proctor Silex, Inc., et al*, 2003 Lexis 14089, at 15(D. W.D. Tenn. 2003), citing Fed. R. Civ. P. 26(a)(3).  Court's have held when the standard scheduling order does not contain a deadline for making 26(a)(3) disclosures, the  "deadline for supplementing Rule 26(a)(2)(B) expert disclosures could be as late as the filing of pretrial submissions as required by" the local rule. *Tucker, et al v. Ohtsu Tire & Rubber, Co., et al*, 49 F. Supp. 2d 456, 456-464 (D. Md. 1999).

In this case, Local Rule 16.5 governs pretrial statements and requires the parties to submit a pretrial statement "not less than eleven days prior to the final Pretrial Conference."  LCvR 16.5(a)(2).  Further, said pretrial statements shall include a schedule of witnesses and expert witness, and "no objection shall be entertained to a witness or testimony on the ground that the witness or testimony was disclosed for the first time in a party's Pretrial Statement, unless the

party objecting has unsuccessfully sought to learn the identity of the witness or the substance of the testimony by discovery, and the court…finds the information to have been wrongfully withheld." LCvR 16.5(a)(5). Therefore, the Plaintiff is permitted to supplement his expert witness designation in accordance with Rule 26(a)(3) and Local Rule 16.5 because no Pretrial Conference or trial has been set.

Plaintiff identified Cragg as an expert in Plaintiff's Expert Witness Designation, filed on November 15, 2006, and incorporated by reference the Expert Report of Michael Cragg and the Rebuttal Expert Report of Michael Cragg. Plaintiff's counsel repeatedly offered Defendant's counsel the opportunity to schedule the deposition of Cragg; however, Defendant's counsel declined. Hence, Defendant cannot argue she sought to learn the identity of Cragg or the substance of his testimony, which Defendant has had since November of 2006.

C.    PURSUANT TO RULE 26(E), PLAINTIFF HAD A DUTY TO SUPPLEMENT PLAINTIFF'S EXPERT WITNESS DESIGNATION AT APPROPRIATE INTERVALS

Generally, Rule 26(e) provides "a party is under a duty to supplement at appropriate intervals its disclosures." Fed. R. Civ. P. 26(e)(1). More specifically, "with respect to testimony of any expert from whom a report is required…the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due." *Id*. The plain language of Rule 26(e) provides for supplements at appropriate intervals, preventing the need for parties to continually supplement each additional fact, opinion, or finding. As listed in the notes and commentary for Rule 26(e), the supplementation "need not be made as each new item of information is learned but should be

made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed. R. Civ. P. 26 advisory committee's note.

Although a Court will not "accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions," Rule 26(e) clearly allows for supplementation when "a party learns….the information disclosed is incomplete or incorrect." See *Akeva*, at 310, citing Fed. R. Civ. P. 26(e)(1). Here, Cragg supplemented his report at appropriate intervals as discovery progressed and after the parties determined they could not resolve the case through mediation. The supplemental report is further explanation of calculations utilizing actual data. By the very nature of the damages analysis, Cragg had to wait to fine-tune his report until after the Defendant was deposed and after Plaintiff's standard of care experts had an opportunity to synthesize the alleged negligence and causal relation of damages.

Cragg's expert report exchanged on October 29, 2007, supplemented the Expert Report of Michael Cragg, dated January 26, 2004, and the Expert Rebuttal Report of Michael Cragg, dated March 9, 2004, initially filed in Stiglitz's divorce litigation. Moreover, Cragg's November 9, 2007 report further supplemented his October 29, 2007 report. Said supplementations were in accordance with Rule 26(e), Rule 26(a)(3), the Court's Scheduling Order, and prior to the Court setting a date for a Pretrial Conference.

> D.    THE PLAINTIFF DID NOT APPLY AMBUSH TACTICS TO GAIN A TACTICAL ADVANTAGE, RATHER PLAINTIFF'S EMPLOYED REASONABLE EFFORTS TO SUPPLEMENT PLAINTIFF'S EXPERT WITNESS DESIGNATION AS IT RELATED TO CRAGG

Although the Plaintiff does not concede Plaintiff's Expert Witness Disclosure was technically deficient, the Court will not prejudice a party for a timely technically deficient disclosure of an expert witness, under Rule 26(a)(2)(B), so long as the supplement is made at an appropriate interval and with promptness to pending trial. *Tucker* at 456-464. In *Tucker*, the

"plaintiffs timely filed their Rule 26(a)(2)(B) disclosure." *Tucker* at 458. However, the plaintiff's disclosure "did not comply in all particulars with the requirements of Fed. R. Civ. P. 26(a)(2)(B)…regarding his qualifications, list of publications, compensation and prior testimony." *Id*. During the deposition, the *Tucker* expert reserved the right to supplement his report "subject to what is revealed by discovery." *Id*. at 459. Then, after deposition testimony brought new issues to the forefront, "ten days before the discovery cutoff, and more than four months before the scheduled trial date, plaintiffs' counsel hand delivered to defendants' counsel a letter advising [expert's]…Rule 26(a)(2)(B) disclosure was being supplemented to reflect…additional investigation." *Id*. Thereafter the *Tucker* defendants filed a motion to preclude the supplemental testimony. *Id*. at 460.

The United States District Court for the District of Maryland held "in light of the large window of time allowed by the….rules to supplement expert disclosures, the Court should not automatically permit testimony at trial as to the newly disclosed information if, considering the facts of the case, it is convinced that doing so would be unfair or cause undue delay or expense." *Id*. at 461. The Court adopted a four-part test analyzing the reason for the supplement, the importance of the information to the expert's testimony, the potential prejudice, and the availability of a continuance. *Id*. Following its analysis, the *Tucker* Court allowed the supplemental testimony of plaintiffs' expert based on the additional investigation, citing "the disclosure was both technically timely, and sufficiently in advance of trial that it cannot be fairly characterized as 'ambush tactics.'" *Id*. at 462. Moreover, the *Tucker* Court determined defendant's position regarding the time and expense of further depositions was not alone sufficient to grant their motion to preclude the testimony. *Id*.

Our case is analogous to *Tucker*.  First, Plaintiff timely designated Cragg.  In addition, Plaintiff's supplementation of Cragg's report was both technically timely and sufficiently in advance of trial as no trial date or Pretrial Conference date have been set.  In *Tucker*, the designation was ten (10) days before the close of discovery and four (4) months before the trial date; here, Plaintiff's final supplement was seven (7) days before the close of discovery and clearly in ample time before a potential trial date and without prejudice to the Defendant. Moreover, just as the *Tucker* expert reserved the right to supplement his opinions as discovery continued and in accordance with additional investigation, the Plaintiff reserved said rights as they related to Cragg.  At all times relevant hereto, the Plaintiff kept Defendant apprised of his intent to use Cragg as an expert witness and to supplement Cragg's report.  Defendant's counsel "could have scheduled, if not actually taken…deposition testimony" of Cragg before the close of expert discovery, or "requested a brief extension of discovery for the limited purpose of completing discovery regarding the supplemental opinions."  *Id*. at 461.  Yet, just as in *Tucker*, this was not done, and instead the Defendant chose to file a motion subsequent to the close of expert discovery.

Finally, like the *Tucker* defendants, the Defendant's argue allowing Cragg's report and/or allowing Cragg to testify pertaining to the topics addressed in his report would be expensive. Just as in *Tucker*, the expense of the deposition alone cannot preclude Cragg's testimony.  Thus, just as the *Tucker* expert was allowed to testify, so should Cragg, as Plaintiff's tactics cannot fairly be characterized as 'ambush tactics.'

E.    ASSUMING *ARGUENDO* THE COURT DETERMINES CRAGG'S REPORT WAS UNTIMELY SUBMITTED AND/OR NOT SUPPLEMENTAL IN NATURE, SAID ERROR WAS HARMLESS

Assuming *arguendo* the Court determines Cragg's November 9, 2007, report was not submitted timely, or that said report was not supplemental in nature, Plaintiff's error is harmless and not subject to sanctions. Rule 37(c) provides "a party without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, *unless such failure is harmless*, permitted to use" said evidence at trial. Fed. R. Civ. P. 37(c), emphasis added.

Clearly, Plaintiff's submission of Cragg's expert witness disclosure on November 9, 2007, was harmless. Both the Plaintiff and the Defendant agreed to postpone or stay expert discovery in an effort to attempt mediation. During the time the parties were attempting to schedule mediation, from January 4, 2007, until the second mediation on September 24, 2007, the parties' experts sat idle in an effort to save money on fees and deposition costs. Plaintiff's counsel kept Defendant's counsel apprised of their intention regarding Cragg, offered several chances to schedule Cragg's deposition, and continued to offer to schedule Cragg's deposition. In fact, Plaintiff's counsel postponed the deposition of Aucone, Defendant's expert, in an attempt to accommodate Plaintiff and the Defendant.[3]

F.    THE COURT MUST APPLY A FIVE PART TEST TO DETERMINE WHETHER SANCTIONS SHOULD BE IMPOSED UNDER RULE 37

The United States District Court for the Eastern District of Virginia adopted a five-part test, analogous here, to determine whether an expert report should be excluded as a sanction

---

[3] Plaintiff's counsel asked Defendant's counsel to postpone the video conference deposition of Aucone, as Plaintiff's counsel was having support staff problems with their office. At a later date, Plaintiff's counsel commented this would also give Aucone extra time to review Cragg's report.

under Rule 37(c), after a determination the party violated Rule 16(f).  See *Rambus, Inc. v. Infineon Technologies, et al*, 145 F. Supp. 2d. 721, 721-736 (D. E.D. Va., 2001).  In their motion, the Defendant skips the first step of the 16(f) analysis, moving directly to sanctions under Rule 37(c).  Further, the Defendant misapplies a four-part rule in the discussion of *Rambus*, rather than using the five-part test.  *See* Defendant's Motion to Strike, page 7.

The applicable five-part test applied in *Rambus* and adopted from relevant Fourth Circuit authority, states the court must exercise discretion by applying the following factors: "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony."  See *Rambus* at 727, citing *Burlington Insurance Co. v. Shipp*, 215 F. 3d. 1317 (4th Cir. 2000, unpublished).

In Rambus, "both parties complied with the court-ordered schedule by submitting their expert reports….however, both parties submitted additional expert reports beyond the dates scheduled by the Court" for the close of expert discovery.  *Id*. at 723.  Specifically, the party filed the report "more than a month after the close of expert discovery," at a time when "the trial was scheduled to begin in a week."  *Id*. at 728.  One party challenged the submission alleging the new report "contains entirely new theories on the issues."  *Id*. at 723.  The *Rambus* Court addressed all five (5) prongs of the test, finding although the testimony was important, the weight of the fifth factor could not change the analysis on the other factors.  *Id*. at 735.  The *Rambus* Court granted the motion to preclude portions of the expert testimony that included theories not be previously presented, but allowed other expert testimony.

Unlike the circumstances in *Rambus*, after applying the five-part test, the Court cannot impose sanctions against the Plaintiff under Rule 37(c). First, the Defendant cannot argue surprise as it relates to Cragg or his report. In *Rambus*, the party exchanged his expert report long after the close of expert discovery, and a week prior to trial. Here, Plaintiff exchanged Cragg's report one (1) week prior to the close of expert discovery, and to date, no trial date has been set. Further, Cragg's report does not set forth new theories for damages, rather Cragg's report expands on the damages set forth in Stiglitz's interrogatories and supplemental interrogatories, all of which were exchanged prior to the close of fact discovery. In *Rambus*, both parties agreed the supplemental expert report at issue included substantial changes from the previous expert reports and included new theories. In the instant case, the Cragg supplemental report does not contain substantial changes from the damages categories and estimates previously reviewed by Aucone, the Defendant's damages expert. The damage categories, i.e. post separation earnings, present and future royalties, certain retirement accounts, post separation mortgage payments, enhanced earnings, and the expenses for New York legal bills and experts, are the same issues Plaintiff addressed in his answers to interrogatories and during Plaintiff's deposition testimony (all of which Aucone reviewed in preparation of his expert report). Further, the total amount of damages claimed in Cragg's analysis was reduced from prior reports, not increased. Therefore, the Defendant cannot argue surprise as it relates to Cragg or his report.

Moreover, distinguishable from *Rambus*, the parties hereto have the ability to cure the surprise by allowing the Defendant the opportunity to depose Cragg after Aucone had the opportunity to fully review Cragg's report, all of which can be accomplished without the need of delaying the trial, Pretrial Conference, or other Status Hearing, none of which have been set. Again, unlike in *Rambus*, allowing Cragg's testimony and report would not disrupt trial.

In addition, the parties chose to stay expert discovery until they had an opportunity to fully conduct mediation in an effort to avoid unnecessary expense. Within approximately one month after the parties completed their last attempt at mediation, Cragg supplemented his report in the underlying litigation as to the net worth and enhanced earning capacity of Stiglitz by fine-tuning his calculations regarding Plaintiff's damages as a result of the alleged malpractice with actual data. Cragg based his analysis on the testimony of Bank and on the further reports of Plaintiff's standard of care experts. Cragg's report does not submit entirely new theories or categories of damages. Instead, Cragg's report fine tunes and scrutinizes the damage calculations made in Plaintiff's answers and supplemental answers to interrogatories. Finally, Cragg's report is vital to the succinct and impartial presentation of damages in the Plaintiff's case.

Defendant's cite *DAG Enterprises, Inc., et al. v. Exxon Mobil Corp., et al*, 226 F.R.D. 95 (D. D.C., 2005) in their argument, alleging Plaintiff had no valid reason for the delay. Reliance on *DAG* is misplaced where the evidence sought after the close of discovery had been available all along. However, unlike in *DAG*, where the plaintiff was attempting to subpoena evidence from a third party after close discovery, Cragg's report does not contain new evidence that was available at the outset. *Id.* at 95-97. Rather, Cragg's revised report is supplemental analysis in accordance with information available to Defendants through discovery.

Plaintiff acted in good faith and continues to afford the Defendant the opportunity to depose Cragg. Unlike the situation in *National Hockey League, et al. v. Metropolitan Hockey Club, Inc.*, *et al*, 427 U.S. 639 (U.S., 1976), where the party's failure to respond to crucial interrogatories displayed "flagrant bad faith" and "demonstrated callous disregard of responsibilities owed by counsel to the court and their opponents," Plaintiff's counsel repeatedly

offered Defendant's counsel the opportunity to schedule the deposition of Cragg. *Id.* Plaintiff should not suffer the consequences of the failure of Defendant's counsel to schedule the deposition of Cragg because Defendant's counsel "believed" Plaintiff improperly designated Cragg.

G.     ASSUMING *ARGUENDO* THE COURT DETERMINES IT IS APPROPRIATE TO SANCTION THE PLAINTIFF PURSUANT TO RULE 37(C), PRECLUDING THE ADMISSION OF CRAGG'S REPORT OR CRAGG'S TESTIMONY WOULD NOT BE APPROPRIATE

Rule 37(c) allows the Court to impose various sanctions on a party for failing to disclose required information. Fed. R. Civ. P. 37(c). Specifically, the Court may preclude the admission of evidence, "or in lieu of this sanction, the court….may impose other appropriate sanctions," such as an award of reasonable attorneys' fees or costs "caused by the failure." *Id.* In fact, the Courts have determined imposing a sanction to preclude an expert from testifying is the most drastic sanction possible. *See Freeland v. Amigo*, 103 F. 3d 1271, 1277-1281(6th Cir., 1997)(holding the "court abused its discretion by imposing the most drastic sanction possible upon the plaintiffs.").

Clearly, the facts of the aforementioned case do not warrant such a drastic sanction as precluding Cragg's Expert Witness Report or precluding Cragg from testifying to the topics contained within his initial and supplemental reports. Defendant argues she would be unduly burdened if Cragg were permitted to testify as to his report. Defendant states Aucone billed Twenty One Thousand Four Hundred Seventy Six Dollars ($21,476.00) to prepare a report, and said monies in preparation would be rendered useless. *See* Defendant's Motion, page 4, FN 1. Yet, Defendant failed to demonstrate at what point any expert fees would have been avoided or reduced as a result of Plaintiff's supplemental report.

Defendant also claims she incurred expenses to fly associate counsel to Colorado for the deposition of Aucone. However, said expenses were unnecessary based on the scheduling of the deposition via videoconference in the District of Columbia offices of Defendant's counsel. A copy of the Amended Notice of Deposition *Duces Tecum* and *De Bene Esse* of Robert F. Aucone, is attached hereto and incorporated herein as Exhibit I. Plaintiff's counsel had no way of knowing Defendant's associate was en route to Colorado when Plaintiff's counsel requested to postpone the deposition (which was granted without issue). Moreover, by their own admission, Defendant's associate counsel did not leave for Colorado until November 12, 2007, several days after the Plaintiff provided the final iteration of Cragg's report on November 9, 2007.

Nevertheless, the United States District Court for the District of Maryland denied defendant's motion for sanctions and to preclude evidence in *Tucker* regardless of defendant's claims that they would be forced to incur additional time and expenses to conduct discovery regarding the expert's new opinions. *Tucker* at 463. Thus, standing alone, Defendant's argument that she would have to spend monies to depose Cragg and monies to have Aucone review Cragg's report are not sufficient to grant Defendant's motion. Plaintiff had no control in the selection of Aucone or the manner in which Aucone prepared his expert report. Moreover, Defendant's cannot claim that the entirety of Aucone's fees were based on review of Stiglitz's expert report and not in any way related to the general defense of Defendant's claims. Upon review of Aucone's invoices, attached hereto collectively as Exhibit J, Aucone spent countless hours reviewing documents and deposition transcripts, including the deposition transcripts of the parties and other fact witnesses. Therefore, just as in the *Tucker* Court, "the costs to defendants of additional expert witness preparation do not necessarily require the exclusion of new expert opinions." *Id*.

If the Court is inclined to issue some monetary sanction, the Court should limit said sanction. The *Akeva* Court required the plaintiff to make their expert available to the defendant and to incur the costs associated with said expert's witness fee during the deposition. *Akeva* at 313. Assuming *arguendo* the Court is inclined to issue a monetary sanction, the Court should allow Cragg to testify as to his report and the findings therein, but require the Plaintiff submit Cragg for a deposition and pay the cost of the expert witness fees associated with Cragg's time during said deposition.

## IV.    CONCLUSION

Thus, pursuant to Rule 16(f), Rule 26(a)(3), and Local Rule 16.5, the Plaintiff was in full compliance with the Court's Scheduling Order and thus able to supplement and amend Plaintiff's Expert Witness Designation as it related to Cragg. Further, pursuant to Rule 26(e), Plaintiff had a duty to supplement Plaintiff's Expert Witness Designation at appropriate intervals, and supplementing said report within the expert discovery deadline was appropriate and timely. The Plaintiff did not apply ambush tactics and used reasonable efforts to supplement. However, assuming *arguendo* the Court determines Cragg's report was untimely submitted and/or not supplemental in nature, said error was harmless as the Court has not scheduled a Pretrial Conference or a trial date. When applying the five-part test under Rule 37(c), the Plaintiff's conduct does not warrant sanctions. However, assuming *arguendo* the Court wishes to impose sanctions against the Plaintiff, precluding the expert report or Cragg's testimony would be inappropriate. Rather, if the Court is inclined to impose sanctions, the Court should require the Plaintiff to pay Cragg's expert witness fees associated with the deposition.

WHEREFORE, the Plaintiff, Joseph E. Stiglitz, by and through his undersigned counsel, David G. Whitworth, Jr. and Toni-Ann DiMaggio of Whitworth & Trunnell, PA, and Linda M.

Hamilton, hereby requests the Court to dismiss Defendant Rita Bank's Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg from Testifying, and for any such further relief as the Court deems just and proper.

Respectfully submitted,

_____ s/ David G. Whitworth, Jr. _____
David G. Whitworth, D.C. Bar No. 224139
Toni-Ann DiMaggio, D.C. Bar No. 490860
WHITWORTH & TRUNNELL, P.A.
2101 Defense Highway
Crofton, MD 21114
(410) 793-3977
dwhitworth@wstlaw.com
tdimaggio@wstlaw.com

_____ s/ Linda M. Hamilton_____
Linda M. Hamilton, D.C. Bar No. 336446
1300 Mercantile Lane, Suite 149
Largo, Maryland 20774
(301) 925-7833
PGLAWI@aol.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, David G. Whitworth, Jr., hereby certify that a copy of the foregoing Memorandum of Law in Support of Plaintiff Joseph E. Stiglitz's Opposition to Defendant Rita Bank's Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg from Testifying to any of the Topics addressed in the Report was filed electronically with the Court on December 14, 2007.

_____ s/ David G. Whitworth, Jr. _____
David G. Whitworth, D.C. Bar No. 224139

21