# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH E. STIGLITZ,<br><br>       Plaintiff<br><br><br>RITA M. BANK,<br><br>       Defendant | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 05-1826 RJL<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S EXPERT WITNESS DESIGNATION

COMES NOW the Plaintiff, Joseph E. Stiglitz, by and through his undersigned counsel, David G. Whitworth, Jr. and Toni-Ann DiMaggio of Whitworth & Trunnell, PA and Linda Hamilton of the Law Office of Linda Hamilton, and pursuant to the Court's Scheduling Order and the parties' stipulation, a copy of which is attached hereto as exhibit 1, Plaintiff designates the following experts expected to be called at trial in accordance with Federal Rule of Civil Procedure 26(b)(4):

    1      Glenn C. Lewis, Esquire
            The Lewis Law Firm, P.C.
            805 15th Street, NW
            Suite 200
            Washington, D.C. 20005
            (202) 408-0655

Glenn C. Lewis, Esquire has been retained as a legal standard of care expert who is expected to testify at the time of trial in the above-captioned matter on behalf of the Plaintiff, Joseph E. Stiglitz (hereinafter referred to as "Stiglitz" or "Plaintiff"). Mr. Lewis will testify as to the relevant standard of care required of the Defendant, and as to the breach of the standard of care by the Defendant in her representation of the Plaintiff in his divorce matter in the District of Columbia. Specifically, Mr. Lewis will testify as to the Defendant's breach of the standard of

1

care when she: (i) failed to negotiate a settlement of the Plaintiff's divorce in the District of Columbia; (ii) failed to file suit in the District of Columbia before the Plaintiff established residency in an alternate jurisdiction; (iii) failed to advise the Plaintiff of the potential ramifications of establishing residency in the State of New York and in Manhattan; and (iv) failed to protect the Plaintiff from the enhanced earnings and celebrity status consequences he faced in New York. In addition, Mr. Lewis will offer his opinion as to the likely resolution of Plaintiff's divorce if it were settled and/or litigated in the District of Columbia and the potential litigation costs in the District of Columbia. Moreover, Mr. Lewis will testify as to the potential conflict of interest inherent in Defendant's continued representation of the Plaintiff when she was entertaining to join firms with the counsel for Stiglitz's estranged wife.    A letter summarizing Mr. Lewis' opinion is attached hereto and incorporated herein as Exhibit 2.

Mr. Lewis' background, training, and experience are summarized in his *Curriculum Vitae*, attached hereto as Exhibit 3 and incorporated hereby. Mr. Lewis is an attorney and the chairman and founding member of The Lewis Law Firm, P.C., a national practice emphasizing in family and matrimonial law. Mr. Lewis has tried cases in more than twenty five (25) states and the District of Columbia, and has been counsel in numerous billion dollar divorce cases. Mr. Lewis has participated in several of the largest asset distributions in American divorce law, both at the trial and appellate levels. Mr. Lewis' expertise stems from his diplomatic and strategic handling of complex family and matrimonial law matters.

In addition to the accolades of his numerous clients, Mr. Lewis is respected among his peers in the field of matrimonial law. Mr. Lewis is peer selected for inclusion in *The Best Lawyers in America*, the *Legal Elite in Virginia Business* magazine, the *Top Ten Leaders* among family law attorneys in Washington, DC, and is a Diplomat and Fellow of the *American Academy of Matrimonial Lawyers*. Moreover, in March of 2000, *Washingtonian* magazine

recognized Mr. Lewis as one of the top two divorce attorneys in the only comprehensive survey ever taken of divorce lawyers in the D.C. Metropolitan Area, and he was recently featured as "*The Doyen of Divorce*" in *Washington Business Journal*. Mr. Lewis also received the Virginia State Bar Family Law Lifetime Achievement Award in 2004, an honor presented to a few select individuals who have been identified for having made a substantial career contribution to the practice and administration of family law in Virginia.

In July of 2006, Mr. Lewis was recognized by the Virginia Law Foundation and presented with the *Gardiner G. DeMallie, Jr. Continuing Education Award* "in recognition of an individual who has contributed outstanding service to continuing legal education in Virginia, possessing the highest level of professionalism, integrity and commitment to legal learning." In addition, in 1997 the Virginia State Bar named Mr. Lewis "Local Bar Leader of the Year," following his service as President of the Fairfax Bar Association (FBA) in Fairfax, Virginia.

Mr. Lewis has also served and chaired innumerable policy boards, study groups, and task forces. Most notably, from 1992 to 1995 Mr. Lewis served the Supreme Court in efforts to create A Family Court for Virginia, developing rules and procedures and facilitating transition to a new court system. Since 2000, Mr. Lewis has served and chaired important subcommittees of the Supreme Court Pro Se Litigation Task Force and the Chief Justice's Child Custody Pro Bono Commission. In addition, in 1993 Mr. Lewis was one of two trial lawyers on the SJR 243, Commission on Youth Work Study Group, appointed by the Virginia General Assembly. In this capacity, Mr. Lewis lead the effort to revise and re-codify Virginia's child custody and support laws in 1993, leading to the passage of Virginia Code 20-124.1, et seq.

Additionally, Mr. Lewis is one of twelve leading divorce lawyers in America contributing chapters to Inside the Minds-the Art and Science of Divorce Law (2004). During the last ten (10) years, Mr. Lewis has published the following articles:

3

"A Roadmap to Divorce Law." Inside the Minds: Leading Divorce Lawyers - Industry Insiders on Successful Tactics for Achieving the Best Results for One's Client

Seek Out Some Words of Advice: Early Counsel Will Help the Family Whether or Not the Marriage Can Be Saved. Legal Times June 2003.

"Havoc in Virginia Child Support: The legacy of *Riggins* and *Shoup* " The Journal of Virginia Trial Lawyers Association. Fall 2002

During the last four (4) years, Mr. Lewis has not testified as an expert witness. More than four (4) years ago, Mr. Lewis testified in the Circuit Court for Arlington County, Virginia as a legal expert. Mr. Lewis is currently employed on the Plaintiff's behalf at an hourly rate of Five Hundred Dollars ($500.00) per hour for consultation and document review and Seven Hundred Dollars ($700.00) per hour for testimony.

Mr. Lewis' opinions are based on his training and experience and on his review of the written materials provided to him in connection with this matter, which are set forth in Exhibit 4, attached hereto and incorporated hereby. Mr. Lewis will rely on supplemental documentation, discovery, and witness testimony that will be provided to him as discovery continues in the above-captioned matter. In addition, Mr. Lewis will base his opinions and trial testimony on the sworn testimony, exhibits, and evidence presented at trial.

Mr. Lewis' opinion may further express opinions that the time of trial related to the necessity, fairness, and reasonableness of the cost and attorneys' fees incurred by the Plaintiff to mitigate his damages proximately caused by the errors and omissions of the Defendant. Mr. Lewis may also express his opinions related to the opinions of other experts that may testify at the time of trial.

4

2.    Marcy L. Wachtel
      Katsky Korins LLP
      605 Third Avenue
      16th Floor
      New York, New York 10158
      (212) 953-6000

Marcy L. Wachtel, Esquire has been retained as a legal standard of care expert who is expected to testify at the time of trial in the above-captioned matter on behalf of the Plaintiff, Joseph E. Stiglitz. Ms. Wachtel will testify as to the relevant standard of care required of a New York attorney when advising a client regarding settlement and/or litigation of a divorce matter, in the State of New York and specifically in Manhattan, where there are potential implications of enhanced earnings and celebrity status. Ms. Wachtel will testify that more often than not, divorce matters should be settled when there are claims of enhanced earnings and celebrity status. Ms. Wachtel will testify that the efforts adopted by Stiglitz's counsel were reasonable under the circumstances and that an hourly rate in the range of Five Hundred Dollars ($500.00) is a reasonable hourly rate for an upper echelon matrimonial attorney practicing in New York City. A letter summarizing Ms. Wachtel's opinion is attached hereto and incorporated herein as Exhibit 5.

Ms. Wachtel's background, training, and experience are summarized in her *Curriculum Vitae*, attached hereto as Exhibit 6 and incorporated hereby. Ms. Wachtel is a partner of Katsky Korins LLP, a general practice law firm in New York, New York, and exclusively practices in the matrimonial and family law field. She has litigated at trial and appellate levels in New York State and has been involved in Connecticut and New Jersey actions. Ms. Wachtel's experience has been recognized by her peers, as she was selected by peer review for inclusion in The Best Lawyers in America; Best Lawyers in New York, and Superlawyers.

Ms. Wachtel is a member of the Family Law Sections of the American Bar Association (ABA) and the New York State Bar Association (NYSBA) and is currently serving on the

5

Association of the Bar of the City of New York Matrimonial Law Committee In addition, Ms Wachtel is committed to continuing her legal education in the area of family law and has attended numerous seminars and lectures on cutting edge family law issues. Ms Wachtel has also completed the Law Guardian certification and training program in 2002 and 2003 and is certified as Law Guardian in the First Judicial Department

Furthermore, Ms Wachtel is committed to furthering legal education in the area of family law. In that regard, she taught a seminar at the Ackerman Institute for Family Therapy entitled "The Rudiments of Divorce Law" for which the attendees were given continuing education credits. In 2001 and 2002 Ms. Wachtel was a speaker at NYSBA, Family Law Section seminars. Subsequently, in 2004 and 2005, Ms. Wachtel also chaired the NYSBA Seminar on Basic Matrimonial Practice

Additionally, Ms Wachtel is a member of the Board of Editors of the New York Family Law Monthly and has authored several articles, including but not limited to "Divorce Preparedness Guidelines," June, 1993; "Understanding Equitable Distribution," October, 2003; and "Creating Parental Access Plans," January, February, and March, 2006. She also co-authored the alimony chapter of Consumer Reports Guide to Income Tax Preparation. Ms. Wachtel also has a trademark on ConsensUs, an alternative dispute resolution process for divorcing couples Ms Wachtel's *Curriculum Vitae* further outlines all of her publications over the last ten (10) years

During the last four (4) years, Ms Wachtel has not testified at trial or in a deposition as an expert witness. Ms Wachtel is currently employed on the Plaintiff's behalf at an hourly rate of Four Hundred Ninety Dollars ($490 00) per hour.

Ms Wachtel's opinions are based on her training and experience and on her review of the written materials provided to her in connection with this matter, which are set forth in Exhibit 7,

6

attached hereto and incorporated hereby. Ms Wachtel will rely on supplemental documentation, discovery, and witness testimony that will be provided to her as discovery continues in the above-captioned matter. In addition, Ms. Wachtel will base her opinions and trial testimony on the sworn testimony, exhibits, and evidence presented at trial.

Ms Wachtel's opinion may further express opinions that the time of trial related to the necessity, fairness, and reasonableness of the cost and attorneys' fees incurred by the Plaintiff to mitigate his damages proximately caused by the errors and omissions of the Defendant Ms. Wachtel may also express his opinions related to the opinions of other experts that may testify at the time of trial.

3.    Plaintiff reserves the right to elicit expert testimony from any of the financial experts retained in the underlying matter, either by the Plaintiff and/or by Jane Hannaway, Plaintiff's ex-wife Specifically, Plaintiff reserves the right to call the following individuals:

> A    John R Johnson, Managing Partner
> BST Valuation & Litigation Advisors, LLC
> 1285 Avenue of the Americas, 35th Floor
> New York, New York 10019
>
> B    Michael I Cragg, Ph D.
> Cambridge Finance Partners, LLC
> 955 Massachusetts Avenue
> Cambridge, Massachusetts 02139

During their testimony, the aforementioned experts may refer to any and all of the materials they reviewed previously, or to any supplemental documentation provided at or in preparation of trial Copies of the expert reports, including their qualifications, were previously provided to Defendant in the course of discovery

4.    Plaintiff reserves the right to elicit expert testimony from any of the parties, fact witnesses, or other experts who may be called to testify in this case and to further designate additional expert testimony or opinions based on additional discovery that may be obtained in

7

this case or the opinions of other experts that may be designated by the defense. Additionally, Plaintiff Joseph Stiglitz is expected to testify in support of his economic damages claim as set forth in his deposition testimony and in the discovery responses produced in the underlying and above captioned matters    Plaintiff Stiglitz's Curriculum Vitae with his qualifications, publications and experience as an economic expert has been previously provided to Defense counsel. While his testimony regarding his economic loss is predominantly factual, nevertheless, his testimony includes evaluations of alternative economic outcomes as set forth in his deposition testimony and answers to interrogatories that he is able to synthesize and articulate by drawing upon his experience and expertise as a recognized economic expert

Respectfully submitted,

David G. Whitworth, Jr., Bar No. 224139
Toni-Ann DiMaggio, Bar No. 490860
WHITWORTH & TRUNNELL, P.A.
2101 Defense Highway
Crofton, Maryland 21114
(301) 261-0035

Linda Hamilton, Bar No. 336446
LAW OFFICE OF LINDA HAMILTON
1300 Mercantile Lane, Suite 149
Largo, Maryland 20774
(301) 925-7833

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on this _15_ TH day of November, 2006, a copy of the foregoing

Plaintiff's Expert Witness Designation was sent via facsimile and first class mail, postage

prepaid, to: Meredith Werner, 2001 K Street, NW, Washington, D C  20006-1040

David G. Whitworth, Jr  (D C  Bar #224139)

LAW OFFICES

# WHITWORTH & TRUNNELL, P.A.

2101 DEFENSE HIGHWAY
CROFTON, MARYLAND 21114

DAVID G. WHITWORTH, JR.*
RICHARD R. TRUNNELL†
RODNEY C. WARREN
TONI-ANN DIMAGGIO*

Of Counsel:
MARIE S. PALMQUIST

*Also Member of District of Columbia Bar
† Also Member of Pennsylvania Bar

(301) 261-0035 (WASH.)
(410) 721-7169 (ANNAP.)
(410) 793-3977 (BALT.)

(866) 328-0600 (TOLL FREE)
(410) 793-0291 (FAX)
(301) 261-0114 (FAX)

October 30, 2006

VIA E-MAIL & FIRST CLASS MAIL
Richard A. Simpson
Meredith Werner
2001 K Street, NW
Washington, D.C. 20006-1040

> RE: *Joseph Stiglitz v. Rita Bank*
> Case No.: 05-1826 RJL
> Our File No.: 04,115.1

Dear Mr. Simpson and Ms. Werner:

Thank you for stipulating to a two (2) week extension, from November 1, 2006 through November 15, 2006, for Plaintiff to designate experts in the above-captioned case. A corresponding two (2) week extension will also apply for Defendant to disclose experts from December 1, 2006 through December 15, 2006.

Thank you again for accommodating our request.

Sincerely,

David G. Whitworth, Jr.

DGW/alg
Cc:    Dr. Joseph Stiglitz
       Linda Hamilton, Esq.

EXHIBIT

1

ALL-STATE LEGAL®

# The Lewis Law Firm

A Professional Corporation

**Attorneys at Law**
805 15th Street N.W. Suite 200
Washington, D.C. 20005
Main (202) 408-0655
Fax (202) 408-9826
www.lewislawfirm.com

**Offices In**
Fairfax, Virginia
Rockville, Maryland
Washington, D.C.

November 14, 2006

David G. Whitworth, Jr.
Whitworth & Trunnell, P.A.
2102 Defense Highway
Crofton, Maryland 21114

Dear Mr. Whitworth:

You have asked me to review the facts concerning the professional negligence claims of your client, Dr. Joseph Stiglitz (hereinafter, the Plaintiff) against Rita M. Bank, Esquire (hereinafter, the Defendant), and to provide you with an opinion as to whether the Defendant committed legal malpractice in failing to (1) negotiate a settlement of the Plaintiff's divorce in the District of Columbia within a reasonable time; (2) file suit in the District of Columbia within a reasonable time; (3) advise the Plaintiff of the potentially adverse ramifications of establishing residency in the New York City, New York; (4) advise the Plaintiff of his exposure under New York law, that provides for consideration and inclusion of celebrity status and enhanced earnings as marital assets subject to distribution during a divorce proceeding; and (5) to inform the Plaintiff of her intention to establish a law firm with his former spouse's counsel during her representation of the Plaintiff within a reasonable time.

The standard of care for the practice of law in the District of Columbia requires a lawyer to exercise that degree of reasonable care and skill expected of lawyers acting under similar circumstances. A lawyer must exercise that degree of reasonable care and skill expected of someone who has "special training" (*i.e.*, training as a lawyer), coupled with enough "experience," to handle the case under the circumstances. Having reviewed the documents that you have provided me, and based on my analysis, I conclude that Ms. Bank's representation of Dr. Stiglitz fell below the standard of care for an attorney under similar circumstances in the District of Columbia.

Facts

Dr. Joseph Stiglitz was married to Jane Hannaway (hereinafter, Hannaway) in 1978. The couple separated in late May to early June of 2000. The Plaintiff retained the Defendant on August 30, 2000 to represent and assist him to obtain resolution of issues arising from his marriage, and to pursue a divorce in the District of Columbia. The Defendant advised the Plaintiff that there should be a "cooling-off" period of approximately six (6) months before she began settlement negotiations with Hannaway. Thus, the Defendant did not begin negotiations until well after she was retained

EXHIBIT

Z.

ALL-STATE LEGAL®

The Lewis
Law Firm
A Professional Corporation

The Defendant exchanged communications, information, and positions on settlement with Hannaway's counsel until October 2002. No settlement was ever reached, nor was divorce litigation ever commenced by the Defendant. Ultimately, Hannaway filed for divorce in New York City on September 17, 2002.

During the period of Defendant's representation, the Plaintiff was offered employment opportunities in the District of Columbia, New York, and California. The Plaintiff explicitly requested the Defendant to advise him of the jurisdiction that would be most favorable to him for the divorce proceeding based upon his options for relocation. The Defendant never advised the Plaintiff of the relative consequences of having his rights determined or his divorce determined under District of Columbia versus New York law. The Plaintiff relocated to New York City in or about September 2001, accepting a position at Columbia University.

The process of settlement negotiations in the District of Columbia continued slowly. Having not yet filed for divorce and not having achieved final settlement, the Plaintiff expressly instructed the Defendant at least two times prior to being served with the New York action to file a lawsuit for divorce in the District of Columbia if no meaningful settlement offer was received by a certain date. On the last of these occasions, the Plaintiff instructed the Defendant to file a lawsuit by September 13, 2002 if no settlement offer was received by that date. None was received, and, the Defendant did not file a lawsuit in the District of Columbia. Thereafter, Hannaway filed for divorce in New York in September 2002, one year after the Plaintiff had established residency in New York.

After Plaintiff was served on September 17, 2002 with the New York divorce action, he contacted the Defendant to inform her that he had been served. The Plaintiff did not file an action in the District of Columbia, but continued to attempt to negotiate a settlement in the District of Columbia. No settlement was ever reached in the District of Columbia.

On or about October 3, 2002, the Defendant informed the Plaintiff that she intended to form a law firm with Hannaway's attorney. She informed the Plaintiff that discussions of the plans to form a law firm with opposing counsel began as early as the spring or early summer of 2002.

Due to his then-wife having filed the New York lawsuit, the Plaintiff was required to engage New York counsel. Thereafter, the Plaintiff learned he had substantially more financial exposure in New York than if the divorce or settlement had proceeded in the District of Columbia, including how New York law would likely view future royalties from his publications, enhanced earnings, and his "celebrity" status as marital assets subject to distribution in a New York divorce.

The Plaintiff incurred substantial costs, attorneys' fees, and expert witness fees in the New York proceedings. The Plaintiff incurred attorneys and expert fees in excess of Nine Hundred Eighty Thousand Dollars ($980,000.00) in the New York litigation, which directly related to litigating Hannaway's claims of enhanced earnings and celebrity status. The attorneys' fees in the District of

2

*The Lewis*
*Law Firm*
A Professional Corporation

Columbia would have been substantially less, and he would not have incurred expert witness fees to oppose Hannaway's claims for his royalties and future earnings based upon enhanced earnings or celebrity status. By comparison, the attorneys' fees in the District of Columbia would have been in the range of One Hundred Thousand Dollars ($100,000.00) to Two Hundred Thousand Dollars ($200,000.00).

Due to his increased exposure at that point in the New York courts, and in mitigation of his damages, Plaintiff ultimately reached a settlement agreement with Hannaway under which she received far more than she would have recovered had their divorce either been settled or litigated in the District of Columbia. As a direct and proximate result, the Plaintiff suffered net damages totaling Three Million Four Hundred Sixty Thousand Dollars ($3,460,000.00) to Three Million Nine Hundred Fifty Thousand Dollars ($3,950,000.00) in the New York litigation. This calculation is based upon Plaintiff's income, future royalties, enhanced earnings, celebrity status, payments of Hannaway's legal bills and the additional time required by the Plaintiff to defend himself in the New York litigation.

In my view, at a minimum, the Defendant should have done the following in order to comply with the applicable standard of care:

1. Begun settlement negotiations on behalf of the Plaintiff within a reasonable time after she was retained, certainly far sooner than she did. This was especially true given Plaintiff's stated and reasonable concern about his anticipated receipt of the Nobel Prize in October 2001.

2. Filed a Complaint for Absolute Divorce no later than June 2001 in the District of Columbia. Had the Defendant filed in the District of Columbia, a no-fault jurisdiction, the Plaintiff would not have been exposed to a divorce action filed on the grounds of adultery, as was the case when the New York action was filed. Moreover, the Plaintiff would not have been exposed to the celebrity status or enhanced earnings claims Hannaway made in the New York litigation, and the matter would likely have been concluded far sooner, and with less exposure based on the then-existing marital estate.

3. If not before, then filed the Complaint for Absolute Divorce in the District of Columbia on September 13, 2002, as instructed by the Plaintiff, and as she agreed she would do. Had the Defendant filed suit in the District of Columbia, the matter would likely have been tracked for trial within six (6) to twelve (12) months from the date of filing.

4. Upon being advised by the Plaintiff that he was considering relocating to New York City, advised the Plaintiff regarding New York law and practice, including issues of future royalties, enhanced earnings, and celebrity status, and their potential impact upon the divorce proceedings and settlement. The Defendant, who has held herself out as exclusively a practitioner of matrimonial law in the District of Columbia for many years, would have had knowledge of the celebrity status and

*The Lewis*
   *Law Firm*
A Professional Corporation

enhanced earnings components of New York law  To the extent the Defendant did not believe herself sufficiently knowledgeable regarding New York divorce law, then she was obligated to advise the Plaintiff to seek advice from a New York attorney, or to consult one on behalf of her client. She was obliged to advise the Plaintiff of New York residency requirements for divorce, and of his potential risk to be sued there after he resided there for the requisite period.

5.  Disclosed in May or June 2002 at the latest her contacts with Hannaway's attorney regarding their intent to form a law firm  At that time, the Defendant should have disclosed to Plaintiff her potential conflict, advised him to seek independent counsel on the matter, and afforded him a meaningful opportunity to seek and retain new counsel.

6  Filed suit in the District of Columbia, or advised the Plaintiff to consult other District of Columbia counsel regarding the possibility of filing a proceeding in the District of Columbia even after Hannaway filed suit in New York.  This would have at least permitted one or both jurisdiction's courts to consider the appropriate jurisdiction to hear the divorce based on the relevant circumstances, including the parties' stronger ties to the District of Columbia, which was their last matrimonial domicile.

I was pleased to accommodate your request to review this matter. I certainly hope the matter can be resolved amicably  Please let me know if you have additional questions.

Sincerely,

Glenn C Lewis, Esquire

4

# Curriculum Vitae of
## Glenn C. Lewis
### The Lewis Law Firm, A Professional Corporation
#### Suite 200
#### 805 15th Street, N.W.
#### Washington, D.C. 20005
#### Ph: 202.408.0655
#### Fax: 202.408.9826
#### glewis@lewislawfirm.com

**Personal:** Born October 20, 1952, New York City, New York

**Degrees:** B A , *cum laude*, Politics and Public Affairs, University of Miami, 1973

J.D , *cum laude*, George Mason University School of Law, 1977

**Bar Membership:** Virginia State Bar, admitted 1977
District of Columbia, admitted 1978
Maryland Bar, admitted 1998

**Employment:** 1994-Present
Chairman, The Lewis Law Firm, A Professional Corporation, Washington, D C

1998-Present
Adjunct Professor of Law, George Mason University School of Law, team-teaching Family Law with Fairfax Circuit Judge Dennis J Smith and Trial Advocacy with retired Arlington Circuit Court Chief Judge Paul Sheridan

1981-1994
Founding and Senior Partner, Lewis, Dack, Paradiso, O'Connor & Good, P C , Washington, D C

1980-1981
Partner, Sandground, Lewis, Kinsey, Dack, & Good, P.C , Washington, D.C

1978-1980
Sandground, Good, & Lewis, Washington, D C

1977-1978
Associate, Santarelli, Sandground, & Good, Washington, D.C.

**Affiliations:**

*District of Columbia Bar*



EXHIBIT
3
ALL-STATE LEGAL®

**Appointed:**    Voting Delegate by District of Columbia Court of Appeals to
Judicial Conference, 1993-2004
By Chief Judge, D.C. Superior Court to Chief Judge's Task Force
on Maintaining the Court Record, 1994-1997

**Member:**    Family Law Committee
Domestic Relations Section
Litigation Section
Bar Association of D.C.

**Served:**    Pro Bono Mediator for D.C. Superior Court Family Court

*Virginia State Bar*

**Elected:**    Bar Council, Elected Delegate, Two Terms, 1998-2004
Board of Governors, Family Law Section, 1989-1994, Chairman,
1992-1993

**Member:**    Special Committee on Access to Legal Services, 1999-2003,
Chairman, 2000-2003

*American Bar Association*

**Named:**    Virginia Liaison, Section of Family Law, 1993

**Member:**    House of Delegates, Virginia Delegation, 1996-2004
Section of Family Law, 1990-2006
Section of Science & Technology, 2000-present
National Conference of Bar Presidents, 1994-present

*Fairfax Bar Association*
President, 1995-1996
Board of Directors, 1992-1997

Chaired and served on numerous other committees and sections

*Virginia Bar Association*
President-Elect, 2007-2008
Chair, Finance Committee, present

*Virginia Trial Lawyers Association*
Member, Family Law Section, present

EXHIBIT 4

DOCUMENTS GLENN C. LEWIS REVIEWED:

Retainer Agreement between Rita Bank and Joseph Stiglitz

June 28, 2001 to January 22, 2002 Correspondence between Rita Bank and Sanford K. Ain

April 16, 2002 letter from Rita Bank to Sanford K. Ain

May 16, 2002 letter from Sanford Ain to Rita M. Bank along with April 19, 2006 supplement

July 2, 2002 letter from Rita Bank to Sanford Ain with attachments

August 28, 2002 letter from Rita Bank to Sanford Ain with attachment

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Action for Divorce, September 16, 2002

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Answer to Action for Divorce, October 30, 2002

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Order of Justice Lobis, October 23, 2003

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Defendant Joseph Stiglitz's Statement of Proposed Disposition, March 21, 2004

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Plaintiff Jane Hannaway's Amended Statement of Proposed Disposition, March 28, 2004

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Stipulation of Settlement, August 4, 2004

Expert and Valuation Report by BST Valuation and Litigation Advisors, LLC

Expert and Valuation Report by Michael Cragg

Klein Lipton Liebman Gresen, LLC's Enhanced Earnings Report

Defendant's Statement of Proposed Disposition

Amended Statement of Proposed Disposition

Kroll Risk Consulting Billing Statements dated April 1, 2003 – March 10, 2004



Cambridge Financial Services. LLC Billing Statements dated September 5, 2003 – March 31, 2004

Klein Lipton Liebman Gresen, LLC Billing Statements dated March 9, 2004 – April 1, 2004

Superior Court for the District of Columbia, Case No : 05-0006545, Complaint for Professional Negligence, August 17, 2005

Defendant's Memorandum of Law in Support of his Motion for Partial Summary Judgment on Enhanced Earning Capacity and Celebrity Status, Index No.: 350584/02

Plaintiff's Memorandum of Law in Opposition to Defendant's Frivolous Motion for Summary Judgment and In Support of Her Cross-Motion for Counsel Fees and Sanctions, Index No : 350584/02

Defendant's Reply Memorandum of Law in Support of His Motion for Partial Summary Judgment, Index No : 350584/02

Deposition Transcript, exhibits and Errata Sheet of Joseph E. Stiglitz, April 21, 2006

Deposition Transcript, exhibits and Errata Sheet of Joseph E. Stiglitz, July 21, 2006

Deposition Transcript and exhibits of Alton Abramowitz, Esquire, October 26 2006

Complaint and Summons, Joseph E. Stiglitz v. Rita M. Bank, In the Superior Court for the District of Columbia, Civil Action No. 05-0006545

Defendant, Rita M. Bank's Answer to Complaint, Joseph E. Stiglitz v. Rita Bank, In the Superior Court for the District of Columbia, Civil Action No. 05-0006545

# KATSKY | KORINS LLP

MEMBERS OF THE FIRM

| | |
|---|---|
| ROBERT A. ABRAMS | NEIL S. MILLER |
| RANDOLPH AMENGUAL | STEVEN H. NEWMAN |
| DAVID L. KATSKY | STEPHEN J. SWIATKIEWICZ |
| ADRIENNE B. KOCH | MERYL LYNN UNGER |
| EUGENE V. KOKOT | MARCY L. WACHTEL |
| ROY M. KORINS | MARK WALFISH |
| DENNIS C. KRIEGER | JOEL S. WEISS |
| THOMAS M. LOPEZ | ELIAS M. ZUCKERMAN |
| GREGORY E. MARKS | |

WRITER'S DIRECT DIAL | 212.716.3227

WRITER'S DIRECT FAX | 212.716.3327

WRITER'S EMAIL | mwachtel@katskykorins.com

OUR REFERENCE |

November 15, 2006

**BY FACSIMILE (301) 261-0114**
**AND REGULAR MAIL**

David G. Whitworth, Jr.
Whitworth & Trunnell, PA
2101 Defense Highway
Crofton, Maryland 21114

      RE:   *Joseph Stiglitz v. Rita Bank*
           Case No.: 05-1826 RJL

Dear Mr. Whitworth:

Please accept this letter as a summary of my opinions as they relate to the above captioned matter and the legal standard of care of an attorney practicing matrimonial law in the State of New York. Per your request, I have reviewed the matter styled as *Hannaway v. Stiglitz*, filed in the Supreme Court of the State of New York, County of New York, index number 350584/02, the correspondence and settlement offers between Hannaway and Stiglitz, the expert reports, and numerous depositions. Specifically, I reviewed the following documents:

- April 16, 2002 letter from Rita Bank to Sanford K. Ain
- May 16, 2002 letter from Sanford Ain to Rita M. Bank along with April 19, 2006 supplement
- July 2, 2002 letter from Rita Bank to Sanford Ain with attachments
- August 28, 2002 letter from Rita Bank to Sanford Ain with attachment
- Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Action for Divorce, Summons and Verified Complaint, September 16, 2002
- Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Answer to Action for Divorce, October 30, 2002
- Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Order of Justice Lobis, October 23, 2003
- Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Defendant Joseph Stiglitz's Statement of Proposed Disposition, March 21, 2004
- Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Plaintiff Jane Hannaway's Amended Statement of Proposed Disposition, March 28, 2004

EXHIBIT

5

ALL-STATE LEGAL

# KATSKY | KORINS LLP

David G. Whitworth, Jr.
November 15, 2006
Page 2

- Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Stipulation of Settlement, August 4, 2004
- Expert and Valuation Report by BST Valuation and Litigation Advisors, LLC
- Expert Report of Michael Cragg
- Expert Rebuttal Report of Michael Cragg
- BST Valuation and Litigation Advisors, LLC Reply to Expert Report of Michael Cragg
- Klein Lipton Liebman Gresen, LLC's Enhanced Capacity and Enhanced Earnings Report
- Kroll Risk Consulting Billing Statements dated April 1, 2003 – March 10, 2004
- Cambridge Financial Services, LLC Billing Statements dated January 1, 2004 – March 31, 2004
- Klein Lipton Liebman Gresen, LLC Billing Statements dated March 9, 2004 – April 1, 2004
- Superior Court for the District of Columbia, Case No.: 05-0006545, Complaint for Professional Negligence, August 17, 2005
- Defendant's Memorandum of Law in Support of his Motion for Partial Summary Judgment on Enhanced Earning Capacity and Celebrity Status, Index No.: 350584/02
- Plaintiff's Memorandum of Law in Opposition to Defendant's Frivolous Motion for Summary Judgment and In Support of Her Cross-Motion for Counsel Fees and Sanctions, Index No.: 350584/02
- Defendant's Reply Memorandum of Law in Support of His Motion for Partial Summary Judgment, Index No.: 350584/02
- Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Order of Justice Lobis, November 24, 2003
- Deposition Transcript, exhibits and Errata Sheet of Joseph E. Stiglitz, April 21, 2006
- Deposition Transcript, exhibits and Errata Sheet of Joseph E. Stiglitz, July 21, 2006
- Deposition Transcript and exhibits of Alton Abramowitz, Esquire, October 26 2006

Generally, when a client hires an attorney for advice regarding a matrimonial issue, the attorney has a duty to explain the current state of the law and its implications to the client, to determine what the client's exposure is, to advise the client to mitigate or minimize his/her exposure, and to discuss potential venue or jurisdictional issues. Clients residing in or around the New York, New Jersey, and Connecticut tri-state area may have choices regarding jurisdiction and venue. As a rule, a client may be exposed to different legal ramifications depending on the State, and within the State, the judicial department in which his/her case is litigated. When dealing with a high earning businessperson or celebrity, or an individual who has obtained degrees, licenses, certificates, honors, professional accolades and the like, a reasonable attorney must advise the client of the potential implications of enhanced earnings and celebrity status in New York State and specifically in the First Judicial Department in which Manhattan is located. Moreover, an attorney's duty is not limited to litigation; rather an attorney must advise a client regarding settlement options and litigation.

# KATSKY | KORINS LLP

David G. Whitworth, Jr
November 15, 2006
Page 3

Specific to the underlying matter between Dr. Hannaway and Dr. Stiglitz, Dr. Stiglitz was exposed to his wife's claims that enhanced earnings or celebrity status were acquired during the marriage and constitute a distributable marital asset, if suit were brought in New York State. In the First Judicial Department there is a great deal of exposure by a litigant in the areas of enhanced earnings and celebrity status. Therefore, the most disadvantageous forum to litigate Dr. Stiglitz's divorce within New York State was the First Judicial Department.

Once suit was filed in the State of New York and in the County of New York, Dr. Stiglitz's New York counsel had a duty to mitigate his damages by aggressively opposing Hannaway's claims of enhanced earnings and celebrity status. However, opposition does not come without cost. Thus, a reasonable New York attorney would hire expert witnesses to complete a financial analysis and evaluation as to the value of Dr. Stiglitz's enhanced earnings and celebrity status and to critique and rebut the opposing parties expert reports. In addition, attorneys' fees in the range of Five Hundred Dollars ($500.00) per hour are reasonable considering the area of practice and the experience of Dr. Stiglitz's New York counsel.

When litigating cases involving claims for enhanced earnings and celebrity status, it is more likely than not a better practice to settle the matters rather than risk trial. In addition to out of pocket expenses for attorneys' fees and expert fees and reports, a client may risk incurring expenses associated with appeals. I reviewed the Stipulation of Settlement, filed August 4, 2004 and the expert report prepared by John R. Johnson. In my opinion, the settlement reached on Dr. Stiglitz's behalf was a reasonable settlement under the circumstances and a reasonable effort to mitigate Dr. Stiglitz's potential exposure.

Thus, in conclusion, an attorney has a duty to exercise reasonable care to that degree of learning and diligence ordinarily possessed by members of their profession practicing in the same or similar circumstances. Specifically, an attorney practicing in New York has a duty to explain the current state of the law and its implications to the client, to determine what the client's exposure is, to advise the client to mitigate or minimize his/her exposure, and to discuss potential venue or jurisdictional issues. After reviewing the matter styled as *Hannaway v. Stiglitz*, filed in the Supreme Court of the State of New York, County of New York, index number 350584/02, I determined that the settlement negotiated on Dr. Stiglitz's behalf was reasonable under the circumstances. Moreover, the hourly rate of Dr. Stiglitz's attorney was a reasonable hourly rate for a New York attorney with similar experience in the area of matrimonial law. In general, the efforts of Dr. Stiglitz's counsel were reasonable efforts to mitigate Dr. Stiglitz's exposure.

Sincerely,

Marcy L. Wachtel

## CURRICULUM VITAE OF

## MARCY LYNN WACHTEL

1725 York Avenue - Apt. 18E
New York, New York 10128
(212) 410-5372 (Home)
(212) 716-3227 (Office)

## EMPLOYMENT

KATSKY KORINS LLP, New York, New York
April 1985 to present

Matrimonial and family law partner (effective July 1, 1990). Drafting and negotiation of pre-nuptial, post-nuptial, separation and settlement agreements. Preparation of pleadings, motion papers and memoranda of law. Conducting pre-trial discovery, including taking and defending depositions and propounding and responding to interrogatories. Trial preparation including interviewing witnesses and outlining testimony and conducting trials. Writing and submitting trial and appellate briefs. Oral argument of motions. Handling adoption and paternity proceedings. *Pro hac vice* appearances in New Jersey and Connecticut cases.

COHEN & SHALLECK, New York, New York
April 1983 to April 1985

Matrimonial and family law associate. Drafting pleadings and motion papers. Drafting and negotiation of settlement, separation and pre-nuptial agreements. Preparation of trial, post-trial and appellate briefs. Trial preparation, including direct and cross examinations. Court appearances and oral arguments.

NEW YORK CITY LAW DEPARTMENT -General Litigation Division
Summer 1981

Research and preparation of briefs in defense of city agencies.

HAWKINS, DELAFIELD & WOOD, New York, New York
Summers 1979 and 1980

Legal research and preparation of memoranda of law.

AMERICAN CIVIL LIBERTIES UNION, New York, New York
Summer 1977

Research assistant on project investigating auxiliary police force.

-1-



EXHIBIT
6
ALL-STATE LEGAL®

## EDUCATION

UNIVERSITY OF PENNSYLVANIA LAW SCHOOL

Juris Doctor awarded May 1982
  Morris Fellow

CORNELL UNIVERSITY

Bachelor of Arts awarded May 1979: Magna Cum Laude: Distinction in all subjects
Major: Government
  Government Department Honors Program
  Dean's List
  Aleph Samach/Raven & Serpent Honor Society
  New York State Regents Scholarship
  Film Critic, Cornell Daily Sun

## BAR ADMISSIONS

Admitted to New York State Bar 1983. Admitted to Southern and Eastern Districts of New York Bar Association memberships.

## PROFESSIONAL ACCOLADES

Selection by peer review for inclusion in The Best Lawyers in America: Best Lawyers in New York, and Superlawyers.

## BAR ASSOCIATION MEMBERSHIPS

Member of Family Law Sections of ABA and NYSBA and of NYSBA's Committee on Substantive Law Relating to the Family. Member of the Association of the Bar of the City of New York (Matrimonial Law Committee, 1990-1993, 1996-1999 and currently serving 2004-2007)

## CERTIFICATIONS

Certification for Law Guardian, First Judicial Department, 2002 Attendance at Law Guardian certification and training programs April 15, 2002 and November 14, 2003.

## COURSES/PRESENTATIONS

Teaching of seminar at The Ackerman Institute for Family Therapy entitled "The Rudiments of Divorce Law" for which the attendees were given continuing education credits

-2-

3799-2-W

Presentation of speech entitled "Understanding Divorce" to the Financial Women's Association, Working Mothers' Committee.

Speaker at New York State Bar Association, Family Law Section seminars in 2001 (Practice Management) and 2002 (Cutting Edge Issues)

Chaired NYSBA Seminar on Basic Matrimonial Practice in 2004 and 2005.


## PUBLICATIONS

Member of the Board of Editors of the New York Family Law Monthly  Author: "Divorce Counseling: For the Sake of the Child," Legal Times, May 24, 1993; "Finding Direction Away from the Pain of Dissolution," The Recorder, June 28, 1993; "Deposition Preparedness Guidelines," Fairshare, June 1993, reprinted in The New York Family Law Monthly, December 2001; "Ten Likely Areas of Inquiry During Deposition on Financial Issues," Fairshare, December 1993, reprinted in The New York Family Law Monthly, October 2001; "Formulating the Budget," Fairshare, April 1998, reprinted in the New York Family Law Monthly, December 2001; "Prenuptial Agreements: Divorce Insurance," The Alert, December 1998; "How to Challenge the Forensic Psychiatrist's Report", The New York Family Law Monthly, March and April, 2003; "Claims that can Arise from the Non-Marital Domestic Relationship", New York Family Law Monthly, May and June, 2002; "Understanding Equitable Distribution" (an analysis of the capitalization of excess earnings valuation methodology), The New York Family Law Monthly, November, 2003; "Creating Parental Access Plans", The New York Family Law Monthly, January, February and March 2006


## TRADEMARKS

ConsensUs, an alternative dispute resolution process for divorcing couples.


## CONTINUING LEGAL EDUCATION

I have attended the following seminars:

a   Drafting Matrimonial Agreements, given by the Practicing Law Institute on April 23, 24 and 25, 1985;

b.  The Nuts and Bolts of Equitable Distribution and Matrimonial Tax, given by Law Journal Seminars Press on October 3 and 4, 1985;

c.  Family Court Practice, given by the New York State Bar Association on October 29 and 30, 1985.

d.  Handling An Equitable Distribution Divorce Case, given by the Practicing Law Institute on October 6, 1986;

e.  Trial of An Equitable Distribution Action given by the New York State Bar Association on November 14, 1986;

3799-2-W

f. Matrimonial and Family Law 1987: Valuation, Taxes, Pensions and Post-Litigation Problems given by the New York State Bar Association on June 12, 1987;

g. Matrimonial and Family Law Update given by the New York State Bar Association on December 11, 1987;

h. Basic Accounting for Lawyers given by the New York State Bar Association on March 11, 1988;

i. Pensions and "QDRO's"/Motion Practice given by the New York State Bar Association on May 13, 1988;

j. Anatomy of an Equitable Distribution Trial given by the New York State Bar Association on December 2, 1988;

k. Thorny Valuation Problems in Equitable Distribution Litigation given by the New York State Bar Association on June 2, 1989; and

l. Child Support Standards Act given by the American Academy of Matrimonial Lawyers on September 8, 1989

m. Child Support Guidelines given by the New York State Bar Association on March 14, 1990

n. Child Support Standards Act-One Year Later given by the American Academy of Matrimonial Lawyers on September 14, 1990

o. Trial Of An Equitable Distribution Action given by the New York State Bar Association on May 31, 1991.

p. How to Handle a Child Custody Case given by the New York State Bar Association on December 13, 1991.

q. Matrimonial and Family Law Update given by the New York State Bar Association on June 12, 1992

r. How to Handle New Developments in Matrimonial Law given by the New York State Bar Association on December 11, 1992.

s. Critical Elements of an Equitable Distribution Case given by the New York State Bar Association on May 14, 1993.

t. Valuing Assets and Handling the Valuation Expert in Equitable Distribution Trials given by the New York State Bar Association on December 16, 1994.

u. Matrimonial and Family Law Update by the New York State Bar Association on June 16, 1995.

v. Child Support Guidelines and Valuing Professional Licenses given by the New York State Bar Association on June 7, 1996.

w. Matrimonial and Family Law Update, New York State Bar Association on December 11, 1998.

x. "Ethics", Family Law Section Program given by the New York State Bar Association, 122nd Annual Meeting, New York Marriott Marquis, January 28, 1999

y. Valuation of Closely-held Businesses and Professional Practices, Tippins Cornaire LLP, Spring 1999

z. Family Law Section Summer Meeting, NYSBA, The Equinox Hotel, Manchester, Vermont, July 15-18, 1999.

aa. Bankruptcy and Divorce Conflicts, ABA New York Bankruptcy Committee, September 22, 1999.

-4-

bb  What Matrimonial Lawyers Should Know About Criminal Law, NYC Bar, October 18, 1999

cc  FLS-Selected Recurring Issues, New York State Bar Association, December 17, 1999

dd  Family Law Section Annual Meeting, New York State Bar Association, at New York Marriott Marquis, January 27, 2000

ee  Courtroom Evidence 2000, Matlaw Systems Corp. and Tippins and Cornaire, LLP on May 4, 2000

ff  Family Law Section Summer Meeting, New York State Bar Association, on July 13, 2000

gg  Matrimonial Law Update, Appellate Division, First Department, on November 27, 2000

hh  Ultimate Update, Matlaw Systems Corp. and Tippins and Cornaire, LLP, December 8, 2000

ii  Family Law Section Annual Meeting, New York State Bar Association, New York Marriott Marquis, on January 25, 2001

jj.  An Ethics Roundtable, New York State Trial Lawyers Institute, on March 22, 2001

kk  Equitable Distribution, Matlaw Systems Corp. and Tippins and Cornaire, LLP, on May 10, 2001

ll  Family Law Section Summer Meeting, New York State Bar Association, Manchester Village, Vermont, in July, 2001, 2002, 2003, 2004, 2005 and 2006

mm  Coping with Mental Health Witnesses in Custody Litigation, Matlaw Systems Corp. and Tippins and Cornaire, LLP, on October 12, 2001

nn  Ultimate Update, Matlaw Systems Corp. and Tippins and Cornaire, LLP, in, 2001, 2002, 2003, 2004, 2005 and 2006.

oo  Family Law Section Annual Meeting, New York State Bar Association, January 24, 2002, 2003, 2004, 2005 and 2006.

pp  Children and The Law, New York State Bar Association, New York Marriott Marquis, January 25, 2002

I have attended the following lectures and panel discussions:

a  Litigation Involving an Obstructionist Spouse sponsored by the New York State Bar Association on October 23, 1984;

b  Division of Marital Property: Equitable or Equal? at the Association of the Bar of the City of New York on December 11, 1985;

c  Jewish Divorce and Civil Law in New York at the Association of the Bar of the City of New York on December 15, 1986;

d  Tax Impacting of Equitable Distribution Assets/ Separate Property vs. Marital Property: The Elusive Distinction at the Association of the Bar of the City of New York on December 3, 1987;

e  Current Developments in Matrimonial Law at the Association of the Bar of the City of New York on February 2, 1989;

f  Prenuptial Agreements: Re-defining the Legal Consequences of Marriage at the Association of the Bar of the City of New York on September 13, 1989

g. Tax Aspects of Divorce and Separation at the Association of the Bar of the City of New York on May 13, 1991.

h. Bankruptcy and the Bankrupt Marriage at the Association of the Bar of the City of New York on December 3, 1991.

i. Latest Developments in Matrimonial Law at the Association of the Bar of the City of New York on April 2, 1992

j. "CSSA: Realities and Myths" at the Association of the Bar of the City of New York on October 24, 1992

k. Recent Developments in Matrimonial Law at The Association of the Bar of the City of New York on December 11, 1992.

l. Recent Developments in Matrimonial Law at The Association of the Bar of the City of New York on February 24, 1994

m. When Worlds Collide: Custody Litigation at The Association of the Bar of the City of New York on May 12, 1994.

n. Recent Developments in Matrimonial Law at the Association of the Bar of the City of New York on February 6, 1995.

o. Law Guardian Representation Standards given by the New York State Bar Association on January 26, 1996.

p. Recent Developments in Matrimonial Law at The Association of the Bar of the City of New York on February 27, 1996

q. Resolving Child Custody Disputes and Relocation at The Association of the Bar of the City of New York on April 29, 1996

r. Reflections from The Bench at The Association of the Bar of the City of New York on November 26, 1996

s. Psychiatric Testimony and Forensic Evaluations in Custody Cases at The Association of the Bar of the City of New York on March 4, 1997

t. Annual Update on Matrimonial Law at the Association of the Bar of the City of New York on April 24, 1997.

u. Matrimonial Practice and The New Tax Law at the Association of the Bar of the City of New York on November 3, 1997.

I have attended and participated in the programs given by the Interdisciplinary Committee on Mental Health and Family Law at the Association of the Bar of the City of New York

3799-2-W

EXHIBII 7

DOCUMENTS MARCY WACHTEL REVIEWED:

April 16, 2002 letter from Rita Bank to Sanford K. Ain

May 16, 2002 letter from Sanford Ain to Rita M. Bank along with April 19, 2006 supplement

July 2, 2002 letter from Rita Bank to Sanford Ain with attachments

August 28, 2002 letter from Rita Bank to Sanford Ain with attachment

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Action for Divorce, September 16, 2002

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Answer to Action for Divorce, October 30, 2002

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Order of Justice Lobis, October 23, 2003

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Defendant Joseph Stiglitz's Statement of Proposed Disposition, March 21, 2004

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Plaintiff Jane Hannaway's Amended Statement of Proposed Disposition, March 28, 2004

Supreme Court of the State of New York, County of New York, Index No.: 350584/02, Stipulation of Settlement, August 4, 2004

Expert and Valuation Report by BSI Valuation and Litigation Advisors, LLC

Expert and Valuation Report by Michael Cragg

Klein Lipton Liebman Gresen, LLC's Enhanced Earnings Report

Kroll Risk Consulting Billing Statements dated April 1, 2003 – March 10, 2004

Cambridge Financial Services LLC Billing Statements dated September 5, 2003 – March 31, 2004

Klein Lipton Liebman Gresen, LLC Billing Statements dated March 9, 2004 – April 1, 2004

Superior Court for the District of Columbia, Case No.: 05-0006545, Complaint for Professional Negligence, August 17, 2005

1

EXHIBIT

7

Defendant's Memorandum of Law in Support of his Motion for Partial Summary Judgment on Enhanced Earning Capacity and Celebrity Status, Index No : 350584/02

Plaintiff's Memorandum of Law in Opposition to Defendant's Frivolous Motion for Summary Judgment and In Support of Her Cross-Motion for Counsel Fees and Sanctions, Index No : 350584/02

Defendant's Reply Memorandum of Law in Support of His Motion for Partial Summary Judgment, Index No : 350584/02

Deposition Transcript, exhibits and Errata Sheet of Joseph E. Stiglitz, April 21, 2006

Deposition Transcript, exhibits and Errata Sheet of Joseph E. Stiglitz, July 21, 2006

Deposition Transcript and exhibits of Alton Abramowitz, Esquire, October 26 2006