IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSEPH E. STIGLITZ,<br><br>        Plaintiff,<br><br>v.<br><br>RITA M. BANK,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-1826 RJL<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT RITA BANK'S
MOTION TO STRIKE THE EXPERT REPORT OF MICHAEL CRAGG
AND TO PRECLUDE MICHAEL CRAGG FROM TESTIFYING TO
<u>ANY OF THE TOPICS ADDRESSED IN HIS REPORT</u>**

Plaintiff Joseph E. Stiglitz ("Stiglitz") submitted the Expert Report of Michael Cragg almost a year after it was due, in flagrant disregard of this Court's Scheduling Orders. Stiglitz has no excuse for this transgression. Rather, Stiglitz's Opposition to this Motion turns on one central – and incorrect – premise, that the Cragg Report is merely a supplement to earlier, timely submitted, expert reports. Stiglitz is trying to fit a square peg into a round hole. These arguments should be rejected.

Stiglitz also argues that his failure to comply with this Court's Orders should be excused, that the sanctions requested by Bank are inappropriate and that, at most, lesser sanctions should be applied. As discussed at length in the Memorandum of Law in Support of the Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg from Testifying to Any of the Topics Addressed in His Report ("Opening Brief") and briefly summarized below, each of the four factors considered in determining whether to impose discovery sanctions supports the imposition of sanctions against Stiglitz. In light of Stiglitz's unexcused violation of the Court's Scheduling Orders and the prejudice that Bank will suffer if Stiglitz is excused from

those violations, the Cragg Report should be stricken and Cragg should not be permitted to testify to the topics addressed in that report. Alternatively, if the Court determines that Stiglitz should be permitted to rely on Mr. Cragg's untimely expert report and testimony, the Court should award Bank reimbursement for any fees and costs she will incur in responding thereto, as well as the fees and expenses incurred in connection with the aborted deposition of Bank's damages expert. Finally, in either event, the Court should award Bank the fees and costs associated with this Motion.

I.      **THE CRAGG REPORT IS UNTIMELY.**

At various points in his Opposition, Stiglitz accuses Bank of skipping the first step of Rule 16(f) of the Federal Rules of Civil Procedure by failing to show that Stiglitz did not comply with the Court's Scheduling Orders. *See, e.g.,* Opp. at p. 7, 15. Quite to the contrary, Bank's Opening Brief explains in detail how Stiglitz simply ignored each of the Court's deadlines.

First, Stiglitz's expert witness designation was due on November 15, 2006. *See* December 4, 2006 Scheduling Order; DE 15. At that time, Stiglitz attempted to "reserve[] the right to elicit expert testimony from any of the financial experts retained in the underlying matter." *See* DE 15, pg. 7. Although Stiglitz makes much of this reservation, *see, e.g.,* Opp. at p. 8, a party cannot unilaterally alter the Court's Scheduling Order to its liking in this manner. Fed. R. Civ. P. 26(a)(2) requires a complete explanation of the theories being offered by the expert and the reasons, bases and data therefore. A reservation of the right to develop and explain the expert's theory later does not meet this requirement. *See Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 728 (E.D. Va. 2001) ("The unilateral assertion of a 'reservation of rights,' on which [the plaintiff] fastens its justification for [the expert's] belated report, simply is of no effect.").

Second, this Court's December 4, 2006 Scheduling Order required that rebuttal expert

disclosures be made by February 15, 2007. This deadline came and went without any additional submissions by Stiglitz.

In short, under any definition, a report due on November 15, 2006 and submitted nearly a year later on November 9, 2007 is late.

## II.    THE CRAGG REPORT IS NOT A SUPPLEMENTAL REPORT.

The central premise of Stiglitz's Opposition is that the Cragg Report is merely a supplement to earlier, timely submitted, expert reports. This is simply incorrect. "Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony when the party learns of new information." *Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595-96 (4th Cir. 2003). "[S]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report *based upon information that was not available* at the time of the initial disclosure." *Keener v. United States,* 181 F.R.D. 639, 640 (D. Mont. 1998) (emphasis added). Rule 26(e) of the Federal Rules of Civil Procedure "does not, however, bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline, even if the rule's pretrial time limit is satisfied." *Reid v. Lockheed Martin Aeronautics Co.,* 205 F.R.D. 655, 662 (N.D. Ga. 2001).

### A.    The Cragg Report Does not Supplement any Earlier Submitted Reports.

Stiglitz's November 15, 2006 expert witness designation included the following:

Plaintiff reserves the right to elicit expert testimony from any of the financial experts retained in the underlying matter, either by the Plaintiff and/or by Jane Hannaway, Plaintiff's ex-wife. Specifically, Plaintiff reserves the right to call the following individuals:

A. John R. Johnson, Managing Partner …

B. Michael I. Cragg, Ph.D. ….

During their testimony, the aforementioned experts may refer to any and all of the materials they reviewed previously, or to any supplemental documentation

> provided at or in preparation of trial. *Copies of the expert reports, including their qualifications, were previously provided to Defendant in the course of discovery.*

*See* DE 15, pg. 7 (emphasis added). The potentially relevant expert reports referred to here are the January and March 2004 Expert Reports of Michael Cragg (collectively, the "2004 Cragg Reports"), which were created for the divorce litigation between Stiglitz and Jane Hannaway.

Notably, Stiglitz did not include the 2004 Cragg Reports as exhibits to his Opposition. That is likely because even a cursory review of the 2004 Cragg Reports reveals that they do not describe the damages alleged in *this* litigation. Rather, the 2004 Cragg Reports (attached hereto as Exhibit 1) – which were completed prior to this suit even being filed – focus on the appropriate distribution of Stiglitz's and Hannaway's assets in the underlying divorce litigation.

The Cragg Report offered in *this case*, on the other hand, purportedly supports Stiglitz's two theories of damages. Stiglitz has asserted that because of the alleged malpractice of Ms. Bank, he is entitled to recover the difference between the value of the August 2004 settlement in the divorce litigation and the value of a May 2002 settlement offer made by Hannaway, plus legal fees and expenses he incurred and the alleged value of his time spent on the New York litigation. In the alternative, Stiglitz has argued that he is entitled to recover the difference between the value of the final settlement in New York and the value of the result Bank allegedly advised him that he would obtain if he litigated the matter in the District of Columbia. Once again, Stiglitz also seeks the value of his lost time and the legal fees and expenses he allegedly incurred in the New York litigation. *See* Exhibit 2, Stiglitz's Revised Supplemental Interrogatory Responses.

The 2004 Cragg Reports do not address the linchpin of Stiglitz's damages theories in this litigation - the Final Stipulation of Settlement, which necessarily did not even exist when the 2004 Cragg Reports were written. The 2004 Cragg Reports do not address Stiglitz's alleged damages based on the lost value of his time. They do not address Stiglitz's alleged damages

based on the costs he incurred in the New York litigation. They do not value Hannaway's May 2002 settlement offer. And they do not opine on the result that Stiglitz could have obtained if the matter had been litigated in the District of Columbia. Stiglitz's suggestion that Bank knew the substance of Cragg's testimony in *this litigation* based on the 2004 Cragg Reports could not be more wrong. *See* Opp. at p. 10.

Federal Rule Civil Procedure 26(a)(2) requires a complete explanation of the theories being offered by the expert and the reasons, bases and data therefore. "Rule 26(a)(2)(B) was designed in order to avoid blind siding the opposing party …" when expert witnesses offer significant, "new" opinions that differ from those submitted in their written reports. *United States v. Philip Morris USA, Inc.,* 223 F.R.D. 1, 4 (D.D.C. 2004) (citation omitted). In no way, shape or form can the 2004 Cragg Reports be said to provide a complete explanation of the theories now being offered by Cragg in this litigation. Fed. R. Civ. P. 26(a)(2). The 2004 Cragg Reports did not even provide a *partial* explanation of the theories that would be offered by Cragg in this litigation. Cragg's damages theory, first presented to Bank on November 9, 2007, is far removed from his opinions in the underlying divorce litigation; it is both significant and new.[1] It did not correct inaccuracies or fill the interstices of a prior incomplete report. Parties simply cannot offer entirely new expert theories under the guise of "supplementing" prior reports.

---

[1] Stiglitz also suggests that the Cragg Report is a supplement to a report submitted on October 29, 2007. As an initial matter, a report submitted on October 29, 2007 would still be almost a year late, and thus improper for the reasons discussed above. Moreover, the two-page "disclosure report" provided Bank with no basis upon which to evaluate Cragg's damages theory. *See* Exhibit 3. The "disclosure report" indicated that the calculation of damages will involve the determination of the value and division at various points in time of eleven different categories of assets. The "disclosure report" indicates that the damages alleged in Stiglitz's second revised interrogatory response were "in the order of magnitude that [Cragg's] initial calculations found." Those initial calculations were not included in the "disclosure report." In fact, no numbers or calculations were included in the "disclosure report." Thus, the bare bones "disclosure report," which fails to provide a complete explanation of the theories being offered by the expert and the reasons, bases and data therefore, is also insufficient under Rule 26(a)(2).

B.    **The Cragg Report Does Not Respond to Newly Discovered Evidence.**

Stiglitz also suggests that the Cragg Report responds to newly discovered evidence. More specifically, Stiglitz argues that "[b]y the very nature of the damages analysis, Cragg had to wait to fine-tune his report until after the Defendant was deposed and after Plaintiff's standard of care experts had an opportunity to synthesize the alleged negligence and causal relation of damages." *See* Opp. at p. 11. As discussed above, far from "fine-tuning" any earlier reports, the Cragg Report offers entirely new opinions on entirely new topics. More to the point here, however, the Defendant was deposed on April 20, 2006 and August 17, 2006. This certainly allowed sufficient time for Mr. Cragg to take this information into consideration in reaching an expert opinion in advance of the November 15, 2006 deadline in the Court's Order. A deposition taken almost 3 months prior to the court ordered expert disclosure date and 15 months prior to the submission of Cragg's Report cannot be considered "new information."

Moreover, Plaintiff's protestations that *his* expert could not assess *his* alleged damages until after *his* standard of care experts "synthesized the alleged negligence and causal relation of damages" is facially disingenuous at best. If that was Plaintiff's position, it could have been, and should have been, raised in connection with the entry of the Scheduling Order, or in a proper motion for relief from that Order. Moreover, according to Cragg's Report, he did not rely on the reports by Stiglitz's standard of care experts in forming his opinions. *See* Opp. at Exhibit G.

C.    **The Mediation Did Not Alter the Expert Witness Disclosure Deadlines.**

Stiglitz uses the mediations as another red herring. The fact that the parties engaged in mediations is not a valid excuse for Stiglitz's decision to submit the Cragg Report a year late. Stiglitz argues that the parties were in agreement that expert discovery would be put off until after the parties determined whether they could reach a resolution through mediation. *See* Opp. at p. 14. However, as the Court's Orders make clear, the parties agreed to put off expert

*depositions*, not expert *disclosures*. *See* December 4, 2006 Scheduling Order; January 9, 2007 Scheduling Order. The deadlines for the submission of expert reports were not affected by the mediations. At no time did Bank's counsel suggest that Stiglitz should wait to submit the Cragg Report until after the mediations. To the contrary, despite the fact that mediation was on the horizon, Bank timely submitted her expert witness disclosures in February 2007. Contrary to Stiglitz's suggestion that sanctions will punish him for the discovery choices made by both parties (Opp. at p. 8), he is the only party that chose not comply with the Court's Orders.

### III.   SANCTIONS ARE CLEARLY WARRANTED.

#### A.   Bank Has Met Each of the Four Elements for an Award of Sanctions.

The Court must decide whether to impose sanctions for Stiglitz's failure to obey the Court's Scheduling Orders. Although Stiglitz articulates a five-factor test for this inquiry (*see* Opp. at p. 14-15), that test relates to the issue of discovery sanctions for the failure to timely disclose *non-expert* witnesses. *See, Rambus,* 145 F. Supp. 2d at 724 (relying upon *Burlington Insurance Co. v. Shipp,* 2000 WL 620307 (4th Cir. 2000) (addressing whether district court erred in excluding the testimony of a *non-expert witness,* who was not listed in the pre-trial order, but was sought to be added to the witness list six days before trial)). The proper test, and the one articulated in Bank's Opening Brief, has four factors: (1) the reason for failing to timely complete the report; (2) importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) availability of a continuance to cure such prejudice. *See Rambus*, 145 F. Supp. 2d at 726, 736.

First, as discussed above and in Bank's Opening Brief, there is no valid reason for Stiglitz's violation of the Court's Scheduling Orders. Stiglitz had all of the information needed for an analysis of his own alleged damages well in advance of the November 15, 2006 deadline. *See Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 102 (D. D.C. 2005) (holding that

a party would not be permitted to use belatedly subpoenaed information to remedy deficient expert reports after the expert and discovery deadlines, especially when the information in question was easily obtainable during the discovery period.").

Second, Stiglitz does not and cannot, argue that the absence of a damages report was not an important part of Bank's case. Moreover, if the Cragg Report is precluded, Stiglitz can still offer his own damages testimony, which is presumably what he intended to do from the start.

Third, Bank will be prejudiced if Stiglitz is permitted to rely on Mr. Cragg's testimony and report. Bank's damages expert, Robert Aucone, timely submitted a 20-page report. Although Stiglitz claims that Aucone failed to "provide any substantive analysis," Opp. at p. 3, in actuality Aucone spent four and half pages explaining why Stiglitz was not a proper expert and the remaining 15 and a half pages dismantling Stiglitz's damages theories. The entire report will be irrelevant if Stiglitz is permitted to offer the expert opinions contained in the Cragg Report. The Cragg Report comes up with entirely new damages figures, which must be fully analyzed by Aucone. As Bank explained in her Opening Brief, if Stiglitz is allowed to submit a report at this late date, Bank will be required to incur additional time and expense for Aucone to review and respond to the Cragg Report. This would be unfair and prejudicial.

In an attempt to argue that Bank has not been prejudiced, Stiglitz points to the fact that no trial has been scheduled. *See* Opp. at 16, 20. This goes to the fourth prong of the test, which considers whether or not the prejudice can be cured. Simply because a trial date has not been set does not mean that Stiglitz is entitled to flagrantly disregard the Court's deadlines. "A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Dag Enterprises*, 226 F.R.D. at 104 (internal citations omitted). The only cure would be to give Stiglitz *more* time for expert discovery. This is unacceptable. A year for expert discovery is more than enough.

Accordingly, the Court should exclude the Cragg Report and preclude any testimony related to it.

### B. Stiglitz's Proposed Relief Is Inadequate.

If the Court chooses not strike the Cragg Report, Bank has requested sanctions in the form of reimbursement for any fees and costs Bank incurs in connection with responding to the Cragg Report, as well as the fees and expenses incurred in connection with the belatedly aborted deposition of Bank's damages expert. Stiglitz, on the other hand, has proposed that sanctions, if any, be in the form of the costs and fees incurred by Cragg in connection with his deposition. *See* Opp. at p. 20. Stiglitz's proposed "relief" falls woefully short.

Stiglitz seems to suggest that because the Cragg Report "does not contain substantial changes from the damages categories and estimates previously reviewed by Aucone," Opp. at p. 16, he should not have to pay for Aucone to review the Cragg Report. This makes no sense. The reason a defendant retains a damages expert is to review and, hopefully, discredit the damages alleged by the plaintiff. Bank can only presume that the damages alleged by Cragg, which are different than the damages Stiglitz has alleged previously, are the damages on which Stiglitz will rely going forward. As a result, Cragg's Report must be reviewed and analyzed by Aucone.

Stiglitz also argues that Aucone's prior report is not completely irrelevant because he reviewed documents other than Stiglitz's damages calculations to reach his conclusions. *See* Opp. at p. 19. This argument also misses the mark. Bank is not requesting reimbursement for the *past* charges Aucone incurred. The point is that Bank should not be forced to shoulder the costs of Aucone's work going forward because that work is necessitated solely by the belated Cragg Report. Accordingly, if the Court chooses not to strike the Cragg Report, Bank should be awarded the fees and costs she incurs in connection with responding to the Cragg Report.

In addition, Bank is entitled to the fees and expenses incurred in connection with the

belatedly aborted deposition of Bank's damages expert. The last minute cancellation of a deposition is unacceptable, except in the case of a true emergency. Bank's counsel was not required to advise Stiglitz's counsel of her travel plans in advance. This is another example of Stiglitz's abuse of the process and Bank should not have to bear the costs associated therewith.

Finally, Stiglitz did not respond to Bank's request for the attorneys' fees that she has incurred in connection with briefing this Motion. Both Rule 16 and Rule 37 permit the Court to impose sanctions in the form of attorney's fees and reasonable expenses for any non-compliance. *See Novak v. Capital Management & Development Corp.*, 241 F.R.D. 389, 396 (D. D.C. 2007) (holding that "[t]he simple truth of the matter is that Defendants did not make the disclosures as to their expert witnesses that are required by the Federal Rules of Civil Procedure and Plaintiffs had no choice but to move to strike them." The court awarded attorneys' fees and costs to the Plaintiffs related to the motion to strike.). Bank had no choice but to file this Motion. She should not have to bear the costs associated with Stiglitz's failure to timely submit his expert reports.

## IV. CONCLUSION

For the foregoing reasons and those set forth in the Opening Brief, Bank respectfully requests that the Court grant her Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg from Testifying to Any of the Topics Addressed in His Report.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: January 4, 2008 | s/ Meredith E. Werner |
|  | Richard A. Simpson, D.C. Bar No. 411893 |
|  | Charles A. Jones, D.C. Bar No. 449127 |
|  | Meredith E. Werner, D.C. Bar No. 493455 |
|  | ROSS, DIXON & BELL, LLP |
|  | 2001 K Street, N.W. |
|  | Washington, D.C. 20006-1040 |
|  | Phone: (202) 662-2000 |
|  | Fax: (202) 662-2134 |
|  | *Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply Memorandum in Support of the Motion to Strike the Expert Report of Michael Cragg and to Preclude Michael Cragg From Testifying to Any of the Topics Addressed in His Report was filed electronically with the Court on January 4, 2008.

          s/ Meredith E. Werner
          Meredith E. Werner

362393 v 2