IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH E. STIGLITZ, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-1826 RJL |
| RITA M. BANK, | ) |
| Defendant. | ) |

## OPPOSITION TO PLAINTIFF'S MOTION TO
## PRECLUDE THE EXPERT TESTIMONY OF PROFESSOR CATHERINE ROSS

Professor Catherine Ross has taught family law at the George Washington University Law School for more than ten years. She authored the chapter on the division of property at the dissolution of a marriage in a West textbook on family law. She is licensed in New York and practiced there for approximately seven years. Given her background and expertise, Professor Ross is uniquely qualified to opine on the topic for which she has been offered by Defendant Rita Bank – the differences between New York and District of Columbia matrimonial law, particularly as they relate to the division of property at the dissolution of a marriage. Nonetheless, rather than responding to her testimony by timely offering his own expert on this crucial issue to his malpractice case, Plaintiff waited almost fourteen months after Professor Ross submitted her expert report and four and half months after her deposition to file this motion seeking to preclude her from testifying.

Despite her obvious qualifications, the Plaintiff's motion launches misguided attacks at Professor Ross, claiming that she is not qualified to offer an expert opinion in this case because she is not admitted to practice in the District of Columbia and has no "practical experience" in a case involving celebrity status or enhanced earnings in New York. *See* Motion, pg. 4, 5, 6. The

366589 v 2

Plaintiff's requirements do not appear in the Federal Rules of Evidence or in case law. In fact, case law makes clear that the opposite is true – neither a license nor specific practical experience are required to offer an expert legal opinion. Instead, courts consider an expert's knowledge, skill, training or education. As summarized above, given Professor Ross's impeccable qualifications, it is difficult to imagine anyone more qualified to offer an opinion on the differences between New York and District of Columbia matrimonial law.

Plaintiff's motion also erroneously attacks the scope of the expert opinion being offered by Professor Ross, arguing that it is not admissible because it does not directly address the standard of care and alternatively arguing that it improperly invades the province of the Court. While the Plaintiff is correct that Professor Ross will not offer her opinion that the conduct of Rita Bank met the standard of care, it does not follow that her testimony is inadmissible. Professor Ross's testimony relates to the differences between matrimonial law in New York and the District of Columbia during the relevant time period as those differences would pertain to the resolution of the Stiglitz/Hannaway divorce. Such testimony is both highly relevant and admissible in a case in which the Plaintiff's alleged damages are based, at least in part, on the differences between New York and District of Columbia matrimonial law.

Second, Professor Ross's testimony in no way usurps the role of the Court. In a legal malpractice action, the jury needs to understand the law applicable in the underlying action and the state of that law at the time of the alleged malpractice in order to determine whether the malpractice plaintiff would have been more likely to prevail in the underlying action in one jurisdiction or the other. The Court will not instruct the jury on the differences between New York and District of Columbia matrimonial law, or on how those differences effect Plaintiff's claim. Accordingly, Professor Ross's opinion – that the differences between New York and District of Columbia matrimonial law did not necessarily mean that the Plaintiff would have

fared better in the District of Columbia than in New York – is relevant and does not invade the province of the Court.

In sum, while Plaintiff undoubtedly would prefer that Professor Ross be precluded from offering testimony on this issue that is central to his claim, there is no legal basis for doing so. Plaintiff's motion should be denied.

I.     Background

On November 15, 2007, Stiglitz designated two experts.  Stiglitz designated Glenn Lewis, an attorney practicing matrimonial law in the District of Columbia, to opine regarding whether Bank's actions met the standard of care of an attorney practicing matrimonial law in the District of Columbia.  Among other things, Lewis opined that Bank breached the standard of care by failing to advise Stiglitz of the potential ramifications of establishing residency in New York and that Bank breached the standard of care by failing to protect Stiglitz from the enhanced earnings and celebrity status consequences he faced under New York law.  Stiglitz also designated as an expert Marcy Wachtel, an attorney practicing matrimonial law in New York.  According to Stiglitz's expert witness designation, Wachtel's opinion relates to the relevant standard of care required of a matrimonial attorney in New York where celebrity status and/or enhanced earnings are at issue.  *See* D.E. 15.

On February 8, 2007, Bank designated three different experts.  Bank's expert witness designation, attached hereto as Exhibit 1, delineates the testimony that each of the three experts will provide.  Bank retained Robert Aucone, an accountant, to opine with respect to the Plaintiff's alleged damages.  Bank retained Armin Kuder, an attorney practicing matrimonial law in the District of Columbia, to opine that Bank's actions met the standard of care of an attorney practicing matrimonial law in the District of Columbia.  Finally, Bank retained Professor Catherine Ross, a professor of law, to opine regarding the differences between matrimonial law

in New York and the District of Columbia during the relevant time period as those differences would effect the resolution of the Stiglitz/Hannaway divorce.

The Plaintiff did not designate any rebuttal experts.

## II. Professor Ross's Opinion is Both Relevant and Based on a Reliable Foundation.

The Plaintiff argues that Professor Ross's opinion is not relevant and is not based upon a reliable foundation. Specifically, the Plaintiff waffles between arguing that Ross's testimony should be precluded because she "fails to address the defendant's alleged breaches of the standard of care," and arguing that she is not qualified to offer a legal opinion on the standard of care because she is not barred in the District of Columbia and has no "practical experience" in a case involving celebrity status or enhanced earnings in New York. *See* Motion, pg. 4, 5, 6. Neither argument has merit.

### A. Professor Ross's Opinion Is Properly Limited to the Differences Between Matrimonial Law in New York and the District of Columbia

The Plaintiff is correct that Professor Ross will not offer an opinion on whether Defendant breached the standard of care. That, however, is irrelevant.

In order to succeed in this case, the Plaintiff must establish the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of. *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166 (D.C. Ct. App. 2003); *see also Steele v. D.C. Tiger Market*, 854 A.2d 175 (D.C. 2004) ("Nothing in this opinion is intended to cast doubt on the need for expert testimony in legal and medical malpractice cases, for instance, to prove the applicable standard of care, a deviation from that standard, and a causal relationship between the deviation and the harm alleged to have occurred." (internal citations omitted)). In addition to proving that Bank breached the applicable standard of care, Plaintiff must prove what the outcome would have been in the underlying action absent the alleged malpractice. Thus, a linchpin of Plaintiff's case is that there are significant differences between

matrimonial law in New York and the District of Columbia and that he was damaged by the application of New York law. *See* D.E. 1, Complaint ¶¶ 11, 14-15, 22, 26. Professor Ross's expert opinion addressing the differences between New York and District of Columbia law and how those differences would have effected the outcome of the underlying divorce proceedings goes to this "case within a case," debunking the Plaintiff's theory regarding the causal relationship between the alleged violation and the harm complained of.

Professor Ross's opinion can be likened to that of one of the experts in *Mavity v. Fraas*, 456 F.Supp.2d 29 (D. D.C. 2006). In that case, the court held that the plaintiff was required to present expert testimony on her allegation that the defendant attorney's decision to withdraw a particular claim constituted legal malpractice. The court reasoned that a lay jury cannot be expected to understand the significance and viability of a particular legal claim. Because the plaintiff failed to designate such an expert witness, her claim was dismissed.

Here, the jury cannot be expected to understand the differences between New York and District of Columbia matrimonial law, a subject on which they will not receive instruction from the Court. As a result, Professor Ross's opinion is clearly relevant and will aid the trier of fact.

>   B.   **Professor Ross's Is Amply Qualified to Opine Regarding the Differences Between Matrimonial Law in New York and the District of Columbia**

The Plaintiff's attacks on Professor Ross's qualifications are also without merit. The Plaintiff's argument is premised on the theory that an attorney must be licensed in a particular state or must have direct experience with identical facts to offer an expert opinion on that state's laws. The Plaintiff does not cite a single case supporting this theory – because none exist.

In *District of Columbia v. Anderson*, 597 A.2d 1295, 1300 (D.C. 1991), the District of Columbia Court Appeals made clear that it will review an expert's "knowledge, skill, training or education," rather than his or her title, to determine whether the expert can offer an opinion that could aid the trier of fact. The court in *Anderson* held that a medical license was not required for

a person to offer expert testimony on medical issues, "provided the witness has sufficient knowledge and experience to offer an informed judgment." *Id.* at 1299 (internal citations omitted). *See also Smith v. Haynsworth, Marion, McKay & Geurard*, 472 S.E.2d 612 (S.C. 1996) (holding that the fact that an expert was not licensed to practice law in South Carolina did not disqualify him as an expert) (citing *McMillan v. Durant*, 439 S.E.2d 829 (S.C. 1993) (holding that practitioner's experience teaching in a particular specialty and his professional interaction with practitioners of that specialty are facts sufficient to support his qualification as an expert and that defects in qualification should go to weight rather than admissibility)); *Feinberg v. Feinberg*, 409 N.Y.S.2d 365 (N.Y. Sup. Ct. 1978) (the court accepted expert testimony concerning the law of the Dominican Republic from an attorney who was a member of the New York Bar but taught and directed research in the civil law systems, including that of the Dominican Republic); CJS EVIDENCE § 635 ("It is not necessary that the witness should be a lawyer, admitted to practice in the foreign country or in any other jurisdiction. One who because of his position has had a reasonable opportunity to acquaint himself with the foreign law may testify thereto."). Thus, it is clear that Professor Ross does not need a District of Columbia law license to opine regarding the differences between matrimonial law in New York and the District of Columbia.

Furthermore, there is no requirement that an attorney must have directly handled a case involving the same issues in order to offer an opinion, as Professor Ross does, on the state of the law in a particular area. In *Battle v. Thornton*, 646 A.2d 315 (D.C. 1994), the court permitted an attorney to testify as an expert witness in a legal malpractice action in which the underlying case was a Medicaid fraud case, even though the attorney had never been involved in a Medicaid fraud case. The court based its decision on the attorney's extensive experience as criminal lawyer, the attorney's testimony that he had participated in other types of criminal fraud cases,

and the attorney's testimony that he had studied and was familiar with the standard of care required of an attorney performing services for a client charged with criminal fraud. Moreover, the unique facts that the Plaintiff in the instant action alleges were relevant to his divorce – celebrity status, enhanced earnings and the division of the proceeds of a Nobel Prize – would make it exceptionally difficult to find an attorney who has litigated each of the relevant issues.

It is beyond dispute that professors are routinely called upon to offer expert opinions. In this case, Professor Ross is uniquely qualified to offer an expert opinion regarding the differences between matrimonial law in New York and the District of Columbia. Professor Ross is a member of the New York Bar and teaches family law in the District of Columbia. Professor Ross read every reported opinion and every published discussion on the line of celebrity status cases in New York. Exhibit 2, Ross deposition transcript excerpt, p. 103: 6-13. A quick review of Professor Ross's resume, (*see* Exhibit 1), shows that her experience in family and matrimonial law runs deep. Professor Ross has been a member of the law faculty at the George Washington University Law School since 1996, and has been tenured there since 2000. She co-authored a textbook on family law and was the primary author of the chapter on the division of marital property at dissolution.

Finally, should the Court find that Professor Ross is not qualified to offer opinions on New York law because she has not litigated cases involving these precise issues, it should also preclude Plaintiff's proposed expert Glenn Lewis from offering an opinion on New York law for the same reason. Lewis opines that the Plaintiff was damaged due to his increased exposure under New York law and that Bank should have advised the Plaintiff that he could be at risk of a judgment based on enhanced earnings or celebrity status if he moved to New York. However, Lewis is not a member of the New York Bar and admits that he is not an expert with respect to

New York matrimonial law.  *See* Exhibit 3, Glenn Lewis deposition transcript excerpt, pg. 19:17-18, pg. 20:21-22 and 21:1-2.

### III.   Professor Ross's Opinion Does Not Usurp the Role of the Court.

Professor Ross's opinion does not usurp the role of the Court because she is not purporting to instruct the jury as to the law to be applied in deciding the issue before the jury.  It is undisputed, as noted by the Plaintiff, that the central issue in the case is "whether Bank breached the standard of care owed to Stiglitz by failing to act with a degree of care and skill that a reasonably competent attorney acting under similar circumstances would use …"  *See* Motion, pg 4-5.  Accordingly, this Court will instruct the jury on the applicable standard of care and no expert testimony should be permitted on that topic.  This limitation on the role of the expert is based on "[t]he danger … that the jury may think that the 'expert' in the particular branch of the law knows more than the judge-surely an inadmissible inference in our system of law."  *Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 512 (2d Cir. 1977).

It is important to keep in mind that this is a legal malpractice case – not an action for divorce.  "[I]n a legal malpractice action, the law applicable in the underlying action and the state of that law at the time of the alleged malpractice is almost always a consideration relevant to determining whether the malpractice plaintiff would have prevailed in the underlying action but for the alleged malpractice and whether the alleged malpractice did, in fact, constitute a departure from acceptable professional standards."  *Middle Mkt. Fin. Corp. v. D'Orazio,* 2002 U.S. Dist. LEXIS 17817, at *21-22 (S.D.N.Y. Sept. 23, 2002); *see also Nieves-Villanueva v. Soto-Rivera,* 133 F.3d 92, 100-01 (1st Cir. 1997) ("Further, there may be particular areas of law, such as legal malpractice, where expert testimony on legal matters is admissible where it would normally be excluded."); *Steele v. D.C. Tiger Market*, 854 A.2d 175, 183 (D.C. 2004) (noting

that "[s]uch testimony sometimes cannot help touching on legal principles that underlie the standard of care or that affect the question of causation").

As described above, however, Professor Ross's testimony is limited to the differences between New York and District of Columbia matrimonial law. Comparisons of the law in different jurisdictions are an accepted subject for expert testimony. *Aguinda v. Texaco, Inc.*, 142 F.Supp.2d 534 (S.D.N.Y. 2001) (noting that the asserted procedural difference between the United States and Ecuadorian legal systems of which plaintiffs complain was challenged by the defendant's legal expert).

Because of the limited scope of Professor Ross's testimony, there is no danger here that the jury will have to choose between the Court's instruction and Professor Ross's opinion – there is no overlap between the two. Precisely because the Court will not instruct the jury on the differences between New York and District of Columbia matrimonial law, Professor Ross's testimony will assist the jury in making its determination.

## IV. Conclusion

The Plaintiff alleges that he suffered damages because the Defendant's alleged malpractice resulted in his divorce being settled under the umbrella of New York law. Professor Ross, a tenured law professor who teaches family law and has written a textbook chapter on the distribution of assets at the dissolution of a marriage, will offer her expert opinion testimony on the state of the law relating to distribution of assets at the dissolution of a marriage in New York and the District of Columbia at the relevant time and how the differences would have effected the outcome of the underlying case. As discussed at length above, this is an appropriate topic for expert testimony and Professor Ross is duly qualified to offer an expert opinion on the topic. The Plaintiff's Motion to Preclude the Expert Testimony of Professor Catherine Ross is without merit. Defendant respectfully requests that the Court deny the motion.

Respectfully submitted,

DATED: April 16, 2008                          s/ Meredith E. Werner
                                      Richard A. Simpson, D.C. Bar No. 411893
                                      Charles A. Jones, D.C. Bar No. 449127
                                      Meredith E. Werner, D.C. Bar No. 493455
                                      ROSS, DIXON & BELL, LLP
                                      2001 K Street, N.W.
                                      Washington, D.C. 20006-1040
                                      Phone: (202) 662-2000
                                      Fax: (202) 662-2134

                                      *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opposition to Plaintiff's Motion to Preclude the Expert Testimony of Professor Catherine Ross was filed electronically with the Court on April 16, 2008.

                                                            s/ Meredith E. Werner
                                                            Meredith E. Werner