# EXHIBIT 2

# Transcript of

# Catherine Ross, Esq.

**Date:** November 14, 2007

**Case:** Joseph E. Stiglitz v. Rita M. Bank

Phone: 410-268-6006
Fax: 410-268-7006
Email: corbinandhook@corbinandhook.com
Internet: www.corbinandhook.com



# CORBIN & HOOK
## Reporting & Videoconferencing

*- Specializing in Interactive Realtime & Rough ASCII Transcripts -*

*Deposition of Catherine Ross, Esq.*
*Taken on November 14, 2007*

### Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH E. STIGLITZ
   Plaintiff
vs.    CA No. 05-1826 RJL
RITA M. BANK
   Defendant
_____/

Deposition of CATHERINE J. ROSS, ESQ., was taken on Wednesday, November 14, 2007, commencing at 10:09 A.M., at 2001 K Street, N.W., Washington, D.C., before Susan Farrell Smith, Notary Public.

------

Corbin & Hook Reporting and Videoconferencing
Serving MD, DC, No.VA & DE
Reported by SUSAN FARRELL SMITH

### Page 2

1  APPEARANCES:
2     DAVID G. WHITWORTH, JR., ESQUIRE
3     dwhitworth@wstlaw.com
4     Whitworth & Trunnell, P.A.
5     2101 Defense Highway
6     MD Rt. 450
7     Crofton, MD 21114
8     301.261.0035
9       On behalf of the Plaintiff
10    MEREDITH WERNER, ESQUIRE
11    mwerner@rdblaw.com
12    RICHARD A. SIMPSON, ESQUIRE
13    rsimpson@rdblaw.com
14    Ross Dixon & Bell, LLP
15    2011 K Street, N.W.
16    Washington, D.C. 20006
17    202.662.2000
18      On behalf of the Defendant
19
20 REPORTED BY: Susan Farrell Smith
21

### Page 3

1        EXAMINATION INDEX
2
   CATHERINE J. ROSS, ESQ.
3     BY MR. WHITWORTH        4
4        EXHIBIT INDEX
5            PREMARKED
   ROSS DEPOSITION EXHIBIT
6    1  Curriculum vitae
7    2  Brief description of bio
8    3  Statement if facts
9    4  2/8/07 draft
10   5  Handwritten notes
11   6  First request for production of documents
12   7  2/2/07 draft
13   8  2/9/07 report
14   9  Invoice
15
16

   (Exhibits attached to original transcript.)
17
18
19
20
21

### Page 4

1        CATHERINE J. ROSS, ESQ.,
2  the Witness, called for oral examination by counsel
3  for the Plaintiff, having declared and affirmed
4  under the penalties of perjury to tell the truth,
5  was examined and testified as follows:
6        EXAMINATION
7  BY MR. WHITWORTH:
8    Q.  Good morning.
9    **A.  Good morning.**
10   Q.  As we have introduced ourselves earlier,
11 as you know, I'm David Whitworth, and I represent
12 Joseph Stiglitz in his claim against Rita Bank. And
13 I understand you've been retained as an expert in
14 the case.
15   **A.  That's correct.**
16   Q.  I also have of course had the benefit of
17 seeing your curriculum vitae and reviewing the
18 materials that you have prepared. But I want to
19 just know what experience you've had with
20 depositions previously first.
21   **A.  I have taken depositions, I have defended**

*Deposition of Catherine Ross, Esq.*
*Taken on November 14, 2007*

### Page 101

1  copy, because I marked mine up even worse. So
2  I will put on the record that I believe the
3  question marks on the side of a couple of those
4  paragraphs were done by my co-counsel Linda
5  Hamilton, and I didn't clean it up further when
6  I made a copy of it yesterday.
7      And as Mr. Simpson pointed out, you can
8  see some dark smudges where apparently there
9  had been some highlighting done. And again, I
10 think it's -- this version is readable, but I
11 will put on the record that that's not the way
12 it came to us. Those were added after we
13 received it.
14     Q.  I'm going to work from my own highlighted
15 copy. Now, we've already discussed the fact that
16 that Ketterle case, is that the way you pronounce
17 it? K-E-T-T-E-R-L-E?
18     A.  I believe it's Ketterle.
19     Q.  Ketterle. Thank you. I'm putting an R in
20 it where it doesn't belong. Ketterle case was a
21 Massachusetts appellate 2004 opinion?

### Page 102

1   A.  Yes.
2   Q.  Did you -- and that case quoted a 2000
3  case in Massachusetts which --
4   A.  Excuse me. What page are you on?
5   Q.  I'm looking at Page 3.
6   A.  Thank you.
7   Q.  Your second paragraph there.
8   A.  Yep.
9   Q.  And you indicated that that case quoted
10 the Williams versus Massa, M-A-S-S-A, a 2000 case.
11  A.  Yes.
12  Q.  But it's true, is it not, if someone had
13 done a search of the case law across the many
14 jurisdictions in this country looking for a Nobel
15 Prize distribution case prior to 2004, you wouldn't
16 have found one using that approach; is that fair to
17 say?
18  A.  You wouldn't have found a case at all.
19  Q.  Thank you. Now, the next item I want to
20 discuss is on Page 4 where you discuss the Elkus
21 case, am I pronouncing that the way it's pronounced?

### Page 103

1   A.  Yes.
2   Q.  E-L-K-U-S. A 1991 New York opinion, and
3  that case was preceded by the Golub, G-O-L-U-B, a
4  1988 case?
5   A.  Yes.
6   Q.  And then you say at the last sentence of
7  that paragraph: No New York court has found an
8  increase in celebrity status meriting division in
9  more than 15 years since Elkus was decided. What do
10 you base that statement on?
11  A.  My search of all of the reported opinions
12 and all of the published discussions of this line of
13 cases.
14  Q.  But as we discussed earlier, that really
15 is an overly broad statement since it doesn't -- you
16 cannot search the sealed trial court or nisi prius
17 decisions in New York; is that correct?
18      MR. SIMPSON:  Object to the form of the
19  question.
20  A.  I'm not sure what your question is.
21  Q.  Well, you say no New York court, you can't

### Page 104

1  really say that with certainty; isn't that true?
2   A.  I suppose if one were going to be really a
3  stickler, one could say no reported opinion. But it
4  would be my position that as far as the development
5  of a doctrine, the unreported opinions are less than
6  irrelevant. They are a nullity. They don't exist.
7  They can't be used. They have not extended the
8  doctrine or commented on the doctrine. We don't
9  know what happened, and we don't know the
10 reasoning. They are as if they never existed.
11  Q.  No New York court has overturned those two
12 opinions; is that correct?
13  A.  That's correct.
14  Q.  And, therefore, every litigant who has
15 exposure or is claimed by their spouse to have
16 exposure as -- to the celebrity status doctrine, has
17 to take those cases and that law into account when
18 they're analyzing their litigation prospects; is
19 that correct?
20  A.  Yes.
21  Q.  And similarly in Joseph Stiglitz's case,

26 (Pages 101 to 104)