## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
JOSEPH E. STIGLITZ,                                      )
)
              Plaintiff,                                )
)
       v.                                                 )      Civil Action No. 05-1826 RJL
)
RITA M. BANK,                                            )
)
              Defendant.                               )
_____)

## **MOTION TO PRECLUDE PLAINTIFF'S PURPORTED DAMAGES EVIDENCE**

      Defendant Rita M. Bank ("Bank") respectfully moves this Court to preclude Plaintiff

Joseph E. Stiglitz ("Stiglitz") from presenting evidence on any of his damages claims as set forth

in his interrogatory responses or, alternatively, to preclude Stiglitz from presenting evidence on

certain of those damages claims.  Filed with this motion, and incorporated by reference herein, is

Bank's Memorandum of Law in Support of Defendant's Motion to Preclude Plaintiff's Purported

Damages.

      A proposed Order is being filed concurrently with this Motion.

Respectfully submitted,

_____/s/ Richard A. Simpson_____
Richard A. Simpson, D.C. Bar No. 411893
WILEY REIN, LLP
1776 K Street, N.W.
Washington, D.C.  20006
Phone: (202) 719-7000
Fax: (202) 719-7049
Email:  rsimpson@wileyrein.com


*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
JOSEPH E. STIGLITZ,                    )
                                       )
             Plaintiff,                )
                                       )
      v.                               )        Civil Action No. 05-1826 RJL
                                       )
RITA M. BANK,                          )
                                       )
             Defendant.                )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF'S PURPORTED DAMAGES EVIDENCE

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

    A.    Overview of Stiglitz's Damages Claims................................................. 1

    B.    The Court's Preclusion of Stiglitz's Damages Expert's Testimony and
          Stiglitz's Failure to Meet Requirements For Expert Testimony........................... 2

II.   STIGLITZ ATTEMPTS TO PRESENT EXPERT TESTIMONY ON DAMAGES
     THAT SHOULD BE PRECLUDED ................................................................... 3

    A.    Stiglitz's damages evidence constitutes expert testimony, which the Court
          previously precluded............................................................................. 4

    B.    Stiglitz is not qualified as an expert..................................................... 8

    C.    Stiglitz has not complied with the requirements for expert testimony ................. 9

III.  STIGLITZ'S SO CALLED "LOST OPPORTUNITY" DAMAGES ARE
     SPECULATIVE AND SHOULD BE PRECLUDED ...................................................... 15

IV.   STIGLITZ CANNOT AUTOMATICALLY ADD IN PREJUDGMENT
     INTEREST AT UNSPECIFIED RATES TO HIS DAMAGES CALCULATIONS ...... 17

V.    CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)..............................11

*Equal Employment Opportunity Commission v. Lennar Homes of Arizona, Inc.*,
     Case No. 03-1827, 2006 WL 1734594 (D. Az. June 23, 2006)................................4, 8

*Footbridge Ltd. Trust v. Zhang*, 584 F. Supp. 2d 150 (D.D.C. 2008) ..............................10

*LifeWise Master Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004)........................4, 8

*Minebea Co., Ltd. v. Papst*, Case No. 97-0590, 2005 WL 1459704 (D.D.C. June
     21, 2005) ................................................................................................................4

*Richmond Medical Ctr. For Women v. Herring*, 527 F.3d 128 (4th Cir. 2008)......8, 10, 11

*St. Paul Mercury Insurance Co. v. Capitol Sprinkler Inspection, Inc.*, Case No.
     05-2115, 2007 WL 1589495 (D.D.C. June 1, 2007)................................................9, 10

*United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008) ......................................................9

*United States v. Eiland*, Case No. 04-379, 2006 WL 2844921 (D.D.C. Oct. 2,
     2006) ........................................................................................................................4, 9

*United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007) ....................................................4, 11

## STATE CASES

*District of Columbia v. Pierce Associates, Inc.*, 527 A.2d 306 (D.C. 1987) ....................18

*Federal Marketing Co. v. Va. Impression Products Co.*, 823 A.2d 513 (D.C.
     2003) ..................................................................................................................17, 18

*Hildreth Consulting Engineers, P.C. v. Larry E. Knight, Inc.*, 801 A.2d 967 (D.C.
     2002) ..................................................................................................................16, 17

*In re Estate of Curseen*, 890 A.2d 191 (D.C. 2006) ...................................................16, 17

*Knight v. Georgetown University*, 725 A.2d 472 (D.C. 1999) ..........................................4

*Poole v. Lowe*, 615 A.2d 589 (D.C. 1992).........................................................................16

*Pratt v. University of the District of Columbia*, 691 A.2d 158 (D.C. 1997).....................16

*Schwartz v. Swartz*, 723 A.2d 841 (D.C. 1998) ...............................................................18

*Vector Realty Group, Inc. v. 711 Fourteenth Street, Inc.*, 659 A.2d 230 (D.C. 1994) .............................................................................................................................16

*Zoerb v. Barton Protective Services*, 851 A.2d 465 (D.C. 2004) ...............................16, 17

## FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 26......................................................................................9, 10, 11, 12, 16

Fed. R. Evid. 701 .................................................................................................................4

Fed. R. Evid. 702 ....................................................................................4, 5, 6, 8, 10, 11, 12,16

## STATE STATUTES

D.C. Code § 15-108 (2001)................................................................................................17

Defendant Rita M. Bank ("Bank") respectfully submits this memorandum of law in support of her motion to preclude Plaintiff Joseph E. Stiglitz ("Stiglitz") from presenting evidence on any of his damages claims as set forth in his interrogatory responses or, alternatively, to preclude Stiglitz from presenting evidence on certain of those damages claims.

## I.  INTRODUCTION

### A.  Overview of Stiglitz's Damages Claims

In this legal malpractice case, Stiglitz alleges that Bank committed various negligent acts in connection with her representation of Stiglitz as his divorce attorney. In particular, Stiglitz asserts that Bank should have advised him to accept a May 2002 settlement offer made by his ex-wife, Jane Hannaway (the "2002 Hannaway Offer"). Alternatively, Stiglitz contends that Bank should have advised him to file a divorce action in the District of Columbia early on in the representation, such that the proceeding would have concluded no later than the summer of 2002. Stiglitz alleges that, because Bank did not advise him to accept his ex-wife's settlement proposal or to bring suit in the District, Hannaway was able to file a divorce action in New York. Stiglitz contends that New York was a more favorable forum for his ex-wife, and that the 2004 divorce settlement that the parties reached in New York (the "New York Settlement") was much less favorable for him than either (a) the 2002 Hannaway Offer, or (b) the result Stiglitz claims would have been reached at a trial in the District, had the divorce case been litigated there.

Stiglitz has asserted two alternative theories to show how he purportedly was damaged as a result of Bank's alleged malpractice, both of which involve Stiglitz's attempt to compare the actual result he received with what he contends "would" have happened absent the alleged malpractice. Specifically, Stiglitz attempts to: (1) compare the New York Settlement with the 2002 Hannaway Offer; and (2) compare the New York Settlement with the hypothetical outcome of a trial in the

District.[1]   Based on these damages theories, Stiglitz asserts claims for damages across myriad "categories," consisting of:  (1) earnings; (2) "enhanced" earnings and Hannaway legal bills; (3) book royalties on over twenty books, including future royalties to be earned; (4) investment account(s) (the "Vanguard Account"); (5) pensions; (6) attorneys' fees and costs in New York litigation; and (7) "lost opportunity costs."

As Bank's damages expert Robert Aucone ("Aucone") has explained, however, the comparisons that Stiglitz seeks to make with the actual New York settlement are problematic, at best, because the other hypothetical results (i.e., the 2002 Hannaway Offer and the purported outcome at trial in D.C.) are structured quite differently from the New York settlement.  Declaration of Robert Aucone ("Aucone Dec."), at ¶¶ 9-11, attached hereto as Exhibit B.  Indeed, these "alternative" results involve different assets measured at different points in time, and require different projections for future assets, such as royalties.  *Id.*  Thus, the comparisons Stiglitz seeks to make are not "apples to "apples," and Stiglitz must complete multiple machinations, including computing various setoff calculations, in order even to attempt to make the comparisons parallel. Quite clearly, the testimony that Stiglitz seeks to provide on his alleged damages goes far beyond "simple "arithmetic as he asserts, and constitutes expert testimony that the Court already has precluded Stiglitz from presenting.

**B.**     **The Court's Preclusion of Stiglitz's Damages Expert's Testimony and Stiglitz's Failure to Meet Requirements For Expert Testimony**

More than two years ago, on January 7, 2008, this Court granted Continental's motion to strike the expert report of Stiglitz's proposed damages expert, Michael Cragg ("Cragg"), which Stiglitz served nearly a year after the deadline for expert witness disclosures and only seven days

---

[1] Stiglitz uses a settlement offer that he made to Hannaway in July 2002 as a "rough" proxy for what he claims the result would have been in the District had the case been litigated here.  Deposition of Joseph E. Stiglitz of November 30, 2009, Vol. III, at 37 (relevant portions attached hereto as Exhibit A)  ("Stiglitz Dep.").

before the close of expert discovery.  The Court's Order precluded Mr. Cragg from testifying as to *any* of the topics addressed in his expert report.  *See* Docket, Minute Order of January 7, 2008, attached hereto as Exhibit C.

In an attempt to circumvent the Court's Order striking his damages expert's testimony, Stiglitz now attempts to act as his own damages expert, in order to introduce the very same damages theories that Cragg presented in his report.  Stiglitz should not be allowed to thwart the Court's Order, and the Court should preclude Stiglitz from presenting evidence on his damages claims.  Moreover, putting aside entirely that Stiglitz is attempting to do an end run around the Court's Order, Stiglitz neither is qualified to be a damages expert nor does he comply with the requirements for proffering expert testimony.  For these reasons, Stiglitz should be precluded from presenting evidence regarding the damages claims set forth in his interrogatory responses.  Even if Stiglitz is allowed to present testimony regarding his damages claims, he should not be allowed to introduce evidence of so-called "lost opportunity" damages, which are purely speculative.  Stiglitz also should be precluded from presenting only "corrected" damages amounts that reflect unspecified base damages amounts that purportedly have been brought to "present value" using undefined calculations.

## II.   STIGLITZ ATTEMPTS TO PRESENT EXPERT TESTIMONY ON DAMAGES THAT SHOULD BE PRECLUDED

### A.   Stiglitz's damages evidence constitutes expert testimony, which the Court previously precluded

Pursuant to Fed. R. Evid. 701, if a witness is not testifying as an expert, "the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are: . . . (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  *See also United States v. Eiland*, Case No. 04-379, 2006 WL 2844921, at *3, *5 (D.D.C. Oct.

2, 2006) ("[A] witness may not offer testimony as a lay witness under Rule 701 if such testimony is based solely upon his experience or expertise[,]" and "testimony based on this type of extensive past experience more rightly falls under the purview of Rule 702 . . . ."). Rule 701(c) is intended "to eliminate the risk that the reliability requirements set forth in [Fed. R. Evid.] 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *U.S. v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007).

Detailed testimony on complex damages claims, including complex comparisons of the economic effect of alternative settlement and litigation outcomes, as well as calculations of estimated royalty and pension amounts, constitutes expert testimony that falls within the scope of Rule 702. *See, e.g., Minebea Co., Ltd. v. Papst*, Case No. 97-0590, 2005 WL 1459704, at *3 (D.D.C. June 21, 2005) (involving expert testimony on reasonable royalty rates and disallowing such testimony because it was "unclear what facts or data [the expert] . . . relied upon and his methodology [was] unreliable"); *Knight v. Georgetown University*, 725 A.2d 472, 486 (D.C. 1999) (involving expert testimony on lost salary and pension); *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (precluding a lay witness from testifying as to a damages model because it included moving averages and compounded growth rates, which the court found were technical, specialized subjects); *Equal Employment Opportunity Comm'n  v. Lennar Homes of Arizona, Inc.*, Case No. 03-1827, 2006 WL 1734594, at *4 (D. Az. June 23, 2006) (finding that testimony regarding damages that included a fluctuating interest rate and a present value calculation related to a front pay claim fell under Rule 702 because it required specialized knowledge). *See also* Aucone Dec., at ¶¶ 2, 11, 23, Ex. B.  Indeed, Stiglitz recognized the need for expert testimony on his complex damages claims and retained a damages expert – Cragg – to provide precisely that expert testimony.  As noted above, however, the Court precluded Cragg's testimony because Stiglitz

improperly failed to disclose such testimony until nearly a year after the deadline for expert disclosures.

In an attempt to evade the Court's Order striking his damages expert's testimony, Stiglitz now tries to introduce the very same damages evidence through the use of his own testimony. Even a cursory comparison of Cragg's previously stricken expert report with Stiglitz's interrogatory responses regarding damages makes it readily apparent that Stiglitz seeks to introduce the exact damages evidence that the court previously determined Stiglitz was precluded from offering:

| **Cragg's Stricken Expert Report** | **Stiglitz's Interrogatory Responses** |
|---|---|
| • Analyzes damages as the difference between the New York Settlement and the result had the case been resolve in the District by June 30, 2002<br><br>• Identifies sources of damages as:  additional litigation costs; additional income; enhanced earnings and Hannaway legal bills; lost "opportunity costs"; division of Vanguard account and World Bank pension; mortgage payments, and royalty payments | • Analyzes damages by comparing the New York Settlement with two hypothetical outcomes in the District, both of which assume the case would have resolved by the summer of 2002.<br><br>• Identifies sources of damages as:  additional litigation costs; additional income; enhanced earnings and Hannaway legal bills; lost "opportunity costs"; division of Vanguard account and World Bank pension; mortgage payments, and royalty payments |

*Compare* Expert Report of Michael Cragg (attached hereto as Exhibit D) *with* (1) Plaintiff's Answers to Defendant's First Set of Interrogatories (attached hereto as Exhibit E), (2) Plaintiff's Supplemental Response to Defendant's First Set of Interrogatories and Objection to Second Set of Interrogatories (attached hereto as Exhibit F), (3) Plaintiff's Revised Supplemental Response to Defendant's First Set of Interrogatories and Objection to Second Set of Interrogatories (attached hereto as Exhibit G), and (4) Plaintiff's Second Revised Supplemental Answer to Defendant's First Set of Interrogatories (attached hereto as Exhibit H).  The fact that Stiglitz (vs. Cragg) is now testifying regarding these complex damages issues does not change the nature of the testimony –

quite clearly, Stiglitz's testimony on damages constitutes expert testimony pursuant to Rule 702, which the Court already has precluded.

As an initial matter, as noted above, the alternative "outcomes" that Stiglitz seeks to compare are not equivalent.  The New York Settlement, the 2002 Hannaway Offer and the hypothetical outcome that Stiglitz says would have been reached at trial in D.C. are structured quite differently – each involve different assets measured at different points in time, and require different projections for future assets.  *See* Aucone Dec. at ¶ 9, Ex. B.  These differences are so pronounced that Stiglitz admits that he must complete various additional calculations in order even to be able to even make comparisons between the New York Settlement and the hypothetical results in the District:

> what I would have to do is to take 27 ½ percent of the difference between my income, including my royalties, and her income, the earned income, and then I calculated the damages including the tax impact; that is to say, reduced by the fact that having transferred that amount, I would not – I assume it would be done in a way that would make sure I wouldn't have to pay the tax.  I mean, that's not for sure, so I might – but assuming the tax impacted, and looked at the difference between those two methodologies, those two calculations.  And when one does that, one gets a result that if one looks at what I paid Han[n]away in royalties, was just about equal to what I would have had to pay.  What I paid Han[n]away in royalties and will pay her, you know, based on these projects was just about equal to when I would have had to pay under the 27 ½ percent provision.  And that's why the number is, in the second methodology, a minus 24,000.

Stiglitz Dep., at 139-40, Ex. A; *See also* Aucone Dec., at ¶¶ 9-11, Ex. B.

Stiglitz's recent deposition testimony also confirms the complex nature of the damages evidence he seeks to present with respect to royalties.  Specifically, in attempting to explain how he derived his claimed damages for excess book royalties paid to Hannaway, Stiglitz confirmed that he had to make projections on future royalties on each of more than twenty books, and that it order to do that he "looked at the pattern of what was happening to the royalties" and "extrapolated" ten years out, using his judgment on the particular "pattern" each book would follow.  *See* Stiglitz Dep.

at 122-125, Ex. A.   Summary documents Stiglitz produced with respect to royalties likewise

confirms the complex nature of his damages calculations for this damages claim.  *See* Hannaway

Hypothetical Royalties Paid, JES0015943, attached hereto as Exhibit I.

Stiglitz's attempt during deposition to explain the calculations he used in coming up with his

most recent alleged damages amounts also readily illustrates the complex nature of his damages

claims:

> I downloaded the   -- all the T bill rates, you know, one year, two
> year, three years, okay?  And then at each date, if the word "a two-
> year T-bill" between – and we are talking about February 2007, what
> is the value in February 2009.  We have an easy number to put in.
> It's the two-year T-bill moving from 2007 to 2009, okay?
>
> So that would have – that's no problem.  The difficulty arises, what
> happens if we have something on – it's a February 1st.  I mean, say
> we have – we have something that is in between the dates for which
> there are the published T-bill rates. . .
>
> The differences – how you do it doesn't make much difference, but it
> was an interpolation between the two most adjacent T-bills.  So if it
> was 2.4 years and we have a two-year and a three-year T-bill, it
> would be the 40 percent of the two-year and the 60 percent of the
> three-year.
>
> . . .
>
> Well, that's even simpler because that's  -- what I use for that was the
> TIPS (phonetic) rate. . . .  And -- because that is a conservative
> estimate of what the inflation – the real interest rate is, going forward
> . . . . And so the value is protected against inflation. . . . It's actually
> an overestimate of the real interest rate, i.e., is discounting at too high
> of a rate because the TIPS markets are typically less liquid than T-bill
> markets.  And therefore, the interest rates on those tend to be a little
> bit higher to reflect the liquidity premium.

Stiglitz Dep. at 48-49, 56-57, Ex. A.  Quite clearly, the damages evidence that Stiglitz attempts to

present is based on technical and specialized knowledge that falls within the ambit of Fed. R. Evid.

702.[2]  *LifeWise Master Funding*, 374 F.3d at 929; *Lennar Homes of Arizona, Inc.*, 2006 WL 1734594, at *4. Because the Court previously ruled that Stiglitz was prohibited from presenting expert evidence on damages in this case, the Court should preclude Stiglitz from presenting evidence on his damages claims as set forth in his interrogatory responses.

### B.    Stiglitz is not qualified as an expert

Not only should Stiglitz be precluded from presenting evidence on the damages claims set forth in his interrogatory responses because the Court already determined that Stiglitz could not present expert testimony due to his egregious violation of the scheduling Order in this case, but also such evidence and accompanying testimony  should be precluded because Stiglitz is not qualified to act as an expert in the relevant field.

It is not enough for a proffered expert to have impressive professional qualifications; "he must also have 'sufficient specialized knowledge to assist the jurors in deciding the *particular issues in the case.*'"  *Richmond Med. Ctr. For Women v. Herring*, 527 F.3d 128, 134 n.1 (4th Cir. 2008). *See also Eiland*, 2006 WL 2844921, at *3, *5 ("in order to qualify as an expert and offer expert opinion testimony . . . , the witness must possess 'knowledge, skill, experience, training, or education' with respect to the subject about which he is testifying" and such testimony "will be limited to the scope of such experience, and should not stray therefrom" ).

Stiglitz has never provided a list of his qualifications as a damages or valuation expert, or a list of any other cases in which he has testified as a damages expert, both of which are required by Fed. R. Civ. P. 26.  The fact that Stiglitz happens to be a Nobel Prize winning economist does not automatically qualify him as a valuation and damages expert.  *Richmond Med. Ctr. For Women*, 527 F.3d at 134 n.1.  *See also* Aucone Dec., at ¶ 4, Ex. B.  Indeed, when asked at his most recent

---

[2] Indeed, as noted above, Stiglitz has to compute various "setoff" calculations in order even to be able to attempt to

deposition as to whether he had experience, outside of this case, in calculating damages of the kind that are at issue here, Stiglitz responded that he was not an expert but that the damages calculations are "just arithmetic."[3]  Stiglitz Dep. at 20-21, Ex. A.  Accordingly, Stiglitz has not established that he is qualified to testify as a damages expert in this matter, and the Court should preclude him from offering what is quite obviously, in substance, expert testimony.[4]

**C.    Stiglitz has not complied with the requirements for expert testimony**

Putting aside entirely the expert qualification issue, and assuming *arguendo* that he could qualify as a damages expert, Stiglitz should be precluded from presenting evidence on his damages claims because he unquestionably fails to comply with the requirements for proffering expert testimony as set forth in both Fed. R. Civ. P. 26 and Fed. R. Evid. 702.  *See United States v. Day*, 524 F.3d 1361, 1368-69 (D.C. Cir. 2008) (upholding the trial's court's exclusion of expert testimony because such testimony was "unreliable and unhelpful . . . under the requirements embodied in Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert*"); *Footbridge Ltd. Trust v. Zhang*, 584 F. Supp. 2d 150, 160 (D.D.C. 2008) (refusing to admit expert testimony at trial because plaintiff did not produce a timely expert report in the case); *St. Paul Mercury Ins. Co. v.*

---

create parallel comparisons for each of his damages theories.

[3] Stiglitz also seeks to act as an expert in publishing.  Specifically, in connection with his damages claims regarding book royalties, Stiglitz makes complex projections of future royalties that he says he likely will earn on over twenty different books.  *See* Stiglitz Dep. at 112-135, Ex. A.  Other than the fact that Stiglitz has written books that have been published, Stiglitz has presented no evidence that he is in any way qualified to act as a publishing expert.  *See id.*; Aucone Dec., ¶ 19, Ex. B.

[4] Stiglitz may be entitled, as a lay witness, to testify to the amount of attorneys' fees and costs that he paid in the New York litigation, which is relevant to one item of his alleged damages, the contention that litigation expenses were higher in New York than they would have been in the District of Columbia.  With respect to the increased attorneys' fees and costs claim, however, Stiglitz has not presented competent testimony even as to the amount of his New York legal fees and expenses, let alone the required comparison between those amounts and the comparable amounts that would have been incurred in the District of Columbia.  Indeed, at his most recent deposition, Stiglitz acknowledged that his lawyers added up the pertinent bills and supplied him with the number and that he suspected that the number was "a little bit rounded."  Stiglitz Dep., at 64-66, Ex. A.  The particular bills in question have never been identified, as should be required.  Furthermore, Stiglitz has provided materially different numbers for the amount of his New York legal fees and expenses, and cannot explain the discrepancy.  Stiglitz Dep. at 155-156, Ex. A.  In addition, even if Stiglitz were permitted to testify as to the amount of his New York legal fees and expenses, he may not, as a lay witness, testify as to how that amount compares to the legal fees and expenses he would have

*Capitol Sprinkler Inspection, Inc.*, Case No. 05-2115, 2007 WL 1589495, at *13 (D.D.C. June 1, 2007) (precluding the witnesses from offering their "independent opinions regarding causation, or damages assessments made either after litigation commenced or independent of [their] assessment of damages as a function of [their] job[s]" because the plaintiff failed to abide by Rule 26).

Pursuant to Fed. R. Civ. P. 26, as part of the initial disclosure process, a party is required to identify any witness it may use to present expert testimony.  Moreover, an expert is required to prepare and sign a written report, which must be "detailed and complete," and which must contain, among other things:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the data or other information considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them; [and]
> (iv) the witness's qualifications, including a list of all publications authored in the previous ten years . . . .

*Id;* Advisory Committee Notes to Rule 26.

Fed R. Evid. 702, pertaining to testimony by experts, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Id.*  Accordingly, pursuant to Rule 702, there are two key requirements for expert testimony:  the testimony must be based upon sufficient data and the testimony must be the product of reliable methodologies which have been applied in a reliable manner.  *See Richmond Med. Ctr. for Women,*

---

incurred in the District of Columbia.

527 F.3d at 134 n.1.  The key to reliability is the ability to test or replicate the expert's findings.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993) ("[A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested.").  The proffered expert's testimony, therefore, must be based on "more than subjective belief or unsupported speculation."  *Richmond Med. Ctr. for Women,* 527 F.3d at 134 n.1.  A party cannot circumvent the reliability requirements of Rule 702, simply by proffering expert testimony through a lay witness.  *Rigas*, 490 F.3d at 224.

Here, Stiglitz plainly fails to comply with either the requirements of Fed. R. Civ. P. 26 or Fed. R. Evid. 702.  As an initial matter, the only damages expert that Stiglitz ever has identified is Michael Cragg and, as noted, this Court previously struck Cragg's report and precluded his testimony on damages issues.  At no time has Stiglitz designated himself as a damages expert or provided a signed written report regarding his damages testimony, let alone a report that complies with Fed. R. Civ. P. 26.  Indeed, to date, Stiglitz has asserted four different sets of interrogatory responses that contain four different sets of damages numbers, none of which are verifiable, and many of which Stiglitz has admitted are "estimates."  *See* Plaintiff's Answers to Defendant's First Set of Interrogatories, Ex. E; Plaintiff's Supplemental Response to Defendant's First Set of Interrogatories and Objection to Second Set of Interrogatories, Ex. F; Plaintiff's Revised Supplemental Response to Defendant's First Set of Interrogatories, Ex. G; and Plaintiff's Second Revised Supplemental Answer to Defendant's First Set of Interrogatories, Ex. H.  *See also* Stiglitz Dep., at 66 (admitting amount claimed for enhanced legal fees and costs was only an estimate) 86, 88-89 (admitting amount claimed for "lost opportunity costs" was only an estimate), 107 (admitting that amount claimed for mortgage payment was only an estimate), Ex. A; Aucone Dec., at ¶¶ 3-4, 7, 13, 18, 23-24, Ex. B.

In his various interrogatory responses, Stiglitz has provided no substantive explanation for the differences in his claimed damages amounts. When asked at his most recent deposition, Stiglitz likewise could not explain the discrepancies in his alleged damages amounts, other than his vague general statements that he was just trying to make the amounts "more precise" and/or that he must have "discovered some corrections" or "something that needed to be clarified." Stiglitz Dep. at 9-10, Ex. A. In fact, Stiglitz admitted at his deposition that he could not explain what would appear to be the simplest of all of the discrepancies involving the amounts he claimed he paid his own lawyers and experts for the litigation in New York. Stiglitz Dep. at 155-156, Ex. A (stating "I can't tell you" when asked why there was discrepancy between an initial claimed amount of $863,024.99 for legal fees and costs that Stiglitz paid in New York and his most recent claimed amount of $980,000). Based on Stiglitz's recent deposition testimony, however, it appears that the "operative" set of damages numbers that Stiglitz now is claiming are those found in Stiglitz's most recent interrogatory responses, *i.e.*, the damages amounts set forth in Stiglitz's Second Revised Supplemental Answer to Defendant's First Set of Interrogatories, Ex. H.[5] Stiglitz Dep. at 12, Ex. A.

Other than stating that the data to support each of his claimed damages amounts should exist somewhere "in the record," which Stiglitz admits is "massive," Stiglitz does not specify which data he has relied on to come up with his damages numbers, or which documents provide the data to support his damages calculations.[6] *See e.g.,* Stiglitz Dep. at 74-77 (stating that he is unable to

---

[5] Stiglitz has suggested that the amounts included in his "Second Revised Supplemental Answer to Defendant's First Set of Interrogatories" simply are "corrected" numbers that bring the "base" damages amounts to present value. However, as detailed herein, Stiglitz has provided varying base damages amounts in the multiple prior versions of his interrogatory responses and, in his latest operative interrogatory responses, he fails to specify which base "uncorrected" amounts he uses in his "corrected" calculations. He also fails to specify exactly what interest rates he used to "correct" his damages numbers. As discussed herein, Bank's damages expert has been unable to replicate the amounts included in Stiglitz's Second Revised Supplemental Answer to Defendant's First Set of Interrogatories.
[6] Stiglitz has provided certain statements detailing book royalties that were paid to him during the relevant time period. Nevertheless, in support of his claimed damages for book royalty payments, Stiglitz provided two summary spreadsheets of royalty calculations that include conflicting data. *Compare* Stiglitz Actual Royalties Paid, 2001-2007, JES0015938, attached hereto as Exhibit J *with* Stiglitz Actual Royalties Paid, 2001-2007, JES0015941,

specify which particular document would verify the amount of damages related to enhanced legal fees, but that it should be somewhere in "the record" and stating that he is unable to point to any particular documents relied on "given the massive number" of documents); 96 (noting that the documents to substantiate his damages claim related to the Vanguard account are "all in the underlying case record"); 141 (stating that the documents to substantiate the complex royalties calculations are somewhere in the record), Ex. A.  To the contrary, Stiglitz has provided only copies of summary spreadsheets in support of his damages calculations.  However, these spreadsheets are illegible in their produced format,[7] contain amounts that Stiglitz admitted differ from the amounts claimed in his interrogatory responses and/or contain information that Stiglitz described at his most recent deposition as "scribblings."  *See* JES0015942-15943 (illegible spreadsheets) (attached hereto as Exhibit L); Stiglitz Dep. at 157 (confirming that a spreadsheet he produced to substantiate his damages claims contains "scribblings" that are irrelevant); 162 (stating that the spreadsheet produced to substantiate his damages claims includes "scribblings" to himself that sometimes are "helpful" and sometimes are "confusing"); 162-63 (noting that the document he produced in printed form to substantiate his damages claims "doesn't appear like this on the Excel spreadsheet," that it was an "artifact of something that came out when they printed it," and comparing it to a "finger exercise" or "notes" that "doesn't play any role in feeding into the conclusions"); 172 (confirming the numbers included in the spreadsheet were "scribblings"), Ex. A.  Stiglitz also was unable to remember what certain footnotes inserted in the spreadsheets meant, and could not explain them.  *Id.* at 160-61.

---

attached hereto as Exhibit K.

[7] At Stiglitz's most recent November 30, 2009 deposition, Stiglitz's counsel agreed to provide electronic copies of the illegible spreadsheets.  However, to date, and notwithstanding follow-up requests from Bank's counsel, Bank has yet to receive the electronic versions.

Moreover, as Stiglitz also admitted at deposition, the spreadsheets that he has provided to support his damages claims provide only the calculated *total* amounts of his damages, and do not include the data underlying each of the calculations or the calculations themselves.  Stiglitz Dep. at 159, Ex. A. (confirming that the spreadsheet "summarizes the result" and was not the spreadsheet that showed how he got to the total numbers).  Essentially, therefore, the spreadsheets provide nothing more than a reiteration of the summary amounts that Stiglitz already provided in his interrogatory responses, with the exception that at least some of the amounts included on the spreadsheets inexplicably do not match up with the amounts he claims in his interrogatory responses.  In this regard, Stiglitz's failure to provide Bank with the data and documents underlying his damages calculations effectively stymies Aucone's efforts to replicate these calculations.

Furthermore, in his latest interrogatory responses, which Stiglitz now identifies as providing the operative alleged damages amounts, not only does Stiglitz fail to provide any documentation in support of the data underlying his calculations, but also he fails, in many instances, even to provide his "base" damages number for each of the claimed damages categories.  Instead, Stiglitz provides only "corrected" totals for each damages category, which he describes as being corrected to bring the amounts to "present value."  In most instances, this appears to mean that Stiglitz has added to some unspecified base damages amount prejudgment interest calculated at unilaterally selected and unidentifiable interest rates.[8]  As discussed below, Bank disputes Stiglitz's right to build in automatically to his alleged damages amounts prejudgment interest at whatever rates he chooses.  More problematic, however, is that, in many cases, Stiglitz has not provided his base damages numbers and, moreover, with respect to *all* of his alleged damages, he has not provided the documents he purportedly relied on to calculate the claimed amounts and he admits he cannot now

---

[8] Stiglitz also "corrects" future payments by discounting those payments to present value.

identify those documents.  Accordingly, there simply is no way for Bank's damages expert even to attempt to verify Stiglitz's calculations.  Aucone Dec., at ¶¶ 3, 6, 13-18, 20-24, Ex. B.

In sum, Stiglitz now has produced four sets of contradictory interrogatory responses that allege different damages amounts, and he has provided no substantive explanation for the discrepancies.  Other than stating that supporting documentation should be somewhere "in the record," Stiglitz never has identified any documents that provide the data underlying his damages calculations, nor has he ever explained his calculations in any detail.  Instead, Stiglitz has provided illegible summary charts that provide total damages amounts that conflict with the amounts provided in his interrogatory responses, that he cannot explain fully, and that admittedly include multiple irrelevant "scribblings."  Accordingly, there is absolutely no way for Bank's damages expert to attempt to replicate Stiglitz's calculations to verify Stiglitz's claims.

Because Stiglitz has failed to comply with both Fed. R. Civ. P. 26 and Fed R. Evid. 702, this Court should preclude him from presenting any evidence in support of the damages claims set forth in his interrogatory responses.

### III.  STIGLITZ'S SO CALLED "LOST OPPORTUNITY" DAMAGES ARE SPECULATIVE AND SHOULD BE PRECLUDED

Even if the Court allows Stiglitz to present certain evidence on his damages claims, the Court should preclude Stiglitz from offering evidence of his so-called "lost opportunity" damages, which entirely are speculative.

Stiglitz claims that he is entitled to recoup his lost "opportunity costs" for time he spent on the New York litigation.  In his various interrogatory responses, this amount has varied from $400,000 to $600,000, however, his most recent interrogatory responses specify that he now is claiming $500,000 for this damages category, which equates to 500 hours of time he says he spent on the litigation, multiplied by $1,000, which he claims was his standard hourly rate.

As a general matter, D.C. law provides that "[a]ctual, not speculative, damages is required to succeed on a legal malpractice claim." *In re Estate of Curseen*, 890 A.2d 191, 194 n.3 (D.C. 2006); *see also Zoerb v. Barton Protective Services*, 851 A.2d 465, 470 (D.C. 2004) ("[A] jury verdict may not rest on speculation as to damages.") (quoting *Pratt v. Univ. of the District of Columbia*, 691 A.2d 158, 159 (D.C. 1997)); *Poole v. Lowe*, 615 A.2d 589, 593 (D.C. 1992) ("[T]here must at least have been injury not dependent upon a contingent or uncertain event; for then the fact of damage would be speculative and a cause of action would not have accrued.") (internal quotation marks omitted). Accordingly, even assuming that lost income is an appropriate element of damages in the legal malpractice context, a plaintiff must be able to describe precisely and substantiate his damages. *See Hildreth Consulting Engineers, P.C. v. Larry E. Knight, Inc.*, 801 A.2d 967, 972 (D.C. 2002) ("Of course, '[d]amages may not be based on mere speculation or guesswork. The evidence offered must form an adequate basis for a reasoned judgment.' And damage calculations must be sufficiently detailed to support an award.") (quoting *Vector Realty Group, Inc. v. 711 Fourteenth St., Inc.*, 659 A.2d 230, 234 (D.C.1994)); *In re Estate of Curseen*, 890 A.2d at 194 n.3.

Here, Stiglitz has provided nothing more than an estimate of the hours he spent on the New York litigation, multiplied by his hourly rate. As an initial matter, the time Stiglitz claims he spent on the litigation has varied, without explanation, from 400 to 600 hours. In light of Stiglitz's claimed hourly rate of $1,000, this "range" has substantial practical significance in that it could mean the difference of multiple hundreds of thousands of dollars. Nevertheless, without providing any basis for doing so, Stiglitz flippantly picked the midpoint between those numbers, which Stiglitz has admitted is nothing more than an estimate. Stiglitz Dep., at 86, Ex. A. Moreover, with regard to specifying the 500 hours worth of opportunities that he lost based on the time he spent on the litigation, Stiglitz has provided only general responses regarding what he "could" have been doing

for those 500 hours.  For example, Stiglitz stated that he "could" have spent more time on an open-ended Microsoft consulting project, "could" have spent more time writing, or "could" have given more speeches.  *Id.* at 89-90.  Stiglitz has not identified *any* specific opportunities that he lost because of his commitments in the New York litigation.  *See id.* at 92 (admitting there was nothing specific in terms of jobs or speeches that he could point to that he was precluded from doing because he was occupied with the litigation).  Moreover, Stiglitz has produced *absolutely no* documentation in support of either (1) the time he spent on the New York litigation; or (2) the specific opportunities he lost because of the time he spent on the litigation.

Accordingly, Stiglitz's "lost opportunity" damage are unsubstantiated, clearly based on guesswork, and highly speculative, at best, and the Court should preclude Stiglitz from presenting evidence of these damages.  *See In re Estate of Curseen*, 890 A.2d at 194 n.3; *Zoerb*, 851 A.2d at 470; *Hildreth Consulting Engineers, P.C.*, 801 A.2d at 972.

## IV.   STIGLITZ CANNOT AUTOMATICALLY ADD IN PREJUDGMENT INTEREST AT UNSPECIFIED RATES TO HIS DAMAGES CALCULATIONS

Even if the Court allows Stiglitz to present certain evidence on his damages claims, the Court should preclude Stiglitz from presenting damages amounts that automatically include prejudgment interest calculated at unspecified rates.

According to D.C. law, under certain circumstances, plaintiffs may be entitled to prejudgment interest as part of an award of damages.  *See, e.g.,* D.C. Code § 15-108 (2001); *Fed. Mktg. Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 532 (D.C. 2003).  Where an award of prejudgment interest is permissible, a plaintiff must claim and identify such amounts, and the court and/or fact finder must allow such amounts.  *Fed. Mktg. Co.*, 823 A.2d at 532; *Schwartz v. Swartz*, 723 A.2d 841, 844 (D.C.1998).

17

Stiglitz effectively has eliminated the court's or jury's discretion to award prejudgment interest by providing only "corrected" totals for each damages category, which, according to him, bring the amounts to present value.  For past amounts incurred, these "corrected" totals automatically include prejudgment interest at unspecified rates.[9]  Because Stiglitz has failed to provide the base damages numbers from which interest has been calculated, it would be extremely difficult and unduly burdensome for Bank's damages expert even to attempt to replicate Stiglitz's calculations.  Moreover, prejudgment interest on an unliquidated debt is not an element of damages that Stiglitz can assume he is entitled to recover.  Stiglitz must claim and identify amounts he seeks which constitute prejudgment interest, present evidence as to why he is entitled to recover such interest, and then allow the court or jury to decide whether an award of such prejudgment is necessary, and, if so, what interest rate should be applied.  *See District of Columbia v. Pierce Associates, Inc.*, 527 A.2d 306, 311 (D.C. 1987).  For these reasons, assuming the Court allows Stiglitz to present damages evidence, at a minimum the Court should preclude Stiglitz from presenting only "corrected" damages amounts and order Stiglitz to present specific and verifiable base damages amounts.

## V.  <u>CONCLUSION</u>

For the reasons discussed herein, the Court should preclude Stiglitz from presenting evidence on the damages claims as set forth in his interrogatory responses.  A proposed Order is attached with this Motion.

Respectfully submitted,

_____/s/ Richard A. Simpson_____

---

[9] Stiglitz also has corrected future payments to present day values by applying a discount rate.  Although this type of correction is proper, Stiglitz has failed to identify the exact discount rates he has applied and Bank's expert has been unable to replicate the calculations.

Richard A. Simpson, D.C. Bar No. 411893
WILEY REIN, LLP
1776 K Street, N.W.
Washington, D.C.  20006
Phone: (202) 719-7000
Fax: (202) 719-7049
Email:  rsimpson@wileyrein.com


*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion was filed electronically with the Court

on January 19, 2010, and that, on January 19, 2010, I mailed a copy of the foregoing documents by

first class mail to the following:


David G. Whitworth
Lisa M. Goldblatt
WHITWORTH & TRUNNELL, P.A.
2101 Defense Highway
Crofton, MD 21114-2401
Phone: (301) 261-0035
Fax: (301) 251-0114
Email: dwhitworth@wstlaw.com

Linda M. Hamilton
LAW OFFICES OF LINDA M. HAMILTON
1300 Mercantile Lane
Suite 149
Largo, MD 20774
Phone: (301) 925-7833
Fax: (301) 925-8368
Email: pglawi@aol.com


      /s/ Richard A. Simpson
      Richard A. Simpson
      *Attorney for Defendant*