**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| JOSEPH E. STIGLITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1826 RJL |
| | ) | |
| RITA M. BANK, | ) | |
| | ) | |
| Defendant. | ) | |

---

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE**
**PLAINTIFF'S PURPORTED DAMAGES EVIDENCE**

Plaintiff Joseph E. Stiglitz's ("Stiglitz") opposition to Defendant Rita M. Bank's ("Bank") Motion to Preclude Plaintiff's Purported Damages Evidence confirms that Stiglitz's purported damages evidence must be excluded for several independently sufficient reasons. First, Stiglitz is not some sort of "hybrid fact/expert" witness who is exempt from the usual procedural requirements applicable to expert witnesses generally. Stiglitz failed to satisfy those requirements and his testimony therefore must be excluded. Second, Stiglitz is not qualified as an expert in the fields in which he proffers expert testimony. Finally, putting aside all of the other issues, Stiglitz's damages testimony is not admissible under Rule 702 because it is not "based upon sufficient facts or data," is not the "product of reliable principles and methods," and Stiglitz has not "applied [those] principles and methods reliably to the facts of [this] case." Indeed, Stiglitz's damages analysis cannot be replicated by another expert because, among other things, he cannot identify the documents on which he relied in making his calculations, to the extent he even made specific calculations rather than simply estimating amounts that should have been verified.

Moreover, in all events, Stiglitz's testimony regarding his "lost opportunity damages" and purported prejudgment interest evidence must be excluded.  As to the former, Stiglitz makes no meaningful response to Bank's showing that such damages are far too speculative to be recoverable.  As to the later, Stiglitz relies solely on a single inapposite case; there is no support for Stiglitz's attempt to build present value calculations into undisclosed base damage amounts.

## I.   STIGLITZ IS NOT A "HYBRID FACT/EXPERT" WITNESS

Stiglitz fails to demonstrate that his proposed "expert" testimony should be allowed under the limited "hybrid fact/expert" rubric.  Although courts have recognized a limited exception for certain fact witnesses to testify in an expert capacity about facts they learned and analyses they performed pre-litigation  based on their own expertise, *see, e.g., Kirkham v. Societe Air France*, 236 F.R.D. 9, 11 (D.D.C. 2006), Stiglitz is not such a witness.

Stiglitz's effort to liken himself to a treating physician fundamentally misses the point – Stiglitz is the equivalent of the patient, not the doctor.  His role in the divorce proceedings was as a client.  Stiglitz recognized that he needed to retain others with relevant expertise in the underlying action to value assets and evaluate potential divisions of assets with his ex-wife.  He retained an accountant, Michael Cragg, of Cambridge Finance Partners, to provide income analysis and expert testimony.  *See* Mot. To Preclude, Ex. D.  Stiglitz also retained Ronald Klein, an accountant, as another expert on accounting issues for the divorce proceeding.  *See id.*, Ex. A (11/30/09 Stiglitz Dep. Tr.) at 155.  He further hired accountants from Kroll as valuation experts.  *Id.*  Stiglitz paid these experts tens of thousands of dollars for their expertise.  *See id.,* Ex. E at 4.  In short, Stiglitz was not the person responsible for accounting, valuation, and damages issues in the underlying divorce proceedings.  He hired a cadre of professionals with relevant expertise to handle these

issues.  As such, he cannot now present himself as a "hybrid fact/expert" witness on the very issues

that he hired different people to handle in the underlying matter.

## II.   EVEN IF STIGLITZ WERE A HYBRID FACT/EXPERT WITNESS, HIS OPINION TESTIMONY WOULD BE BARRED BECAUSE HE FAILED TO COMPLY WITH RULE 26

Stiglitz concedes that he never produced an expert report, as required by Rule 26(a)(2)(B) of

the Federal Rules of Civil Procedure.  To the extent that Stiglitz claims that he timely designated

himself as an expert, he abandoned that position by failing timely to produce an expert report.

Contrary to Stiglitz's argument, a "hybrid fact/expert" witness is not exempt from the

requirements of Rule 26; whether such a witness must submit an expert report depends on the nature

and scope of the witness's proposed testimony.  *See, e.g., Bynum v. MVM, Inc.*, 241 F.R.D. 52

(D.D.C. 2007); *Kirkham*, 236 F.R.D. at 11.  In the treating physician example, even where the

physician qualifies as a hybrid witness, any expert testimony is limited to what the doctor has seen,

her diagnosis, and the treatment she prescribed.  *Kirkham,* 236 F.R.D. at 11.  Unless the doctor is

properly identified as an expert and has produced an expert report, she may not testify as to expert

opinion as to causation, foreseeability, prognosis, or permanency.  *Id.*  Thus, in *Bynum*, the court

precluded the physician who was offered as a hybrid witness from testifying about the patient's

current condition, prognosis, causation, or permanency, or about any "forward-looking speculation

or other conclusion reached with the benefit of hindsight, and after the underlying events that gave

rise to this lawsuit."  *Bynum*, 241 F.R.D. at 54; *see also St. Paul Mercury Ins. Co. v. Capitol

Sprinkler Co*., 246 F.R.D. 56 (D.D.C. 2007) (insurance claim handler qualified as a hybrid witness

but, because no expert report had been produced, the court precluded the witness from testifying as

to causation of the loss or damages assessments made after commencement of the litigation or

independent of his job as an insurance adjuster).

Stiglitz seeks to introduce exactly the sort of expert testimony based upon conclusions reached with the benefit of hindsight that is expressly prohibited.  Stiglitz's alternative calculations of earnings, "enhanced" earnings, book royalties including future royalties, investment account(s), pensions, attorneys' fees and costs in the New York litigation, and "lost opportunity costs" require comparisons of theoretical alternatives between the New York settlement and either an offer that his then-spouse would have taken or the hypothetical outcome of a trial in DC.  Regardless of the factual testimony that Stiglitz may have relevant to his role as the client, the necessary "expert" calculations concerning the hypothetical, speculative alternatives, reached with the benefit of hindsight, cannot be presented at trial because Stiglitz failed to produce an expert report or comply with the other requisite expert disclosures.[1]

### III.  BANK DID NOT WAIVE HER RIGHT TO SEEK TO PRECLUDE STIGLITZ'S PURPORTED DAMAGES EVIDENCE

Relying on a case in which a party delayed challenging the sufficiency of an expert report, Stiglitz argues that Bank waived her right to contest Stiglitz's failure to comply with the procedural requirements of Rule 26 by waiting too long to file this motion.  This argument is meritless.

First, Stiglitz never produced any expert report at all.  Bank did not delay challenging the sufficiency of his report; there was no report to question.

Second, contrary to Stiglitz's suggestion that he was surprised by Bank's contention that his purported damages testimony should be excluded, Bank disclosed very early on that she contended that Stiglitz should not be permitted to present the purported damages testimony outlined in his

---

[1] Stiglitz suggests that a party's answers to interrogatories may be used in lieu of an expert report.  *See* Opp. at 9. The Federal Rules of Civil Procedure do not support Stiglitz's cavalier approach.  Pursuant to Fed. R. Civ. P. 26, an expert is required to prepare and sign a written report, which must be "detailed and complete," and which must contain, requisite statements of opinion, supporting data, exhibits, and expert qualifications.  *Id;* Advisory Committee Notes to Rule 26.  Courts reject the argument that interrogatory answers can substitute in lieu of an expert report.  *See, e.g.*, *Smith v. State Farm Fire & Cas. Co.*, 164 F.R.D. 49, 54 (S.D. W.Va. 1995); *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 679 (D. Kan. 1995).

interrogatory answers because, among other things, he was not qualified to give expert testimony

and had not complied with Rule 26.  Specifically, Robert Aucone, Bank's damages expert, stated as

follows on the first page of his report dated February 9, *2007*:

> In my opinion, the calculation of monetary damages, if any, should have been
> determined by an individual recognized as an expert in calculating such damages.
> To the best of my knowledge, Dr. Stiglitz has not been named as an expert in this
> regard, and the determination of damages, if any, is beyond the scope of a lay
> witness.  Further, the damages as expressed by Dr. Stiglitz do not meet the minimum
> standards for determination of damages.   Specifically, little or no specific
> documentation has been offered by Dr. Stiglitz to support the amounts, no
> calculations have been provided by Dr. Stiglitz which could be checked for accuracy
> and reasonableness, and most amounts are, at best, estimates and are for unusually
> large, even dollar amounts.

Expert Report of Robert F. Aucone, dated February 9, 2007 (copy annexed as Exhibit 1 hereto).  Mr.

Aucone added, at page 2 of his report, that Stiglitz's opinions "should be subject to the same

standards as an expert witness as defined in Rule 702 and elsewhere," and that Rule 26 requires an

expert to produce a signed, written report with full details.  Thus, Stiglitz has been on notice of

Bank's position regarding his purported damages evidence since *early 2007*.  Indeed, after Bank

pointed out this deficiency, Stiglitz tried to cure it by designating Michael Cragg as an expert, albeit

after waiting far too long.

Third, Bank filed this motion less than two months after Stiglitz finally submitted to

deposition regarding his final set of interrogatory answers.  In this regard, Stiglitz has submitted four

sets of materially different and sometimes conflicting interrogatory answers regarding his purported

damages theories, with the final answers not being served until May 1, 2009.  *See* Mot. To Preclude,

Exs. E, F, G & H.  On November 30, 2009, following multiple requests for documents supporting

Stiglitz's damages claims and scheduling difficulties, Stiglitz finally made himself available for

deposition.  That deposition showed how Stiglitz intended to present not only factual information

about his damages claim, such as the attorneys' fees incurred, but also what is obviously "expert"

testimony concerning the proper methodology for alternative damages models.  Stiglitz's tactic in proffering himself as an "expert" is a "Hail Mary" effort after this Court properly precluded Stiglitz's previous proposed damages expert, Michael Cragg, based on Stiglitz's non-compliance with the applicable Rules and this Court's deadlines.  Stiglitz's even more untimely and unsupported effort to name himself as a replacement for his barred expert cannot cure his earlier failure and improperly attempts to thwart this Court's Order.[2]

## IV.   STIGLITZ'S PROPOSED TESTIMONY IS EXPERT TESTIMONY AND HE IS NOT QUALIFIED TO ACT AS AN EXPERT

Stiglitz's proposed damages testimony is inadmissible not only because of his procedural defaults but also because Stiglitz is not qualified as an expert to give such testimony.  As a threshold matter, there is not even colorable merit to Stiglitz's assertion that maybe he is not offering expert testimony at all, and instead he is only performing "simple addition and subtraction" which can be performed "by people of all walks of life" and "does not require the skills of an expert."  Opp. at 12-13.  As Bank established in the Motion to Preclude, the "alternative" damages theories that Stiglitz seeks to introduce involve different assets measured at different points in time, and require different projections as to the value of income to be received in the future, such as royalties.  *See* Mot. To Preclude at 2.  These are not simple arithmetic exercises, as Stiglitz now argues, because the complex comparisons of the economic effect of alternative settlement and litigation outcomes constitute expert testimony that falls within the scope of Rule 702.  So too do Stiglitz's projections as to future royalties likely to be earned.  Stiglitz is offering expert testimony, plain and simple.

---

[2] There were extensive ongoing discussions between counsel for the parties regarding whether Stiglitz's purported damages evidence was proper during the course of the long process during which Stiglitz three times amended his interrogatory answers regarding damages and three times was deposed.  Both sides well knew the other side's position and arguments.  These repeated efforts to address the issue between counsel complies with the meet and confer obligation of Local Rule 7(m).  Notably, Stiglitz does not dispute that these meet and confer efforts, in fact, took place, but rather asserts only that Bank did not file a Rule 7(m) certification. Opp. at 8.  Counsel for Bank apologizes for inadvertently neglecting to file a certification.  However, Bank complied with the substance of Rule

Stiglitz is a brilliant economist.  He is not, however, qualified to give the expert opinions regarding damages calculations offered here, let alone to make projections regarding topics such as book royalties.  *See* Mot. To Preclude at 2-3.  Stiglitz's lengthy recitation of his economics-related accomplishments is noticeably absent of any experience in estimating damages, much less the specific categories of damages at issue in this litigation.  In the same way that a dermatologist is not an expert on heart disease, even though both attended medical school, Stiglitz's accomplishments as an economist do not, by themselves, qualify him as a damages expert.  *Richmond Med. Ctr. For Women v. Herring*, 527 F.3d 128, 134 n.1 (4th Cir. 2008) (impressive qualifications alone are not sufficient; proposed expert " must also have 'sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case."); *United States v. Eiland*, Case No. 04-379, 2006 WL 2844921, *3, *5, *6 (D.D.C. Oct. 2, 2006) ("in order to qualify as an expert and offer expert opinion testimony . . . , the witness must possess 'knowledge, skill, experience, training, or education' with respect to the subject about which he is testifying" and such testimony "will be limited to the scope of such experience, and should not stray therefrom").

## V.    STIGLITZ'S PURPORTED DAMAGES EVIDENCE DOES NOT COME CLOSE TO MEETING THE REQUIREMENTS OF RULE 702

In the end, even if all of the multiple deficiencies detailed above could somehow be overcome, Stiglitz's testimony is not admissible under Rule 702, Federal Rules of Evidence, because it is not "based upon sufficient facts or data," is not the "product of reliable principles and methods," and Stiglitz has not "applied [those] principles and methods reliably to the facts of [this] case."  As detailed in the Motion to Preclude (Mot. at 12-15) and the supporting Declaration of Robert Aucone

---

7(m) by engaging in extensive discussions with opposing counsel regarding the merits of the arguments set forth in this motion.

(Exhibit B to that motion), Stiglitz has produced four sets of contradictory interrogatory responses that allege different damage amounts, with no substantive explanation for the discrepancies.

In many instances, Stiglitz simply estimated amounts that could have been verified. In other instances, Stiglitz testified that he relied on specific documents as source documents for his calculations, but did not segregate or otherwise make a record if the specific documents upon which he relied. This fundamental problem with Stiglitz's testimony cannot be answered by saying the documents were produced in discovery.[3] For good reason, the Federal Rules of Civil Procedure do not allow "an opportunity to review and inspect every non-privileged document in his counsel's possession" (*see* Opp. at 18) to substitute for specifically identifying the documents relied upon by an expert to formulate an opinion. *See Smith v. Union Pac. R.R. Co.*, 168 F.R.D. 626, 629 (N.D. Ill. 1996); *State Farm*, 164 F.R.D. at 54; *Jefferson v. Davis*, 131 F.R.D. 522, 527 (N.D. Ill. 1990). The point is that an expert must identify the documents on which he relies, so that (among other things) another expert can replicate and verify the work.

Nothing illustrates better the downright sloppiness with which Stiglitz approached preparation of his damages analysis than his calculation of the attorneys' fees and costs he incurred in the New York litigation. Unlike the rest of Stiglitz's damages testimony, computation of attorneys' fees and costs actually incurred and paid is a topic on which a lay person likely could testify. But, instead of compiling the relevant bills and checks, Stiglitz had his lawyers add up the bills and give him the number. Stiglitz therefore cannot verify the amount himself, and indeed cannot explain a nearly $120,000 discrepancy in the amount he initially claimed ($863,024.99) and the amount he now claims ($980,000, which Stiglitz "expects" is "a little bit rounded") Mot. To

---

3  Stiglitz does not even seem sure that the documents in his counsel's possession are the same ones used to prepare his calculations because he carefully asserts only that the documents *in counsel's possession* were made available – not necessarily that the documents *he relied upon* were made available. *See* Opp. at 18.

Preclude, Ex. A (11/30/09 Stiglitz Dep. Tr.) at 65-66.  Likewise, even to the day this Reply Memorandum is being filed, Stiglitz has not produced an electronic version of the spreadsheet on which he made his calculations.  Bank's damages expert explains in his Declaration annexed to Bank's Motion to Preclude that he cannot replicate Stiglitz's calculations, for multiple reasons.  *See* Mot. To Preclude, Ex. B. (Aucone Dec.) at ¶¶ 3, 6, 9, 13-18.

The law is clear that proposed expert testimony should be disallowed where it is "unclear what facts or data [the expert] . . . relied upon and his methodology is unreliable." *Minebea Co. v. Papst*, Case No. 97-0590, 2005 WL 1459704, at *3 (D.D.C. June 21, 2005).  Here, from beginning to end, Stiglitz's damages testimony amounts to nothing more than quick and dirty (and self-serving) estimates, speculation and wishful thinking, not careful calculations based on identified source documents such that another expert can verify the work and evaluate the methodology.  While Bank has deposed Stiglitz three times, including most recently after Stiglitz once again changed his damages claims, Stiglitz frustrated Bank's ability to test any opinions or conclusions by refusing to produce the source documents.  *See* Mot. To Preclude, Ex. B (Aucone Dec.) at ¶¶ 3, 6, 13-18, 20-24.  Stiglitz's cries of injustice if he cannot testify as an "expert" ring hollow when Stiglitz's own failure to produce an expert report and gamesmanship (or inexcusable sloppiness) in refusing to identify the source documents for his calculations are the reasons why his expert testimony should be precluded.

## VI.    STIGLITZ'S SO-CALLED "LOST OPPORTUNITY" DAMAGES ARE SPECULATIVE AND SHOULD BE PRECLUDED

Bank's Motion to Preclude demonstrates that Stiglitz's purported "lost opportunity" damages are entirely speculative: Stiglitz cannot point to a single specific lost opportunity.  Mot. To Preclude at 15-17.  Stiglitz neither disputes the fact that his claimed lost "opportunity costs" for time he spent on the New York litigation vary widely in his various interrogatory responses, nor explains how he

could recover such amounts under D.C. law, which provides that "[a]ctual, not speculative, damages is required to succeed on a legal malpractice claim." *In re Estate of Curseen*, 890 A.2d 191, 194 n.3 (D.C. 2006).[4]

## VII.   STIGLITZ FAILS TO SHOW THAT HE MAY AUTOMATICALLY ADD IN PREJUDGMENT INTEREST IN THE GUISE OF PRESENT VALUE COMPUTATIONS

Stiglitz relies upon a single case in support of his argument for including prejudgment interest, in the guise of undefined present value computations, in his damage computations.  Opp. at 18 (citing *Schwartz v. Schwartz,* 723 A.2d 841 (D.C. 1998)).  *Schwartz* does not hold, as Stiglitz suggests, that a plaintiff is automatically allowed to present the issue of prejudgment interest the jury.  To the contrary, the decision--which construes DC Code § 15-109, which applies to claims for breach of contract and therefore is not applicable here in any event--found that there was "nothing in the record indicating that prejudgment interest was obligatory."  Stiglitz fails to meet Bank's argument that Stiglitz cannot present damages amounts that automatically include prejudgment interest calculated at unspecified rates where he failed to provide the base damages numbers from which interest has been calculated, it would be extremely difficult and unduly burdensome for Bank's damages expert even to attempt to replicate Stiglitz's calculations, and thus he effectively prevents the court or jury from deciding whether an award of such prejudgment is necessary, and, if so, what interest rate should be applied.  *See District of Columbia v. Pierce Assoc., Inc.*, 527 A.2d 306, 311 (D.C. 1987).  Thus, assuming the Court allows Stiglitz to present damages evidence, at a minimum the Court should preclude Stiglitz from presenting only "corrected" damages amounts and order Stiglitz to present specific and verifiable base damages amounts.

---

4 *See also Zoerb v. Barton Protective Services*, 851 A.2d 465, 470 (D.C. 2004) ("[A] jury verdict may not rest on speculation as to damages.") (quoting *Pratt v. Univ. of the District of Columbia*, 691 A.2d 158, 159 (D.C. 1997)); *Poole v. Lowe*, 615 A.2d 589, 593 (D.C. 1992) ("[T]here must at least have been injury not dependent upon a contingent or uncertain event; for then the fact of damage would be speculative and a cause of action would not have accrued.")

## <u>CONCLUSION</u>

For the reasons discussed herein, the Court should preclude Stiglitz from presenting evidence on the damages claims as set forth in his interrogatory responses.

Respectfully submitted,

/s/ Richard A. Simpson
Richard A. Simpson, D.C. Bar No. 411893
Mary E. Borja, D.C. Bar No. 442462
WILEY REIN, LLP
1776 K Street, N.W.
Washington, D.C.  20006
Phone: (202) 719-7000
Fax: (202) 719-7049
Email:  rsimpson@wileyrein.com
            mborja@wileyrein.com

*Attorneys for Defendant*

(internal quotation marks omitted).

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2010 a copy of the foregoing Reply was served electronically through the United States District Court for the District of Columbia's ECF system upon the following:

David G. Whitworth
Wes P. Henderson
WHITWORTH & TRUNNELL, P.A.
2101 Defense Highway
Crofton, MD 21114-2401
Phone: (301) 261-0035
Fax: (301) 251-0114
Email: dwhitworth@wstlaw.com

Linda M. Hamilton
LAW OFFICES OF LINDA M. HAMILTON
1300 Mercantile Lane
Suite 149
Largo, MD 20774
Phone: (301) 925-7833
Fax: (301) 925-8368
Email: pglawi@aol.com

_____/s/ Richard A. Simpson_____
Richard A. Simpson
*Attorney for Defendant*

13121985.2