**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOSEPH E. STIGLITZ,   ) | |
| )  | |
| Plaintiff,   ) | |
| )  | |
| v.   ) | Civil Action No. 05-1826 RJL |
| )  | |
| RITA M. BANK,   ) | |
| )  | |
| Defendant.   ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE
TO REAFFIRM THE COURT'S ORDER PRECLUDING PLAINTIFF'S PURPORTED
EVIDENCE OF DAMAGES CLAIMS THAT REQUIRE TESTIMONY
BY A DAMAGES EXPERT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     OVERVIEW OF STIGLITZ'S DAMAGES CLAIMS ..................................................... 3

III.    LAY WITNESSES MAY NOT OFFER OPINIONS BASED ON SPECIALIZED
        KNOWLEDGE ........................................................................................................... 4

IV.     NOTHING HAS CHANGED TO NEGATE THE NEED FOR EXPERT
        TESTIMONY ON DAMAGES ..................................................................................... 6

V.      THE OUTCOMES STIGLITZ SEEKS TO COMPARE ARE COMPLICATED
        AND DIFFERENTLY STRUCTURED, AND EXPERT TESTIMONY IS
        NEEDED TO MAKE ANY MEANINGFUL COMPARISONS BETWEEN
        THEM ......................................................................................................................... 8

VI.     STIGLITZ'S DAMAGES CLAIMS DO NOT SHOW HOW THE NET
        ECONOMIC REALITY ACHIEVED UNDER THE NEW YORK
        SETTLEMENT WAS LESS FAVORABLE AND ARE RIFE WITH ERRORS .......... 12

VII.    CONCLUSION .......................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Armenian Assembly of America v. Cafesjian,*
 746 F. Supp. 2d 55 (D.D.C. 2010) ...............................................................5

*Doddy v. Oxy USA, Inc.*
 101 F.3d 448 (5th Cir. 1996) .....................................................................4

*EEOC v. Lennar Homes of Arizona, Inc.,*
 No. 03-1827, 2006 WL 1734594 (D. Ariz. June 23, 2006) ...................................6, 12

*Knight v. Georgetown University,*
 725 A.2d 472 (D.C. 1999) .........................................................................5

*LifeWise Master Funding v. Telebank,*
 374 F.3d 917 (10th Cir. 2004) ...........................................................5, 6, 12

*Minebea Co. v. Papst,*
 No. 97-0590, 2005 WL 1459704 (D.D.C. June 21, 2005)...........................................5

*United States v. Eiland,*
 No. 04-379, 2006 WL 2844921 (D.D.C. Oct. 2, 2006) ................................................5

*United States v. Garcia,*
 413 F.3d 201 (2d Cir. 2005) .................................................................4, 5

*United States v. Rigas,*
 490 F.3d 208 (2d Cir. 2007) .......................................................................5

*United States v. Smith,*
 No. 09-3119, 2011 WL 1437378 (D.C. Cir. Apr. 15, 2011)....................................5, 9

*United States v. Wilson,*
 605 F.3d 985 (D.C. Cir. 2010) ...........................................................4, 7, 9

## FEDERAL RULES

Fed. R. Evid. 701 ..............................................................................4, 5

Fed. R. Evid. 702 ..............................................................................4, 5

Defendant Rita M. Bank ("Bank") respectfully submits this memorandum of law in support of her motion in limine to reaffirm the Court's Order precluding Plaintiff Joseph E. Stiglitz ("Stiglitz") from presenting evidence on his damages claims that require the testimony of a damages expert.[1]

## I.   **INTRODUCTION**

More than three years ago, this Court granted Bank's motion to strike the expert report of Stiglitz's proposed damages expert, Michael Cragg.  Stiglitz then attempted to introduce the very same damages evidence addressed in Cragg's report by acting as his own damages expert.  The Court rejected this attempt to circumvent its prior Order, granted Bank's motion to preclude Stiglitz from offering his purported damages evidence, and denied Stiglitz's motion for reconsideration of the Court's ruling.  At the parties' pre-trial conference with the Court on April 21, 2011, the Court reaffirmed that it would not revisit its decision that Stiglitz is precluded from acting as his own damages expert and from otherwise offering expert testimony.  Accordingly, the sole issue for the Court with respect to this motion is whether the damages evidence that Stiglitz seeks to introduce (and must introduce to prove his damages claims) constitutes expert testimony.[2]

In a last-ditch effort to present the very same expert testimony on damages that this Court has determined is inadmissible, Stiglitz now takes the position that circumstances have changed with the passage of time and that, although expert testimony on damages previously was necessary, it no longer is required.  This assertion is wholly indefensible as a matter of both fact and law.

---

[1] With the exception of Stiglitz's claim for "lost opportunity" damages, which Bank addresses in a separate motion in limine, as explained herein, all of Stiglitz's damages claims require the testimony of a damages expert.

[2] It is noteworthy in this regard that  Stiglitz's Amended Pretrial Statement (Docket No. 74) the ("Pretrial Statement") identifies Stiglitz as an expert.  *See* Pretrial Statement, at 3 (including an asterisk next to Stiglitz's name, denoting him as an expert).

As Bank's damages expert Robert Aucone ("Aucone") has explained, the fact that Stiglitz now has made certain payments in connection with his divorce settlement in New York (the "New York Settlement" or the "Stipulation of Settlement") may simplify one small aspect of his damages claim because he does not have to project the amount of those particular payments.  Stiglitz still, however, must project other future payments.  More importantly, absolutely nothing has changed with respect to the complex comparisons that Stiglitz must make to establish his damages, which the Court previously concluded require expert testimony.  In particular, Stiglitz must show that the overall economic effect of the New York Settlement is less favorable than the overall economic effect of the hypothetical results in the District of Columbia that Stiglitz says he would have attained but for Bank's alleged malpractice.

These essential comparisons continue to be inherently difficult and require specialized expertise beyond the capacity of a lay person because the hypothetical District of Columbia results are structured quite differently from the New York Settlement and require the measurement of different assets at different points in time.  Thus, the comparisons Stiglitz must make to prove damages are not "apples to apples"; they are "apples to oranges" comparisons that require complex calculations in order to perform any meaningful analysis whatsoever.  The fact that Stiglitz has made certain payments in connection with the New York Settlement does not alter the complexity of the essential comparisons, which require far more than completing simple arithmetic.

Bank's damages expert confirms that Stiglitz's Pretrial Statement, both in terms of what it includes and what it conveniently ignores, only further highlights why expert testimony on damages is absolutely necessary.  In the Pretrial Statement, which provides the fifth different version of Stiglitz's purported damages claims, Stiglitz simply ignores terms of the New York Settlement and the hypothetical District of Columbia results that are not easily comparable, and makes no attempt

(as is required) to show how the overall net economic effect of the New York Settlement was less favorable than the overall net economic effect of the hypothetical outcomes in the District of Columba.  In multiple instances, Stiglitz appears simply to add up amounts he paid under the New York Settlement and claim all of those amounts as damages, without any regard to the terms of the District of Columbia hypothetical outcomes and the set-off calculations that are required to account for payment obligations under the hypothetical outcomes that were not included in the New York Settlement.  Moreover, the damages numbers that Stiglitz presents are fraught with mathematical errors, do not properly account for tax consequences, do not apply proper discount rates and fail to match up with supporting documentation.

Before the Court entered its Order precluding him from acting as an expert, Stiglitz admitted that his testimony regarding his alleged damages constituted expert testimony.  As explained in detail below, nothing has changed to negate the need for expert damages testimony, which is required to make any meaningful comparison between the New York Settlement and the hypothetical District of Columbia results.  This Court's previous rulings make clear that Stiglitz may not offer expert testimony with respect to damages.  Accordingly, the Court should reaffirm its Order precluding Stiglitz from offering evidence of his damages claims.

## II.   OVERVIEW OF STIGLITZ'S DAMAGES CLAIMS

In this legal malpractice case, Stiglitz alleges that Bank committed various negligent acts in connection with her representation of Stiglitz as his divorce attorney.  Stiglitz has asserted two alternative theories to show how he purportedly was damaged as a result of Bank's alleged malpractice, both of which involve Stiglitz's attempt to compare the actual result he received in the New York Settlement with what he contends "would" have happened absent the alleged malpractice.  Specifically, Stiglitz attempts to:  (1) compare the New York Settlement with a May 2002

Settlement offer made by Jane Hannaway, his ex-wife (the " 2002 Hannaway Offer"); and, alternatively, (2) compare the New York Settlement with the hypothetical outcome of a trial in the District of Columbia, as measured by a July 2002 Settlement offer that Stiglitz made to Hannaway (the "July 2002 Offer").[3]  Under each of these damages theories, Stiglitz asserts claims for damages spanning multiple categories, including:  (1) legal fees and costs, including payment of Stiglitz's ex-wife's legal fees; (2) World Bank pension payments, including future pension payments; (3) book royalties; (4) investment account (the "Vanguard Account") distributions[4]; (5) "enhanced earnings" payments; and (6) "lost opportunity costs."[5] *See* Declaration of Robert F. Aucone, ¶¶ 2, 7-8, attached hereto as Exhibit B.  ("Aucone Decl.").

## III.   LAY WITNESSES MAY NOT OFFER OPINIONS BASED ON SPECIALIZED KNOWLEDGE

Pursuant to Fed. R. Evid. 701, if a witness is not testifying as an expert, "the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are: . . . (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  "In other words, a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person."  *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996).  "This requirement ensures that lay testimony is 'the product of reasoning processes familiar to the average person in everyday life.'"  *United States v.*

---

[3] Although Stiglitz's Pretrial Statement provides no explanation as to how he intends to prove the result that would have been reached had the case been litigated to a completion in the District of Columbia, at deposition, Stiglitz stated that he intends to use the July 2002 Offer as a "rough" proxy for what he claims the result would have been in the District had the case been litigated here.  Deposition of Joseph E. Stiglitz ,Vol. III, at 37, Nov. 30, 2009 (relevant portions attached hereto as Exhibit A)  ("Stiglitz Dep.").

[4] The Vanguard Account distribution claim is included under Stiglitz's damages theory comparing the hypothetical trial result with the New York Settlement but is not included under the theory comparing the New York Settlement with the 2002 Hannaway Offer.

[5] In prior iterations of his damages claim, Stiglitz also sought amounts for damages associated with his earnings, mortgage payments, and a Columbia University pension account.  Based on Stiglitz's Pretrial Statement, it appears that he has now has abandoned these claims.

*Wilson*, 605 F.3d 985, 1025 (D.C. Cir. 2010) (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)).  As the United States Court of Appeals for the District of Columbia recently has reaffirmed, where a witness testifies based on knowledge derived from previous professional experience, it "falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701."  *United States v. Smith*, No. 09-3119, 2011 WL 1437378, at *6 (D.C. Cir. Apr. 15, 2011) (internal quotations omitted).  Indeed, "a lay witness who is not qualified as an expert may not give opinions that are based on his or her specialized knowledge, even if those opinions were also based on his or her personal knowledge." *Armenian Assembly of Am. v. Cafesjian*, 746 F. Supp. 2d 55, 65 (D.D.C. 2010).  *See also United States v. Eiland*, Case No. 04-379, 2006 WL 2844921, at *5 (D.D.C. Oct. 2, 2006) ("A witness may not offer testimony as a lay witness under Rule 701 if such testimony is based solely upon his experience or expertise[,]" and "testimony based on this type of extensive past experience more rightly falls under the purview of Rule 702 . . . .").  Rule 701(c) is intended "to eliminate the risk that the reliability requirements set forth in [Fed. R. Evid.] 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007).

    Detailed testimony on complex damages claims, including complex comparisons of the economic effect of alternative settlement and litigation outcomes, constitutes expert testimony that falls within the scope of Rule 702. *See, e.g., Minebea Co. v. Papst*, No. 97-0590, 2005 WL 1459704, at *3 (D.D.C. June 21, 2005) (involving expert testimony on reasonable royalty rates and disallowing such testimony because it was "unclear what facts or data [the expert] . . . relied upon and his methodology [was] unreliable"); *Knight v. Georgetown Univ.*, 725 A.2d 472, 486 (D.C. 1999) (involving expert testimony on lost salary and pension); *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (precluding a lay witness from testifying as to a

damages model because it included moving averages and compounded growth rates, which the court found were technical, specialized subjects); *EEOC v. Lennar Homes of Ariz., Inc.*, No. 03-1827, 2006 WL 1734594, at *4 (D. Ariz. June 23, 2006) (finding that testimony regarding damages that included a fluctuating interest rate and a present value calculation related to a front pay claim fell under Rule 702 because it required specialized knowledge). *See also* Aucone Decl. ¶¶ 2, 6, 14-15, 19-20, 22-23, 25, 32-33, 38-41, Ex. B.

## IV.  <u>NOTHING HAS CHANGED TO NEGATE THE NEED FOR EXPERT TESTIMONY ON DAMAGES</u>

Stiglitz recognized the need for expert testimony on his complex damages claims and retained a damages expert – Cragg – to provide precisely that expert testimony.  As noted above, however, the Court precluded Cragg's testimony because Stiglitz improperly failed to disclose such testimony until nearly a year after the deadline for expert disclosures.  *See* Docket, Minute Order of January 7, 2008, attached hereto as Exhibit C.   Again conceding that expert testimony was necessary,[6] Stiglitz then tried to act as his own damages expert, an attempt that the Court likewise quashed.  *See* Docket, Minute Order of August 25, 2010, Ex. C (granting Bank's Motion to Preclude Plaintiff's Purported Damages Evidence); Docket, Minute Order of September 28, 2010 (denying Stiglitz's Motion for Reconsideration of August 25, 2010 Order), Ex. C.

Recently, Stiglitz has argued that, although expert testimony initially was required with respect to damages, it no longer is needed because circumstances have changed.  *See* Plaintiff Joseph E. Stiglitz's Response to Defendant Rita M. Bank's Objections to Plaintiff's Pretrial Report, at 2 ("Stiglitz's Response to Bank's Objections") (Docket No. 73).  The only thing that has changed, however, is the fact that Stiglitz now has made certain payments under the New York Settlement

---

[6] *See* Memorandum of Points and Authorities in Opposition to Motion to Preclude Plaintiff's Purported Damages Evidence (Docket No. 54).

such that he no longer has to make projections with respect to those particular payments. Establishing certain amounts that Stiglitz has paid under the New York Settlement is only one small part of Stiglitz's damages analysis. Indeed, Stiglitz admittedly still has to make other projections regarding future payments under the New York Settlement, *see* Stiglitz's Pretrial Statement at 6, 9, and such projections, properly done, are beyond the "reasoning processes familiar to the average person" and require expert testimony. *Wilson,* 605 F.3d at 1025; Aucone Decl. ¶¶ 18-19, Ex. B (stating that Stiglitz's calculations with respect to the World Bank pension "is a clear example of incorrect expert projections," that Stiglitz's projections fail to reduce the amounts to net present value as is required, and that "a qualified expert properly computing these amounts would include in an expert report specific references to the documents relied upon as well as net present value calculations including an indication as to what discount rate was being used and the basis for using that rate").

Most importantly, the heart of Stiglitz's damages analysis, which has not changed, is the comparison between the New York Settlement and the hypothetical outcomes in the District of Columbia. This is exactly the analysis that Stiglitz's stricken expert sought to perform, it is exactly what Stiglitz sought to do by acting as his own expert, which this Court disallowed, and it is exactly what Stiglitz now seeks to do as explained in his Pretrial Statement. *Compare* Expert Report of Michael Cragg, attached hereto as Exhibit D (analyzing damages as the difference between the New York Settlement and the result had the case been resolved in the District by June 30, 2002 and identifying as sources of damages additional litigation costs, enhanced earnings, Hannaway legal bills, lost opportunity costs, division of the Vanguard Account and World Bank pension, and royalty payments) *with* Stiglitz's Pretrial Statement (analyzing damages as the difference between the New York Settlement and the result had the case been resolved in the District, and identifying as sources

7

of damages additional litigation costs, enhanced earnings, Hannaway legal bills, lost opportunity costs, division of the Vanguard Account and World Bank pension, and royalty payments).  Nothing whatsoever has changed about the nature of the testimony that Stiglitz seeks to present at trial – it constitutes expert testimony pursuant to Rule 702, which this Court has precluded.

**V.      THE OUTCOMES STIGLITZ SEEKS TO COMPARE ARE COMPLICATED AND DIFFERENTLY STRUCTURED, AND EXPERT TESTIMONY IS NEEDED TO MAKE ANY MEANINGFUL COMPARISONS BETWEEN THEM**

Stiglitz's damages theory depends upon showing that the net economic impact of the New York Settlement was less favorable to him than the net economic impact of the hypothetical outcomes in the District of Columbia, *i.e.,* the 2002 Hannaway Offer and the hypothetical trial result, as measured by the July 2002 Offer.  Aucone Decl. ¶ 2, Ex. B.  As an initial matter, even a cursory review of these alternative outcomes reveals the exceptionally complex financial situation at issue with respect to the division of property in the underlying divorce proceeding.  *See* New York Settlement, attached hereto as Exhibit E; July 2, 2002 Offer, attached hereto as Exhibit F; and May 16, 2002 Hannaway Offer, attached hereto as Exhibit G.

Moreover, it is readily apparent from the face of each document that the alternative outcomes are not equivalent, and cannot be easily compared.  Indeed, the New York Settlement, the 2002 Hannaway Offer and the July 2002 Offer are structured quite differently – each involve different assets measured at different points in time, and require the completion of complex calculations in order even to begin to make meaningful comparisons as to the economic realities of each.  *See* Aucone Decl. ¶ 9, Ex. B (noting that the July 2002 Offer, the 2002 Hannaway Offer and the New York Settlement "are so significantly different from one another . . . that a meaningful comparison is almost impossible and requires significant and complicated assumptions and the computation of set-off calculations, necessitating expert testimony")  Comparing these alternative outcomes simply is

far beyond the "reasoning processes familiar to the average person in everyday life" and squarely

falls under the province of Rule 702. *See Wilson*, 605 F.3d at 1025; *Smith*, 2011 WL 1437378, at *6.

Bank's damages expert has explained in detail some of the specific structural differences in

the alternative outcomes that render their comparison impossible without undertaking complex

analyses to determine the overall net economic impact of each. For example, with respect to

Stiglitz's first damages theory, which compares the New York Stipulation of Settlement with the

hypothetical trial result in the District of Columbia (as measured by the July 2002 Offer), Aucone

explains:

10. [T]he first page of the Stipulation of Settlement includes a line item "Total Value of Joint Tangible Assets (Page 2)" in the amount of $1,860,140.12. Page 2 is a listing of the accounts, primarily checking and savings accounts, with the then-current balances. However, certain accounts listed on the Stipulation of Settlement, such as Union Bank of California, are not included in the July 2002 Offer. Likewise, page 2 of the Stipulation of Settlement includes items such as "Add-back for portion of Vanguard securities sold to pay Kroll," "Add-back for ML Securities sold for 6/04 residence purchase," and "Add-back for Fidelity securities sold for 6/04 residence purchase," none of which were included in the July 2002 Offer.

11. In addition, Page 2 of the Stipulation of Settlement lists "Total: Husband's Non-retirement Assets" at $325,380.26. It also lists "Total: Wife's Non-retirement Assets" at $177,372.23. Finally, it lists "Total: Joint Assets" of $1,860,140.12. These amounts total $2,362,892.61. On the first page of the Stipulation of Settlement, a credit of $207,000 is attributed against these assets as "Less Husband's $207,000 separate property credit," resulting in a net amount of $2,155,892.61. The comparable amounts on the schedule to the July 2002 Offer lists "Husband's Accounts" at $558,400.13 (Schedule A), and "Wife's Accounts" at $367,548.89 (Schedule A). The July 2002 Offer, however, does not provide sufficiently detailed information to determine the total value of the marital estate. In addition, other amounts included in the Stipulation of Settlement do not appear in the July 2002 Offer, such as a Citibank savings

account of $65,417.57, and two life insurance policies of $62,824.17. Conversely, the Stipulation of Settlement does not include assets included in the [July 2002] Offer, including the New Jersey Property, investments in Brookdale Equity Partners, LP, Medtronic Inc., and TMI Partnership, an MIT Retirement Account, and the Nobel Prize in Economics. Presumably, some of these assets were converted into cash in the intervening period, but an expert analysis of the source and uses of those proceeds would be necessary in order to make a meaningful comparison between the Stipulation of Settlement and the July 2002 Offer. In addition, the July 2002 Offer addresses the Ordway Property, but does not assign a value to the property. The Stipulation of Settlement states that the Ordway Property had been sold and the expected net proceeds were $2,550,000 before payment of the outstanding mortgage and fees. Hence, once again, a meaningful comparison of the Stipulation of Settlement and the July 2002 Offer cannot be made regarding this asset without expert analysis. Finally, the July 2002 Offer contemplates paying maintenance, while the Stipulation of Settlement specifically states that there will be no maintenance.

Aucone Decl. ¶¶ 10-11.

Aucone explains that significant problems also exist in attempting to compare the New York Stipulation of Settlement with the 2002 Hannaway Offer:

12.     Likewise, with respect to Dr. Stiglitz's second damages theory comparing the Stipulation of Settlement with the 2002 Hannaway Offer, the comparison also requires expert analysis. In this regard, as noted above, the first page of the Stipulation of Settlement includes a line item "Total Value of Joint Tangible Assets (Page 2)" in the amount of $1,860,140.12. Page 2 is a listing of the accounts, primarily checking and savings accounts, with the then-current balances. However, certain accounts listed on the Stipulation of Settlement, such as Union Bank of California, are not included in the 2002 Hannaway Offer. Likewise, page 2 of the Stipulation of Settlement includes items such as "Add-back for portion of Vanguard securities sold to pay Kroll," "Add-back for ML Securities sold for 6/04 residence purchase," and "Add-back for Fidelity securities sold for 6/04 residence purchase," none of which were included in the 2002 Hannaway Offer.

10

13.     In addition, as noted above, Page 2 of the Stipulation of
Settlement lists "Total: Husband's Non-retirement Assets" at
$325,380.26.   It also lists "Total: Wife's Non-retirement
Assets" at $177,372.23.   Finally, it lists "Total: Joint Assets"
of $1,860,140.12.   These amounts total $2,362,892.61.   On
the first page of the Stipulation of Settlement, a credit of
$207,000 is attributed against these assets as "Less Husband's
$207,000 separate property credit," resulting in a net amount
of $2,155,892.61.   The comparable amounts listed on the
schedule to the 2002 Hannaway Offer total $2,346,796 and
include the categories of cash accounts of $1,962,671, life
insurance of $50,792, and Nobel Prize in Economics of
$333,333.  These amounts do not include other items listed on
the Stipulation of Settlement, including a life insurance policy
in the amount of $3,505.43, an amount for the World Bank
pension payments of $19,001.00, Folio*FN* in the amount of
$9,589.79, and a 2000 Saab in the amount of $11,870.  When
these amounts are added to the schedule attached to the 2002
Hannaway Offer, the total becomes $2,390,762.22, which is
$234,869 greater than the amounts listed on the Stipulation of
Settlement.

*Id*. ¶¶ 12-13.  Aucone concludes that: "[t]he calculations and assumptions required to even attempt

to compare the Stipulation of Settlement with Dr. Stiglitz's other proposed hypothetical outcomes

are significant, complicated and clearly require the services of an expert witness."  *Id.* ¶ 14.

In fact, although Stiglitz now tries to ignore the structural differences between the alternative

outcomes in his Pretrial Statement in order to mask the need for expert testimony on damages,

Stiglitz previously admitted that the differences between the New York Settlement and the

hypothetical District of Columbia results are so pronounced that he has to complete various

additional calculations in order to make any comparisons:

what I would have to do is to take 27 ½ percent of the difference
between my income, including my royalties, and her income, the
earned income, and then I calculated the damages including the tax
impact; that is to say, reduced by the fact that having transferred that
amount, I would not – I assume it would be done in a way that would
make sure I wouldn't have to pay the tax.  I mean, that's not for sure,

11

> so I might – but assuming the tax impacted, and looked at the difference between those two methodologies, those two calculations. And when one does that, one gets a result that if one looks at what I paid Han[n]away in royalties, was just about equal to what I would have had to pay. What I paid Han[n]away in royalties and will pay her, you know, based on these projects was just about equal to when I would have had to pay under the 27 ½ percent provision. And that's why the number is, in the second methodology, a minus 24,000.

Stiglitz Dep. at 139-40, Ex. A. These kind of complex calculations are still required notwithstanding that Stiglitz has made certain payments under the New York Settlement. The point is that the New York Settlement is not readily comparable to the hypothetical results in the District of Columbia that Stiglitz says he would have realized but for Bank's alleged malpractice. The fact that Stiglitz now does not have to make certain projections regarding limited aspects of one side of the comparison (the New York Settlement) because certain specific payments have been made does not make the hypothetical results in the District of Columbia any more comparable to the New York Settlement. Expert testimony still is required to show how the overall economic reality of these outcomes compare with one another. *See LifeWise Master Funding*, 374 F.3d at 929; *Lennar Homes of Ariz., Inc.*, 2006 WL 1734594, at *4.

## VI.    STIGLITZ'S DAMAGES CLAIMS DO NOT SHOW HOW THE NET ECONOMIC REALITY ACHIEVED UNDER THE NEW YORK SETTLEMENT WAS LESS FAVORABLE AND ARE RIFE WITH ERRORS

Stiglitz's Pretrial Statement, which provides the fifth different version of his damages claims, and which inexplicably claims different damages amounts than were included in his original pretrial statement which was filed just days earlier,[7] is telling both for what it says, and for what it doesn't say. Stiglitz has attempted in his Pretrial Statement to make his damages calculations appear simple in order to suggest falsely that expert testimony on damages is not required. In fact, however,

---

[7] *Compare* Stiglitz's original pretrial statement (Docket No. 66) (claiming $2,952,631.00 in damages under Method 1 and $2,259,685.00 in damages under Method 2) with the amended Pretrial Statement (claiming $2,898,923.00 in

Stiglitz's proposed testimony not only constitutes expert testimony but also presents an incomplete, incorrect, and entirely misleading picture of his damages. Put differently, Stiglitz's testimony is not only expert testimony but expert testimony that is fundamentally flawed and unreliable on its face.

Stiglitz entire damages theory depends on making a comparison between the New York Settlement and the hypothetical results in the District of Columbia. As shown above, there are significant differences in the structure of each of the alternative outcomes that preclude any meaningful comparison of the outcomes without the completion of complex computations in order to determine the overall net economic value of each. *See* Aucone Decl. ¶¶ 10-13. Stiglitz ignores that the New York Settlement, the 2002 Hannaway Offer, and the July 2002 Offer each had different terms and included different assets measured at different points in time, and makes no attempt to show, as is required, how the net economic impact of the New York Settlement was less favorable than the net economic impact of either of the hypothetical District of Columbia outcomes, when all of the terms of each alternative outcome is considered. Instead, Stiglitz simply picks and chooses certain elements of the New York Settlement and claims that he suffered damages in those categories.

Indeed, in multiple instances, Stiglitz appears to simply add up amounts he paid under the New York Settlement and claim all of those amounts as damages, without any regard to the terms of the District of Columbia hypothetical results. Other than deducting legal fees he allegedly would have paid in the District of Columbia and, under the second damages theory, deducting maintenance payments he would have paid under the 2002 Hannaway Offer (which deduction, as discussed below, Stiglitz significantly understates), Stiglitz fails to perform the required set-off calculations which are required in order to account for payment obligations under the hypothetical District of

---

damages under Method 1 and $2,230,136.00 in damages under Method 2).

Columbia outcomes which were not included in the New York Settlement. *See id.* ¶¶ 20, 22, 23 (no set-off for maintenance payments); 21 (no set-off for royalty payments).

In addition to the fact that Stiglitz fails to account for all of the terms of each of the alternative outcomes in order to make meaningful comparisons between them, the damages numbers that Stiglitz presents are fraught with mathematical errors, do not properly account for tax consequences, do not apply proper discount rates and fail to match up with supporting documentation.

Bank's damages expert has explained the myriad problems with Stiglitz's damages claims, which further demonstrate the need for expert testimony on damages:

| Damages Claims | Aucone's Testimony Regarding the Problems With Stiglitz's Damages Claims |
|---|---|
| **Legal Fees** (comprised of Dr. Stiglitz's legal fees, expert witness costs, and half of Hannaway's legal fees paid by Stiglitz) | • Without explanation, amount claimed does not match any earlier iterations of damages claims for legal fees and does not account for deductions previously taken in earlier iterations (Aucone Decl. ¶¶ 16-17, 29, Ex. B).<br><br>• Appears to estimate legal fees paid to Hannaway (vs. providing an actual amount) and does not account for the fact that Hannaway's fees were paid from marital assets and, had they not been paid, as much as 50% of savings would have gone to Hannaway in the form of an additional property settlement (*Id.* ¶¶ 17, 29).<br><br>• Does not account for tax benefit Stiglitz appears to have received by deducting fees on income tax returns (*Id.*). |
| **World Bank Pension** (comprised of both payments made and future payments) | • Fails to perform necessary calculations to reduce amounts of future payments to net present value applying appropriate discount rate (*Id.* ¶¶ 19, 30).<br><br>• Ignores that July 2002 Offer included maintenance payments that should offset any claimed damages for World Bank pension payments. (*Id.* ¶ 20). |

| Damages Claims | Aucone's Testimony Regarding the Problems With Stiglitz's Damages Claims |
|---|---|
| **Royalty Payments** | • Fails to explain why certain publications are selected under each damages theory, or why the publications are inconsistent with publications contemplated under the July 2002 Offer and the 2002 Hannaway Offer (*Id.* ¶ 21).<br><br>• Does not explain why the damages amounts claimed with respect to royalties are significantly different from the amounts claimed in Stiglitz's original pretrial statement, which was filed just days earlier (*Id.* ¶ 15).<br><br>• Fails to explain inconsistencies between the damages claimed for royalties under the two different damages theories (*Id.* ¶¶ 28, 31).<br><br>• Does not perform required set-off calculations to account for royalty payments contemplated under the July 2002 Offer (*Id.* ¶ 21).<br><br>• Ignores that the July 2002 Offer contemplated maintenance payments that should offset any claimed damages for royalty payments. (*Id.* ¶ 22).<br><br>• Does not include required reduction for expected income taxes (*Id.* ¶¶ 22, 33). |
| **Vanguard Account** | • Provides no explanation as to the discrepancy between the purported value of this account reported in the Pretrial Statement and the value included in Stiglitz's original pretrial statement, which was filed just days earlier (*Id.* ¶ 23).<br><br>• Amount is derived from a valuation calculation to account for market fluctuations in order to calculate purported damages, which is exactly the kind of calculation properly completed by an expert (*Id.*).<br><br>• Ignores that the July 2002 Offer contemplated maintenance payments that should offset amounts paid for Vanguard account (*Id.*).<br><br>• In order to determine amount of claimed damages, Stiglitz admittedly completed investment projection calculations using a stock index, which are exactly the kind of calculations properly completed by an expert and which are an improper attempt to add prejudgment interest (*Id.*). |
| **Enhanced Earnings** | • Without explanation, claims the entire $600,000 amount paid in New York Settlement, even though Stipulation of Settlement expressly stated that payment of $600,000 was for "settlement of various claims, including Husband's payments to/on behalf of Anya Schiffrin, consulting fees earned from Microsoft Litigation Fund and Sebago, and enhanced earnings capacity" (*Id.* ¶¶ 24-25, 30). |

In addition to all of the issues discussed above, the set-off calculations that Stiglitz purports to complete under his second damages theory to account for maintenance payments that were contemplated under the 2002 Hannaway Offer (but were not included in the New York Settlement), have mathematical errors and are unsubstantiated.  Pursuant to the 2002 Hannaway Offer, the maintenance payments are calculated by taking a percentage of the difference of Stiglitz's and Hannaway's income.  As Bank's damages expert points out, the income amounts that Stiglitz includes in the Pretrial Statement as the basis for his maintenance payment set-off calculations do not match up with the income he reported on his personal income tax returns during the years in question and, significantly, Stiglitz understates his income thereby reducing the amount of the maintenance payment that is used to offset his claimed damages.  *Id*. ¶¶ 34-35 (noting that the Pretrial Statement lists income levels of $568,705, $1,886,276, $1,307,712, and $821,164, respectively, for a total of $4,583,857, while the corresponding amounts actually reported on his personal income tax returns, Form 1040, are $721,344, $1,921,931, $1,411,787 and $902,877, respectively, for a total of $4,957,939).  Aucone also notes that Stiglitz deducted from his income tax return amounts spent on legal fees and that, unless Stiglitz can show that the fees deducted were for litigation outside of the divorce proceeding, it is likely that the income reported in the Pretrial Statement is understated by approximately an additional $450,000. *Id.* ¶ 35.  Finally, Aucone points out that Stiglitz provides no explanation as to why he has determined that the maintenance payments under the 2002 Hannaway Offer would have ended in mid-2005, when the 2002 Hannaway Offer was open-ended as to the timeframe and the contemplated royalty payments under the 2002 Hannaway Offer extended long beyond that time.

As demonstrated, Stiglitz's latest iteration of his damages claims is incomplete, incorrect, and misleading, and highlights the fact that expert testimony on damages absolutely is required in order to understand the inherent complexities of Stiglitz's claims.   As Bank's damages expert concludes:

> The calculations included in the Statement still include projections, inconsistencies from one methodology to another, unfounded and undocumented assumptions, lack of discounting of amounts to be received in the future, and math errors.  The calculations ignore the obvious need to consider that changes to one of the assumptions regarding the Stipulation of Settlement, the July 2002 Offer or the 2002 Hannaway Offer would likely impact other aspects of the Stipulation of Settlement, the July 2002 Offer, or the 2002 Hannaway Offer, respectively.  Dr. Stiglitz did not, as is required in order to prove his damages, show that the net economic impact of the Stipulation of Settlement was less favorable to him than other possible divisions of property that could have occurred.  In order to make meaningful comparisons between the Stipulation of Settlement, on the one hand, and the July 2002 Offer or the 2002 Hannaway Offer, on the other hand, complex calculations are required that should be prepared by an expert with experience in such matters.  Dr. Stiglitz does not meet those standards.

*Id.* ¶ 39.  Accordingly, it is clear that the evidence required to prove Stiglitz's damages claims must be proffered by an expert.

## VII.   <u>CONCLUSION</u>

This Court struck Stiglitz's damages expert and has made clear that Stiglitz may not testify as his own damages expert in this case.  Accordingly, the Court should reaffirm its prior Order precluding Stiglitz from presenting evidence at trial regarding the damages claims discussed herein, all of which require testimony from a damages expert.  A proposed Order is attached with this Motion.

Respectfully submitted,

/s/ Richard A. Simpson
Richard A. Simpson, D.C. Bar No. 411893
Mary E. Borja, D.C. Bar No. 442462
Kimberly A. Ashmore, D.C. Bar No. 974326
WILEY REIN, LLP
1776 K Street, N.W.
Washington, D.C.  20006
Phone: (202) 719-7000
Fax: (202) 719-7049
Email:  rsimpson@wileyrein.com
           mborja@wileyrein.com
           kashmore@wileyrein.com


*Attorneys for Defendant*