**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOSEPH E. STIGLITZ,   )   | |
|    )   | |
| Plaintiff   )   | |
|    )   | |
| v.   )   | Civil Action No. 05-1826 RJL |
|    )   | |
| RITA M. BANK,   )   | |
|    )   | |
| Defendant   )   | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO REAFFIRM THE COURT'S ORDER PRECLUDING PLAINTIFF'S PURPORTED EVIDENCE OF DAMAGES CLAIMS THAT REQUIRE TESTIMONY BY DAMAGES EXPERT**

Plaintiff, **Joseph E. Stiglitz**, by and through his undersigned attorneys, hereby submits this memorandum of points and authorities in support of his response to Defendant's motion in *limine* to reaffirm the Court's order precluding Plaintiff's purported evidence of damages claims that require testimony by a damages expert and respectfully states as follows:

## I.    INTRODUCTION

The Defendant is correct that the sole issue raised by their motion is whether the damages evidence that Plaintiff is seeking to introduce constitutes expert testimony.  The Defendant is incorrect, though, in her assertion that the damage claim at issue requires testimony from an expert witness.  Moreover, for the reasons set forth herein, as well as those raised at the Pretrial Conference, the Plaintiff respectfully suggests that he is not attempting to circumvent this Court's prior orders regarding expert testimony.[1]  The Plaintiff intends to present two different damages methodologies at trial.  While there is some overlap between the two methodologies,

---

[1] The Plaintiff's Amended Pretrial Statement contains an asterisk next to his name. This is simply a typographical error missed in preparing the Amended Pretrial Statement.  For the record, Plaintiff is not calling himself as an expert witness.

the vital issue remains that the individual facets of both methodologies do not require expert testimony. Accordingly, the Plaintiff should be permitted to introduce the damages discussed herein.

**A.    Legal Fees and Expert Expenses**

As this Court is aware, this is a legal malpractice case. Plaintiff is claiming that, but for the Defendant's negligence, his divorce case should have been timely filed in the District of Columbia and concluded by June 2002. *See* Complaint generally; *see also*, Expert Report of Glenn C. Lewis attached hereto as Exhibit A. Due to the Defendant's failure to properly represent the Plaintiff, though, he was ultimately sued in the State of New York and his divorce case did not conclude until August, 2004. Plaintiff is claiming the additional legal fees and expenses that he paid in the New York litigation as part of his damages claim. Plaintiff has produced the relevant invoices from his counsel in New York, which total $800,428.00. Moreover, Plaintiff has produced the invoices from his experts, which total $232,679.00. Plaintiff's standard of care expert on District of Columbia law, Glenn C. Lewis, Esquire, has offered an opinion that attorneys' fees that would have been paid by Plaintiff, if his case had been competently and timely pursued in the District of Columbia, are in the range of $100,000.00 to $200,000.00. *See* Exhibit A. The Defendant's expert has opined that the range fees if this matter was handled in the District of Columbia would have been in the range of $125,000.00 to $225,000.00. *See* Exhibit B, Kuder depo., p. 103, lines 17-21; p. 104, lines 1-4. In an effort to present a very conservative damages estimate, Plaintiff intends to claim the difference between the amounts identified by Defendant's standard of care expert on District of Columbia law (which are higher than Plaintiff's expert) and what amount Plaintiff actually paid as part of the New York case. The Plaintiff obviously knows what he paid his attorneys and

experts in the New York divorce action and, as such, this claim is a simple matter of subtraction. Another facet of this claim for damages is the amount lost by the Plaintiff due to legal fees paid to his ex-wife's attorneys. In particular, Plaintiff's ex-wife used $350,000.00 of marital monies to pay her attorneys. As Plaintiff would have been entitled to half of these monies under an equitable distribution scenario, he is claiming one-half of $350,000.00 (i.e. $175,000.00), plus $35,000.00 for an additional amount he paid directly to his ex-wife's counsel. In addition to the additional amounts paid to attorneys, Plaintiff claims that he paid $232,679.00 to expert witnesses in the New York matter that he would not have paid in the District of Columbia. In this case, Mr. Stiglitz's counsel in New York State, Alton Abramowitz, Esquire, will testify as to the invoices that were issued to Mr. Stiglitz. In turn, Plaintiff will testify that he paid the invoices. Accordingly, this is a rather straight-forward claim and should be allowed to be introduced at trial.

### B.     World Bank Pension

Plaintiff claims that he would have only been called upon to pay his wife 50% of his World Bank Pension, if this matter was pursued in the District of Columbia. Inasmuch as this matter was litigated in New York State, the Plaintiff ultimately gave his ex-wife 100% of the pension to avoid having to proceed to trial and facing an enhanced earning or celebrity status determination in the New York matter (such damages were not recoverable under D.C. law). The Plaintiff knows his current benefit amount and has produced World Bank statements to that effect. The Plaintiff is claiming the amount he has paid to date, minus 56%, to account for the tax benefit. Again, this claim is relatively straight-forward, as Plaintiff knows the amount he has paid to his ex-wife and has reduced the payments by the tax benefit percentage of 56%. Inasmuch as the Social Security Administration offers a life expectancy calculator, Plaintiff has

secured his actuarial life expectancy from the Social Security Administration.   In doing so, Plaintiff has taken his remaining life expectancy and multiplied it by the future payments.   As Plaintiff does not want to provide expert testimony, he has not reduced the claim for the World Bank pension to present value, nor does he have an obligation to do so. *See Schleier v. Kaiser Foundation Health Plan*, 876 F.2d 174, 179-180, 277 U.S. App. D.C. 415 (1989) citing *Aldridge v. Baltimore & O.R.R.*, 789 F.2d 1061, 1067-68 (4th Cir. 1986) for the proposition that a defendant, as the party with greatest interest in discounting to present value, has burden of providing jury with guidance), *aff'd*, 814 F.2d 157 (4th Cir. 1987) (en banc), *vacated and remanded sub nom. Chesapeake & O.R.R. v. Aldridge*, 486 U.S. 1049, 108 S. Ct. 2812, 100 L. Ed. 2d 913 (1988) (remanding for reconsideration in light of *Monessen S.W. Ry. v. Morgan*, 486 U.S. 330, 108 S. Ct. 1837, 100 L. Ed. 2d 349 (1988)).   Naturally, if the Defendant produced competent and admissible evidence to have the Plaintiff's claim reduced to present value, then the Court should entertain it.   Either way, though, the Plaintiff does not carry the burden of reducing his own claim for damages to present value.

Moreover, the lay witness testimony that the Plaintiff will provide concerning the World Bank Pension does not rise to the level of expert testimony.   In a comparable context, a business was properly allowed to present testimony of its parent company's chief financial officer about lost profits of business pursuant to breach of fiduciary duty claim because under Federal Rule of Evidence 701, the officer was a lay or opinion witness, which did not implicate heightened disclosure requirements of Federal Rule of Civil Procedure 26(a)(2) for expert witnesses, and officer was intimately familiar with business's financial performance. *See Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161 (CA5 Tex 2010).   Similarly, Plaintiff is well aware of his monthly benefit amount and the future payments are a matter of simple multiplication.

C.     **Royalty Damages**

Plaintiff is claiming damages representing the difference between what he would have been required to pay to his ex-wife in terms of royalty payments and what he has actually paid to his wife in the form of royalty payments. Plaintiff has produced his royalty statements for all periods relevant hereto. Plaintiff is not making projections or otherwise speculating as to what the payments might be in the future; rather, he knows what has already been paid to his wife. So, the Plaintiff is only going to testify as to the amount that has actually been paid to his wife.

In *Coldwell Banker Real Estate, LLC v. Brian Moses Realty, Inc.*, the Court found that where a franchisor timely disclosed that it intended to rely on its senior director of real estate financial services as a witness on damages relating to breach of contract claims asserted against franchisees, franchisor's failure to identify witness as expert did not warrant exclusion of witness's testimony under Fed. R. Civ. P. 37(c)(1) because business records providing manner in which royalty and advertising fees were to be calculated did not require expert testimony to explain their meaning to trier of fact; based on personal knowledge witness had acquired from her experience working for franchisor, such that the witness's testimony on damages was admissible under Fed. R. Evid. 701. *See* 2010 U.S. Dist. LEXIS 93827 (D.C.NH 2010).   In another matter, the Court found that the opinion testimony from the owner of the plaintiff's business in a breach of contract case was admissible under the exception to Fed. R. Evid. 701 because the witness had relevant, personal, in-depth, involvement in business of managing property at issue and witness had enough particularized knowledge by virtue of his position in business such that he was permitted to testify regarding future damages that would have been incurred as result of breach of contract. *See Englewood Terrace Ltd. P'ship v United States*, 94 Fed. Cl. 116 (2010). Similarly, a franchisee's manager was entitled to give his opinions as lay

witness as to future lost business profits in breach of franchise agreement case due to ample evidence of his experience in the business of selling manufacturer's products and similar products and knowledge he possessed about franchisee's business records that allowed him to assess franchisee's future lost profits resulting from termination of dealership agreement with manufacturer. *Diesel Mach., Inc. v B.R. Lee Indus.* 328 F. Supp.2d 1029 (DC SD 2003), *aff'd* 418 F.3d (CA8 SD 2005).  Analogously, Plaintiff has published numerous books and received royalty statements for years.  So, he clearly has the capacity to read a royalty statement and apply the percentage that his ex-wife received, which she would not have received absent the Defendant's negligent advice.  Accordingly, the Plaintiff's claim regarding the royalty payments does not require an expert witness on damages.

### D.   Vanguard Account

Plaintiff maintained a retirement account with Vanguard.  Plaintiff asserts that he would have kept the entire account, if the underlying matter had been timely pursued in the District of Columbia.  Instead, Plaintiff has been called upon to pay one half of the value of the Vanguard account to his ex-wife, as part of the settlement reached in his New York case on August 4, 2004.  As the most recent Vanguard account statement is dated June 30, 2004, Plaintiff has referred to the Vanguard index to obtain a value for the account as of August 4, 2004.  The value of the account on August 4, 2004 is *lower* than the amount on June 30, 2004.  If this Court finds that the Plaintiff is not entitled to reduce the value of the Vanguard account in accordance with the return achieved by this account, then the Plaintiff would request an opportunity to simply use the value of the account on June 30, 2004, as set forth in the statement, and to claim one half of that amount.  Otherwise, all the Plaintiff is claiming is one half of the value of the account as of the date of settlement of the New York action.  The reduction is very simple and just involves

reviewing publicly available information from Vanguard, which has been produced by the Plaintiff, along with the relevant account statement.

### E.   Enhanced Earnings

Litigants in domestic cases in the District of Columbia are not subject to "enhanced earnings" or "celebrity status" claims, but they are in the State of New York. As part of the New York settlement, Plaintiff agreed to pay $600,000.00 to satisfy a claim for enhanced earnings. While the actual portion of the settlement agreement at issue references enhanced earnings and other items, the Plaintiff will testify that he paid the entire $600,000.00 to avoid an enhanced earnings claim, not the other claims. The Plaintiff can certainly testify as to his motivation and basis for making this payment. This is not the type of damage requiring expert testimony. And, again, this amount has already been paid and is known by the Plaintiff.

### F.   Opportunity Costs

This is the subject of a separate motion in *limine* and Plaintiff's response will be contained in his response to that motion in *limine*.

### G.   Alimony Payments

Under one of Plaintiff's damages methodologies, he would have been called upon to pay his ex-wife 27.5% of the difference between his income and his wife's income for half of 2002, 2003, 2004, and half of 2005. Plaintiff has produced his tax returns for the relevant years. While Plaintiff does not have his ex-wife's tax returns for 2004 and 2005, he has proceeded with the assumption that her income remained constant for these years. From there, Plaintiff subtracted his wife's income from his income and multiplied the difference by 27.5%. Inasmuch as the payment of alimony by Plaintiff would result in a tax benefit to Plaintiff, he took the sum after multiplying by 27.5% and multiplied it by 44%, thereby coming up with a net loss to Plaintiff.

Inasmuch as the last payments to Plaintiff's ex-wife would have taken place approximately six (6) years ago, he certainly knows what he has earned in income and the rest is relatively basic calculations.

## II.   APPLICABLE LAW

### A.   LEGAL STANDARD

In *Lightfoot v. Rosskopf*, this Honorable Court provided a discussion of the admissibility of lay testimony:

> Rule 602 of the Federal Rules of Evidence states in pertinent part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *Fed. R. Evid. 602*. If a determination has been made that the witness does have personal knowledge of the matters to which he seeks to testify, the nature of the witness' testimony is further limited by the following provisions contained within Rule 701 of the Federal Rules of Evidence:
>
> > If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge with the scope of Rule 702. Fed. R. Evid. 701.
>
> Lay witnesses may offer opinion testimony based on their perceptions, if it is helpful and not based on specialized knowledge, provided the party offering the lay opinion testimony establishes a proper foundation, and the party opposing the admission of such testimony has an opportunity, through the process of cross-examination, to expose a weak foundation. *United States v. Williams*, 341 U.S. App. D.C. 281, 212 F.3d 1305, 1310 n. 6 (D.C. Cir.) (citations omitted), *cert. denied*, 531 U.S. 1056, 148 L. Ed. 2d 568, 121 S. Ct. 666 (2000).
>
> On the other hand, if the opinion involves specialized knowledge beyond the ken of a lay man, a lay opinion, purporting to claim, with a reasonable degree of scientific certainty, that one phenomenon was proximately caused by another is inadmissible for lack of foundation. Fed. R. Evid. 701 (if witness is not testifying as expert, opinion testimony is limited to opinion based on perception, if helpful, and if not based on scientific, technical, or other specialized knowledge).

377 F. Supp. 2d 31, 33 (D.D.C. 2005).

## III.   ARGUMENT

## A.   PLAINTIFF IS NOT OFFERING OPINIONS BASED ON SPECIALIZED KNOWLEDGE.

The Defendant correctly asserts that a lay witness may not offer testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. In light of this Honorable Court's prior rulings, Plaintiff is not attempting to introduce evidence based on scientific, technical, or other specialized knowledge. Rather, Plaintiff is seeking to introduce damages relating to items that he has already paid and/or for which are subject to simple calculations. It is evident that Federal Courts have permitted such testimony in more complex arenas. *See Allied Sys. v Teamsters Auto. Transp. Chauffeurs, Demonstrators & Helpers, Local 604* 304 F.3d 785 (CA8 Mo 2002) (citations omitted) (Vice-president of internal audit's lay opinion evidence regarding damages was admissible where testimony was limited to officer's firsthand knowledge, obtained as bookkeeper and record-keeper at corporation's work site and from field audit that officer conducted."); *see also, Tex. A&M Research Found. v Magna Transp., Inc.*, 338 F.3d 394 (CA5 2003) (In case involving action by research foundation for damages suffered because of late delivery of specialized ocean research equipment, testimony by foundation's vice president was based on particularized knowledge based on his position as vice president, and vice president could testify without qualifying as expert.)

Personal knowledge of plaintiff's balance sheets acquired by its former accountant is sufficient to qualify him as witness eligible under Rule 701 to testify to his opinion of how lost profits could be calculated, regardless of whether accountant might have been able to qualify as an expert witness on use of accepted accounting principles in calculation of business losses. *Teen-Ed, Inc. v Kimball International, Inc.* (3rd Cir. 1980). Similarly, in *In re Merritt Logan,*

*Inc.*, the Court found that the District Court did not err in admitting opinion testimony regarding how lost profits could be calculated from facts witnesses perceived since one witness had personal knowledge of business and other had personal knowledge of preparation of survey which forecast sales.  901 F.2d 349 (3rd Cir. 1990).   In another matter, the president of a business had sufficient personal knowledge of the business to testify under Rule 701 to how lost profits were calculated. *Securitron Magnalock Corp. v Schnabolk*, 65 F.3d 256 (2nd Cir. 1995).

As this Court is undoubtedly aware, considerable discretion is vested in trial court as to admission or exclusion of opinions of ordinary witnesses concerning matters which are shown to be within their observation or experience. *See United States v Trenton Potteries Co.*, 273 U.S 392, 71 L Ed 700, 47 S Ct 377 (1927).  FRE 701 modifies the old opinion rule and allows lay witnesses to testify in the form of opinions or inferences when those opinions or inferences are (a) rationally based on perception of witness and (b) helpful to clear understanding of his testimony on determination of fact in issue; this formulation recognizes that statements that sound like opinions can contain significant factual content. *See In re Franklin Nat'l Bank Sec. Litigation*, 478 F. Supp. 577 (E.D. NY 1979).

Under the current version of Federal Rule of Evidence 701, lay opinion testimony witnesses may testify based upon their particularized knowledge garnered from years of experience within field. *United States v Thompson*, 133 Fed Appx 652 (11th Cir. 2005), *cert. denied*, 546 U.S. 979, 126 S Ct 598, 163 L Ed 2d 464 (2005).  In particular, the primary purpose of Rule 701 is to allow nonexpert witnesses to give opinion testimony when, as matter of practical necessity, events which they have personally observed cannot otherwise be fully presented to court or jury. *Randolph v Collectramatic, Inc.*, 590 F.2d 844 (10th Cir. 1979). Here, the Defendant, in seeking to preclude Plaintiff's testimony, is essentially asking this Court to

perform a "'gatekeeping function to insure that only proper opinion testimony is presented to the jury' for both opinion and expert testimony." *See United States v. Eiland,* 2006 U.S. Dist. LEXIS 72019; 71 Fed. R. Serv. at 5-6. So, in essence, the Defendant is asking this Court to determine to what extent Plaintiff's "'testimony is based either upon his personal knowledge or his specialized knowledge, skill, experience, training or education.'" *Id.* As discussed in *Eiland,* "[n]either *Kumho* nor *Daubert,* however, establish such a requirement for the Court for instances involving lay opinion testimony. In fact, both *Kumho* and *Daubert* impose a gatekeeping function solely for the purpose of insuring the relevance of *expert* testimony, and the reliability of the foundation upon which expert testimony is founded. *Id.,* citing *Kumho,* 526 U.S. at 141 (applying *Daubert's* reliability and relevance test "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge); *Daubert* 509 U.S. at 596-97. In fact, "[a]s the *Daubert* Court pointed out, it is the very fact that Rule 702 lacks a 'firsthand knowledge or observation' requirement, as is seen under Rule 701, that necessitates the *Daubert/Kumho* test in the first place." *Id.* citing *Daubert,* 509 U.S. at 592. Accordingly, this Honorable Court should "not extend the *Kumho/Daubert* rationale to the Court's assessment of lay opinion testimony offered by any party." *Id.* Rather, it should "limit such determinations to the admissibility of expert witnesses." *Id.*

The case law relied upon by the Defendant does not support her position. While the issue raised by the Defendant is whether the damages evidence presented by Plaintiff requires an expert witness, the Defendant has cite a case from this District dealing with the exclusion of expert witnesses as a result of reliability issues, not whether the testimony constituted expert testimony. *See Minebea Co. v. Papst,* No. 97-0590, 2005 WL 1459704 and *Knight v. Geogetown Univ.,* 725 A.2d 472, 486 (D.C. 1999). As set forth in the Defendant's brief, testimony by the

expert witness in *Minebea* was excluded because it was "unclear what facts or data [the expert]...relied upon and his methodology [was] unreliable." The question, therefore, was not whether the testimony by the individual constituted expert testimony; rather, it went to the reliability of the expert's opinions. As such, this precedent has no application to the instant matter.

In *Eiland*, the Court agreed with the government's contention that law enforcement witnesses may provide opinion as lay or expert witnesses under F.R.E. Rules 701 or 702. *Id.* at 7. In fact, the *Eiland* court noted that, "[u]nder the Federal Rules of Evidence, the same witness should be allowed to 'provide both lay and expert testimony in a single case.'" *Id. citing* Fed. R. Evid. 701, advisory committee's note (citing *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997)). As the line between what constitutes lay opinion testimony under Fed. R. Evid. 701 and expert testimony under Fed. R. Evid. 702 is not an easy line to draw, it is the function of the Court to ensure that the use of witness testimony comports with the requirements under the Federal Rules of Evidence.

In *Eiland*, the Court noted that "a lay witness can testify as to his opinion when it is 'rationally based on the *witness*' perceptions....' *Id.* at 10, citing Fed. R. Evid. 701(a) (emphasis added). 'Rationally based' entails that the lay opinion be based in the witness' personal knowledge." *Id.* quoting *United States v. Saulter*, 60 F.3d 270, 276 (7th Cir. 1995); Fed. R. Evid. 602. In fact, the *Eiland* court ruled that Rule 701(c) did not preclude "the use of lay opinion witnesses to testify to a topic merely because such testimony could also be introduced as expert testimony." *Id.* at 14, n.8. In fact, the Court stated that, "[t]o the contrary, it appears as if Rule 701(c) was enacted to ensure that, though a witness may testify as both a lay opinion

witness and as an expert, lay witnesses offer only lay opinion testimony, and that experts offer expert testimony." *Id.*

In fact, this Court has ruled that "[a] witness' knowledge or understanding simply of the facts and background of a particular case...does not rise to the level of specialized knowledge that would require qualification of the witness under Rule 702. Such an understanding that is limited to the facts of the case at issue merely provides a context for the Plaintiff to testify as to amounts that he has paid. It does not improperly clothe the witness with the veil of expertise; something Rule 701(c) was designed to prevent." *Id.* at 15. Accordingly, the Plaintiff should be permitted to testify as a lay opinion witness as to his claim for damages. Like the Defendant's argument in *Eiland*, the Defendant's argument in the instant matter "to preclude altogether the use of such testimony under Rule 701 cuts too broadly, and has the effect of nearly writing Rule 701 out of the Federal Rules of Evidence entirely." *Id.* at 16. As such, the Plaintiff requests that the Defendant's motion be denied.

While the Defendant's expert has obviously raised a series of issues with Plaintiff's damages analysis, the issues raised by Defendant's expert are subjects for cross-examination, not preclusion of the testimony. In fact, the modern trend favors admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination, and Rule 701 makes it unnecessary to restrict opinion evidence to that offered by expert. *Teen-Ed, Inc. v Kimball International, Inc.*, 620 F.2d 399 (3rd Cir. 1980). Similarly, Plaintiff's opinions are well-founded on personal knowledge and he will be subject to cross-examination, such that this Court should permit him to introduce testimony pertaining to his damages claim.

**B.** **PLAINTIFF WILL BE ABLE TO ESTABLISH THAT THE OVERALL ECONOMIC EFFECT OF THE NEW YORK SETTLEMENT IS LESS FAVORABLE THAN THE OVERALL ECONOMIC EFFECT OF THE HYPOTHETICAL RESULTS IN THE DISTRICT OF COLUMBIA.**

Plaintiff's standard of care expert will testify as to the likely outcome of a trial in the District of Columbia. As the agreement reached in New York has been memorialized in writing, the only task that needs to be performed is a simple comparison of the two outcomes. In this case, Mr. Lewis has already performed that analysis, as set forth in his report:

> Due to his increased exposure at that point in the New York courts, and in mitigation of his damages, Plaintiff ultimately reached a settlement with Hannaway under which she received far more than she would have recovered had their divorce either been settled or litigated in the District of Columbia. As a direct and proximate result, the Plaintiff suffered net damages totaling Three Million Four Hundred Sixty Thousand Dollars ($3,460,000.00) to Three Million Nine Hundred Fifty Thousand Dollars ($3,950,000.00) in the New York litigation. This calculation is based upon Plaintiff's income, future royalties, enhanced earnings, celebrity status, payments of Hannaway's legal bills and his additional time required by the Plaintiff to defend himself in the New York litigation.

*See* Exhibit A, p. 3.

Based on the foregoing, Mr. Lewis is able to testify as to the outcome between the different proposals. As a matrimonial lawyer regularly practicing in the District of Columbia for over 30 years, Mr. Lewis is well-suited in assisting the jury and advising it as to how he believes a reasonable judge in the District of Columbia would have allocated the assets in this case. While Mr. Lewis is available to provide an opinion as to the distribution of the marital assets, the Plaintiff does not need Mr. Lewis to provide testimony concerning each asset. While the Defendant has taken an unsupported position that there needs to be valuation of the different proposals at different times, the fact remains that the Plaintiff clearly lost the items at issue, irrespective of when they are valued. So, the Plaintiff can and should be permitted to introduce

the value of the items that he would not have lost under any scenario.   Accordingly, Plaintiff

requests that Defendant's motion be denied.

Respectfully submitted:


/s/ David G. Whitworth, Jr.
David G. Whitworth, Jr. #224139
Wes P. Henderson #502935
Whitworth Smith, LLC
2101 Defense Highway
Crofton, Maryland 21114-2401
Phone: (410) 721-7169
Fax: (410) 793-0291
dwhitworth@wslegalmal.com
wph@hendersonlawllc.com


/s/ Linda M. Hamilton
Linda M. Hamilton #336446
Law Offices of Linda Hamilton
1300 Mercantile Lane, Suite 149
Largo, Maryland 20774
Phone: (301) 925-7833
Fax: (301) 925-8368
PGLAWI@aol.com


Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of May, 2011, a copy of the foregoing Plaintiff's Response to Defendant's Motion in Limine as to the Scope of Alton Abramowitz and Marcy Wachtel Testimony was sent via electronic filing and Federal Express delivery to Richard A. Simpson, Esquire, Mary Borja, Esquire, Kimberly Ashmore, Esquire, WILEY REIN, LLP, 1776 K Street, N.W., Washington, D.C. 20006.


                                    _/s/ David G. Whitworth, Jr._
                                    David G. Whitworth, Jr.