## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| JOSEPH E. STIGLITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1826 RJL |
| | ) | |
| RITA M. BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO REAFFIRM THE COURT'S ORDER PRECLUDING PLAINTIFF'S PURPORTED EVIDENCE OF DAMAGES CLAIMS THAT REQUIRE TESTIMONY BY A DAMAGES EXPERT**

Bank files this reply memorandum in support of Defendant's Motion in Limine to Reaffirm the Court's Order Precluding Plaintiff's Purported Evidence of Damages Claims that Require Testimony By a Damages Expert (Docket No. 80) ("Bank's Motion").[1]

## I.    INTRODUCTION

Stiglitz's Response to Defendant's Motion in Limine to Reaffirm the Court's Order Precluding Plaintiff's Purported Evidence of Damages Claims that Require Testimony by Damages Expert (Docket No. 84) ("Stiglitz's Response") reflects nothing more than a disjointed and desperate attempt to save his damages claims by asking this Court, once again, to reconsider its earlier rulings. Nothing of substance has changed about the damages analysis that Stiglitz seeks to present in this case, and the Court has already held that he may not present it.

---

[1] Bank adopts the same defined terms as used in Bank's Motion.

In particular, Stiglitz continues to assert that, because of Bank's alleged malpractice, he realized a worse outcome in New York than he would have realized had the case settled or gone to trial in the District of Columbia.  In order to prove damages under this theory, Stiglitz concedes that he must show that the overall economic effect of the New York Settlement was less favorable to him than the overall economic effect of the hypothetical result if the case had settled or gone to trial in the District of Columbia.  Stiglitz consistently has acknowledged that, in order to do so, expert testimony on damages is necessary.  Indeed, Stiglitz tried to designate Michael Cragg as a damages expert to present expert testimony comparing the New York Settlement with the hypothetical District of Columbia outcomes.  When the Court struck Cragg's testimony as untimely, Stiglitz tried to circumvent that Order by presenting the same testimony himself, contending that he was entitled to act as a "hybrid fact-expert" witness and to present his own damages expert testimony.  The Court rejected that attempt, and precluded Stiglitz from offering any evidence of his damages claims.  At the pretrial conference, the Court confirmed that Stiglitz may not offer expert testimony.

Stiglitz now attempts to argue that (1) expert testimony on damages no longer is necessary but that in any event (2) Glenn Lewis ("Lewis"), Stiglitz's standard of care expert, has performed the requisite analysis comparing the result in New York with the hypothetical results in the District of Columbia and can testify about that analysis.  Both arguments are entirely unsupported.

First, nothing has changed that would negate the need for expert testimony on damages – Stiglitz's damages theory and analysis is exactly the same now as it was when he attempted to designate Cragg and when he attempted to act as his own damages expert after the Court struck Cragg's testimony.  That analysis necessarily requires a comparison between complex alternative

economic outcomes that are not apples to apples.  That is, in order to prove that he suffered any

damages,  Stiglitz must show that the net economic result in New York was less favorable than

the net economic result that would have happened in the District of Columbia but for Bank's

alleged malpractice.  Stiglitz himself admits this.[2]  And, as Stiglitz previously recognized and as

Bank's damages expert Robert Aucone ("Aucone") has confirmed, expert testimony is

absolutely necessary in order to make any meaningful comparison whatsoever between the New

York Settlement and the hypothetical District of Columbia results.

Second, Stiglitz's assertions that his standard of care expert Lewis has performed the

requisite damages analysis comparing the New York Settlement with the hypothetical District of

Columbia outcomes, and can testify about that analysis, is flatly wrong.  Indeed, Lewis testified

unequivocally at deposition that: (1) he relied completely on damages numbers calculated by

Cragg and Stiglitz; (2) he is not a damages expert; and (3) he *had not and could not* perform the

analysis required to substantiate Stiglitz's damages claims.  Thus, Lewis's testimony actually

confirms that expert testimony on damages is required and that he is not qualified to present such

testimony.  Under these circumstances, Stiglitz's reliance on Lewis as justifying presentation of

his damages theory serves only to highlight that there is no legitimate basis for permitting that

theory to be presented to the jury; it is expert damages testimony that a lay person (even an

experienced matrimonial lawyer like Lewis) is simply not qualified to present.

---

[2] *See* Stiglitz's Response, at 14 (arguing that Stiglitz will be able to establish that the overall economic effect of the New York Settlement is less favorable than the overall economic effect of the hypothetical results in the District of Columbia).

II.     **EXPERT TESTIMONY ON DAMAGES IS REQUIRED**

A.      **Comparison of the New York Settlement with the 2002 Hannaway Offer and the July 2002 Offer**

From the very beginning of this litigation, Stiglitz has recognized that, in order to present a cognizable theory as to how he was damaged as a result of Bank's purported malpractice, he must show that the net economic result he realized in New York was less favorable to him than the net economic outcome he would have achieved had the case settled or gone to trial in the District of Columbia. Indeed, in Stiglitz's Amended Pretrial Statement, he confirms that this is still exactly the damages analysis that he is presenting. *See* Amended Pretrial Statement, at 5-12 (Docket No. 74) (listing two alternative damages formulations, one comparing the New York Settlement to a hypothetical trial result in the District of Columbia,[3] and one comparing the New York Settlement to a hypothetical settlement in the District of Columbia, as measured by the 2002 Hannaway Offer). *See also* Stiglitz's Response, at 14 (arguing that he will be able to show that the net economic reality of the New York Settlement was less favorable than the hypothetical District of Columbia results).

As discussed in detail in Bank's Motion and as Bank's damages expert has explained, the New York Settlement and the hypothetical District of Columbia outcomes are structured entirely differently and require the measurement of different assets at different points in time. *See* Decl. of Robert F. Aucone, ¶¶ 2, 5 attached hereto as Ex. A ("Aucone Decl."). Thus, the comparisons Stiglitz must make to show that the net economic result in New York was less favorable to him than the net economic result of either of the two District of Columbia hypothetical outcomes require complex calculations far beyond the capacity of a lay person. *Id.* ¶¶ 2, 5, 11-13. As Bank previously pointed out, even a cursory review of the documents detailing the alternative outcomes

---

[3] As noted in Bank's Motion, Stiglitz purports to use his July 2002 Offer as a proxy for the outcome of what would have happened at trial in the District of Columbia.

4

shows that each is structured quite differently and that there is no way a lay person could figure out and compare the net result to Stiglitz under each.  *See* Memorandum of Law in Support of Bank's Motion, Exhibits E-G (Docket No. 80-1).  Stiglitz recognized this, and retained Cragg as a damages expert.  After the Court precluded Cragg from testifying, Stiglitz tried to act as his own damages expert, which the Court also precluded.

It is only now, after the Court has made clear that Stiglitz cannot present expert damages testimony, that Stiglitz attempts to "dumb down" his damages analysis (without changing anything of significance) and pretend that expert testimony is not required.  The reality, however, is that nothing has changed about Stiglitz's damages analysis.  Aucone Decl., ¶ 2, Ex. A.

Stiglitz concedes that he must prove that the net economic result in New York was less favorable than the net economic result would have been in the District of Columbia.  *See* Stiglitz Response, at 14.  This is exactly what Cragg sought to demonstrate through his expert testimony and what Stiglitz sought to show by acting as his own damages expert.  Now, however, in order to pretend that expert testimony on damages no longer is required, Stiglitz conveniently ignores that the New York Settlement and each of the two District of Columbia hypothetical outcomes (*i.e.*, the 2002 Hannaway Offer and the July 2002 Offer) had different terms and included different assets measured at different points in time.  Instead, as Stiglitz's Response makes clear, Stiglitz simply picks and chooses certain elements of the New York Settlement and claims that he suffered damages in those categories.  *See id.* (arguing without explanation that he need not present testimony regarding each asset included under the alternative outcomes); Aucone Decl., ¶¶ 2, 3, 5, Ex. A.  He then goes on to argue how each of these items, in isolation, is simple to explain and does not require expert testimony.  This approach, however, is purposely misleading because it fails to account for

how the outcomes compare with one another, when all of their different terms are considered, which

is exactly what Stiglitz concedes he must prove under the damages theory he is presenting. *See id.*

Indeed, Stiglitz blatantly ignores all of the inherent complexities involved in attempting to

compare the New York Settlement with the hypothetical District of Columbia results.  Bank's

damages expert has detailed some of these myriad complexities:

6.     For example, with respect to Dr. Stiglitz's first damages theory comparing the Stipulation of Settlement with the Hypothetical Trial Result (as measured by the July 2002 Offer), the first page of the Stipulation of Settlement includes a line item "Total Value of Joint Tangible Assets (Page 2)" in the amount of $1,860,140.12.  Page 2 is a listing of the accounts, primarily checking and savings accounts, with the then-current balances.  However, certain accounts listed on the Stipulation of Settlement, such as Union Bank of California, are not included in the July 2002 Offer.  Likewise, page 2 of the Stipulation of Settlement includes items such as "Add-back for portion of Vanguard securities sold to pay Kroll," "Add-back for ML Securities sold for 6/04 residence purchase," and "Add-back for Fidelity securities sold for 6/04 residence purchase," none of which were included in the July 2002 Offer.  Dr. Stiglitz does not address any of these differences in the Statement or in his Response.

7.     In addition, the second page of the Stipulation of Settlement lists "Total: Husband's Non-retirement Assets" at $325,380.26.  It also lists "Total: Wife's Non-retirement Assets" at $177,372.23. Finally, it lists "Total: Joint Assets" of $1,860,140.12.  These amounts total $2,362,892.61.  On the first page of the Stipulation of Settlement, a credit of $207,000 is attributed against these assets as "Less Husband's $207,000 separate property credit," resulting in a net amount of $2,155,892.61. The comparable amounts on the schedule to the July 2002 Offer lists "Husband's Accounts" at $558,400.13 (Schedule A), and "Wife's Accounts" at $367,548.89 (Schedule A).  The July 2002 Offer, however, does not provide sufficiently detailed information to determine the total value of the marital estate.  For example, the July 2002 Offer provides that the parties divide the net proceeds from the sale of the New Jersey property 50/50, however no amount is specified.  The Stipulation of Settlement does not address the New Jersey property, presumably because the proceeds had been distributed.  In addition, other amounts included in the Stipulation of Settlement do not appear in the July 2002 Offer, such as a Citibank savings account of $65,417.57, and two life insurance policies of $62,824.17.  Conversely, the Stipulation of Settlement does not include assets included in the July 2002 Offer, including the New Jersey Property, investments in Brookdale Equity Partners, LP, Medtronic Inc., TMI Partnership, an MIT Retirement Account, a Stanford University retirement

plan valued at $450,527, and the Nobel Prize in Economics. Presumably, some of these assets were converted into cash in the intervening period, but an expert analysis of the source and uses of those proceeds would be necessary in order to make a meaningful comparison between the Stipulation of Settlement and the July 2002 Offer. In addition, the July 2002 Offer addresses the Ordway Property, but does not assign a value to the property at that time. The Stipulation of Settlement states that the Ordway Property had been sold and the expected net proceeds were $2,550,000 before payment of the outstanding mortgage and fees. Hence, once again, a meaningful comparison of the Stipulation of Settlement and the July 2002 Offer cannot be made regarding this asset without expert analysis. Finally, the July 2002 Offer contemplates paying maintenance, while the Stipulation of Settlement specifically states that there will be no maintenance. All of these assets would have to be valued and included in the marital estate in order to make a meaningful comparison as to whether or not the Stipulation of Settlement was more or less favorable to Dr. Stiglitz. Dr. Stiglitz has not even attempted to do this in his Statement or his Response.

8.   Likewise, with respect to Dr. Stiglitz's second damages theory comparing the Stipulation of Settlement with the 2002 Hannaway Offer, the comparison also requires expert analysis. In this regard, as noted above, the first page of the Stipulation of Settlement includes a line item "Total Value of Joint Tangible Assets (Page 2)" in the amount of $1,860,140.12. Page two is a listing of the accounts, primarily checking and savings accounts, with the then-current balances. However, certain accounts listed on the Stipulation of Settlement, such as Union Bank of California, are not included in the 2002 Hannaway Offer. Likewise, page two of the Stipulation of Settlement includes items such as "Add-back for portion of Vanguard securities sold to pay Kroll," "Add-back for ML Securities sold for 6/04 residence purchase," and "Add-back for Fidelity securities sold for 6/04 residence purchase," none of which were included in the 2002 Hannaway Offer. Dr. Stiglitz does not address any of these differences in the Statement or in his Response.

9.   In addition, as noted above, page two of the Stipulation of Settlement lists "Total: Husband's Non-retirement Assets" at $325,380.26. It also lists "Total: Wife's Non-retirement Assets" at $177,372.23. Finally, it lists "Total: Joint Assets" of $1,860,140.12. These amounts total $2,362,892.61. On the first page of the Stipulation of Settlement, a credit of $207,000 is attributed against these assets as "Less Husband's $207,000 separate property credit," resulting in a net amount of $2,155,892.61. The comparable amounts listed on the schedule to the 2002 Hannaway Offer total $2,346,796 and include the categories of cash accounts of $1,962,671, life insurance of $50,792, and Nobel Prize in Economics of $333,333. The cash accounts included in the 2002 Hannaway Offer are different from the cash accounts included in the Stipulation of Settlement, and neither the life insurance nor the Nobel Prize in Economics are accounted for in the Stipulation of

Settlement.  Conversely, the 2002 Hannaway Offer does not include other items listed on the Stipulation of Settlement, including a life insurance policy in the amount of $3,505.43, an amount for the World Bank pension payments of $19,001.00, Folio*FN* in the amount of $9,589.79, and a 2000 Saab in the amount of $11,870.  When these amounts are added to the schedule attached to the 2002 Hannaway Offer, the total becomes $2,390,762.22, which is $234,869 <u>greater</u> than the amounts listed on the Stipulation of Settlement.  Thus, on its face, it appears the Stipulation of Settlement was more favorable to Dr. Stiglitz than the 2002 Hannaway Offer.

10.    There are numerous other problems in comparing the Stipulation of Settlement with the 2002 Hannaway Offer, none of which are addressed by Dr. Stiglitz in his Statement or his Response.  For example, the 2002 Hannaway Offer contemplates payment of maintenance under a complicated formula for an unspecified period of time.  No maintenance is paid under the Stipulation of Settlement.  There also are at least sixteen different Vanguard accounts at issue, and numerous checking and savings accounts.  In some cases balances for these accounts as of the applicable date are included in both the 2002 Hannaway Offer and the Stipulation of Settlement, but not for all.  In addition, in some cases the balances changed significantly over time, requiring tracing of the transactions within the accounts by an expert with experience performing tracings in order to make any meaningful determination as to how the assets in those accounts were distributed under the later Stipulation of Settlement.  Also, the 2002 Hannaway Offer proposed splitting the proceeds from the sale of the California property 50/50, with each receiving approximately $731,600.  Under the Stipulation of Settlement, Ms. Hannaway received $1,764,789 of the proceeds.  While this was offset by other assets awarded to Dr. Stiglitz, the net impact cannot be determined without a complete accounting of the total assets at each point in time.  Another account is titled "Extended Market Analysis" in the Hannaway Offer, valued at $119,511.  This asset is not listed in the Stipulation of Settlement.  Also, proceeds from the sale of the New Jersey residence are included in the 2002 Hannaway Offer -- a total of $204,173 was allocated to Ms. Hannaway and is included in the $3,207,415 of total assets allocated to her under the 2002 Hannaway Offer.  No amount was included for this asset in the Stipulation of Settlement.  Dr. Stiglitz does not address any of these complexities in the Statement or in his Response.  Moreover, once again, on its face, it appears the Stipulation of Settlement was more favorable to Dr. Stiglitz than the 2002 Hannaway Offer.

Aucone Decl., ¶¶ 6-10, Ex. A.

Stiglitz cannot now mask the need for expert testimony on damages by simply ignoring that

the alternative outcomes he seeks to compare are not apples to apples and that complex calculations

and analysis are required to prove the damages theory that he concedes he is presenting.[4]   Bank's Motion and accompanying Memorandum of Law presented detailed analysis from Bank's damages expert explaining  why the damages theory Stiglitz seeks to present requires expert testimony and how the damages analysis set forth in Stiglitz's Amended Pretrial Statement reflects attempted expert testimony.

Stiglitz's Response does not even attempt to address Aucone's points.  For example, Stiglitz does not respond to the fact that he now is completely ignoring that the New York Settlement, the 2002 Hannaway Offer, and the July 2002 Offer were structured entirely differently and included different assets valued at different points in time.   Stiglitz also completely ignores Aucone's testimony that Stiglitz's damages analysis, even as selectively articulated in his Amended Pretrial Statement, clearly reflects the type of effort that can only be done properly by a qualified expert.  For example, with respect to the Vanguard account, Stiglitz admittedly performed complex investment projections of future stock values in order to calculate the value of the account if he hypothetically had retained and invested the funds in that account, which is exactly the kind of calculation that can properly be completed only by a qualified expert and that is beyond the purview

---

[4] The cases that Stiglitz cites regarding lost profits are inapplicable.  As an initial matter, the case law on lost profits, including case law that Stiglitz cites, makes clear that business owners are not competent to testify as lay witnesses about lost profits in every instance and that their testimony will be precluded unless they are found to have the requisite personal knowledge.  *See, e.g., Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 171 (5th Cir. 2010) (expert testimony may be required where issues concerning lost profits are highly technical); *Von der Ruhr v. Immtech Int'l Inc.*, 570 F.3d 858, 863 (7th Cir. 2009) (precluding company president's testimony on lost profits because he did not "possess the necessary personal knowledge to give a useful lay opinion based on his perception"); *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009) (precluding company president's lost profits testimony because the "proposed testimony regarding lost profits amounts to speculation and conjecture because he failed to perform any analysis of a viable market for the solar salt he expected to receive from Broken Arrow and he lacked relevant and recent activity in the solar salt market").  More importantly, the damages testimony that is at issue here is not even comparable to testimony on the single element of lost profits.  The damages theory that Stiglitz presents requires the comparison of different property distribution outcomes in the context of a highly complex financial situation.  Aucone Decl., ¶¶ 2, 5, Ex. A.  Each of the outcomes is structured differently and involves different assets valued at different points in time.  *Id.* ¶¶ 2, 5-10.  The damages testimony that is required under Stiglitz's damages theory simply is not comparable to testimony by a business owner as to lost profits.

of a lay witness.[5]  *See* Bank Memorandum of Law in Support of Bank's Motion, at 15 (Docket No. 80-1).

Indeed, Stiglitz's only response to Bank's damages expert is that Stiglitz should be allowed to testify about his damages calculations and Bank's sole remedy is to cross-examine him.  *See* Stiglitz's Response, at 13 ("While the Defendant's expert obviously raised a series of issues with Plaintiff's damages analysis, the issues raised by Defendant's expert are subjects for cross-examination, not preclusion of the testimony.")  This argument is unfounded.  As Stiglitz previously conceded, and as Bank's damages expert has confirmed, Stiglitz must present expert testimony in order to prove his damages claims under the theory he has adopted.  And, Stiglitz is trying to do just that, regardless of how he attempts to use smoke and mirrors to pretend to be doing something different in order to avoid the Court's prior Orders.  Stiglitz failed to designate a damages expert in a timely fashion and the Court has precluded him from offering such expert testimony.[6]  He cannot

---

[5] Stiglitz asserts in his Response that, because he doesn't "want" to provide expert testimony anymore, he no longer will discount future World Bank pension payments to present value.  In support for the assertion that he can unilaterally decide not to discount these future payments, Stiglitz cites *Schleier v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 876 F.2d 174 (D.C. Cir. 1989).  As an initial matter, *Schleier* expressly noted that it did not reach the issue as to which party held the burden of introducing guidance regarding present value calculations into the record, and noted that the Courts of Appeal are split on this issue.  *Id.* at 179-80.  In any event, at issue here is not simply how much Stiglitz can recover in damages based on future pension payments he will make.  Under his own damages theory, in order to show that he was damaged at all, Stiglitz must show that the net economic result under the New York Settlement was less favorable to him than the net economic outcome he would have realized under the 2002 Hannaway Offer or the July 2002 Offer.  In order to make this comparison and show how he purportedly was damaged based on Bank's alleged malpractice, Stiglitz must accurately calculate the value of the New York Settlement.  By refusing to discount future payments under the New York Settlement to present value, Stiglitz cannot make the comparisons he purports to make under his own damages theory and thus cannot prove his claim for damages.  Nevertheless, even assuming Stiglitz is not obligated to discount future World Bank pension payments to present value, for the reasons discussed herein and in Bank's Motion, under Stiglitz's damages theory, expert testimony on damages is still required in order to compare the alternative outcomes which all are structured differently and involve different assets measured at different points in time.

[6] Stiglitz argues in his Response that Bank is *improperly* asking the Court to determine "to what extent Plaintiff's testimony is based either upon his personal knowledge or his specialized knowledge, skill, experience, training or education."  Stiglitz Response, at 11 (internal quotation marks omitted).  There is nothing improper about this – it is exactly the issue at hand, namely, whether Stiglitz seeks to present expert testimony.  As Bank demonstrated in her Motion to Preclude Plaintiff's Purported Damages Evidence (Docket No. 46), Stiglitz has not met the requisite standards under *Daubert*, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence to act as a damages expert.  The Court agreed and has already closed the gate to Stiglitz offering any expert testimony on damages.  The

now present expert testimony cloaked in lay witness clothing and claim that cross-examination is

Bank's remedy.  Cross examination comes into play only after Stiglitz first presents admissible

testimony establishing damages on some rational basis; he cannot do that without expert testimony.

In short, Stiglitz's current arguments represent yet another attempt to circumvent the Court's clear

and unambiguous determination that Stiglitz cannot present expert testimony on damages.

### B.       Legal Fees

Stiglitz seeks legal fees and costs that he paid in New York that he says he would not have

paid in the District of Columbia, along with fees he paid on behalf of his ex-wife.  Although Stiglitz

asserts in his Response to Bank's Motion that his claim for legal fees is "straight forward," this

assertion is entirely inaccurate.  As an initial matter, the amount claimed does not match any earlier

iteration of Stiglitz's damages claim for legal fees and does not account for deductions previously

taken in earlier iterations.  *See* Memorandum of Law in Support of Bank's Motion, at 14 (Docket 80-

1).  In addition, Stiglitz does not account for the tax benefit that he appears to have received by

deducting legal fees on his tax returns.  *Id.*  Finally, with respect to Hannaway's fees, Stiglitz does

not account for any legal fees he would have had to pay in the District of Columbia, which would

offset this claim.  For these reasons alone, Stiglitz should be precluded from offering evidence of

this damages claim.

Stiglitz's claim for legal fees also should be precluded because it is entirely speculative as to

how the case would have proceeded in the District of Columbia and, thus, it is entirely speculative as

to the amount of fees that hypothetically would have been incurred.  *See* Bank's Memorandum of

Law in Support of Motion in Limine as to Scope of Glenn C. Lewis's Testimony (Docket No. 76-1).

---

only remaining issue is whether the evidence Stiglitz seeks to present at trial constitutes expert testimony.  As explained in Bank's Motion and herein, Stiglitz is attempting to present the exact same damages analysis as he was when he acknowledged that expert testimony was required and sought belatedly to designate Cragg as a damages expert and then tried act as his own damages expert.  Nothing has changed, his damages analysis still request expert

Indeed, Stiglitz's own standard of care expert, Lewis, admitted as much. *Id.* at 6-8.   Accordingly, any damages claim stemming from the purported difference in legal fees in New York as compared to the District of Columbia is entirely speculative. *See id.*[7]

## III.   LEWIS CANNOT TESTIFY AS TO THE COMPARISON OF THE NEW YORK SETTLEMENT WITH THE HYPOTHETICAL DISTRICT OF COLUMBIA RESULTS

Notwithstanding Stiglitz's initial argument that expert testimony is no longer required with respect to damages, Stiglitz goes on to assert that he now intends to rely on his standard of care expert, Glenn Lewis, to testify as to how the net economic result of the New York Settlement was less favorable to him than the hypothetical outcomes in the District of Columbia.   In this regard, Stiglitz quotes Lewis's expert report and asserts that Lewis has performed the requisite damages analysis comparing the alternative outcomes.   Stiglitz Response, at 14.   Stiglitz goes on to state that, accordingly, "Mr. Lewis is able to testify as to the outcome between the different proposals." *Id*.

This assertion is completely unfounded and *directly contrary* to Lewis's unequivocal testimony at deposition.   At deposition, Lewis confirmed definitively that he had relied completely on damages numbers calculated by Cragg and Stiglitz and that he is not a damages expert and thus had not *and could not* complete the computations that were required to calculate Stiglitz's alleged

---

testimony, and he should be precluding from presenting his damages claims.

[7] In this regard, Stiglitz's characterization of Bank's standard of care expert Rick Kuder's testimony regarding fees that would have been incurred in the District of Columbia is entirely misleading.   Contrary to Stiglitz's assertions, Kuder was not asked to and did not make any independent evaluation as to the amount of legal fees that would have been incurred in the District of Columbia.   To the contrary, Kuder testified only that, assuming every caveat laid out by Stiglitz's counsel happened to be true, including the speculative guess that the litigation would have ended by June 2002, Stiglitz's legal fees "maybe" would have been $125,000 to $225,000.   Kuder clarified, however, that this guesstimate related only to the specific scenario that Stiglitz's counsel described, and that these were "very fuzzy numbers" even based on that specific scenario. *See* Kuder Tr., at 104, attached to Stiglitz's Response as Ex. B. Accordingly, Stiglitz's purported reliance on Kuder's testimony in support of his claim for legal fees essentially equates to reliance on Lewis's speculations, which should be rejected for the reasons explained in Bank's Motion in Limine as to Scope of Glenn C. Lewis's Testimony and accompanying Memorandum of Law (Docket Nos. 76, 76-1).

damages.  Indeed, when asked specifically about whether he had completed damages calculations or

formed an independent opinion on damages, Lewis testified as follows:

> Q.     What I'm trying to get at is that I
> understand those -- the alleged damages in the
> case; and, actually since then it's been amended,
> because, as you said, Mr. Cragg has produced a
> report that purportedly supersedes Dr. Stiglitz.
> **What I'm trying to understand is whether you
> formed an opinion on damage numbers as opposed to
> breach of the standard of care.  In other words,
> did you independently assess:  Oh, yeah, here's
> how the numbers work; or is that simply a reliance
> on Dr. Stiglitz and his analysis?**
>
> **A.      It's a reliance on Stiglitz and others'
> analyses.  Perhaps just Stiglitz, but it could
> also be Cragg.  I think –**
>
> Q.     Right.
>
> A.     I think it's just Stiglitz, but yes, **I
> didn't run my own -- I didn't do the same analysis
> they did side by side and come up with my own
> numbers.**
>
> **Q.     Right.  And I just wanted to clarify
> that you're not going to turn up at trial and say,
> I ran all the numbers, did the economic work, and
> I came up with $3,460,000.  That's someone else's
> bailiwick?**
>
> **A.  I'm under oath.  I couldn't do the math.
> I don't think I could do it the way they did it,
> anyway.**

Lewis Tr., at 298:16-299:20, relevant portions attached hereto as Ex. B.  Thus, Lewis's testimony

could not be more clear or unequivocal that he has not and could not perform the complex damages

calculations that are necessary in this case and it provides further confirmation that expert testimony

on damages is required.  Lewis testified that he would not "turn up at trial" to testify as to the

amount of Stiglitz's alleged damages because he wasn't qualified to do so.  For Stiglitz now to assert

that Lewis has performed the requisite damages analysis and can "stand in" as Stiglitz's damages expert is nothing short of preposterous.

IV.     **CONCLUSION**

Stiglitz previously acknowledged that expert testimony on damages is required and tried on two occasions to present such expert testimony.  The Court precluded Stiglitz from doing so.  Nothing of substance has changed about Stiglitz's damages claims; expert testimony is still required.  Stiglitz now seeks to circumvent the Court's Orders by making two last-ditch efforts to save his damages claims, both of which fail.

Stiglitz first attempts to "dumb down" his damages numbers in order to mask the need for expert damages testimony, however, what he actually is doing is simply presenting an inaccurate and incomplete representation of his damages analysis.  Stiglitz cannot simply testify as to what he paid in New York and claim damages.  This is not Stiglitz's damages theory nor is it a cognizable damages claim.  As Stiglitz concedes, under his damages theory he must show that the net economic result that he realized in New York was less favorable than the net economic result that he would have realized in the District of Columbia but for Bank's alleged malpractice.  To do so absolutely requires the testimony of a damages expert because the alternative outcomes are complex, differently structured, and involve different assets at different points in time.

No doubt recognizing that it is not viable simply to ignore the complexities of his damages analysis and pretend that expert testimony on damages no longer is necessary, Stiglitz then attempts to assert that Glen Lewis, his standard of care expert, can simply fill in as his damages expert.  The fundamental problem with this newly concocted argument is that Lewis testified unequivocally that he had not *and could not* complete the complex damages calculations that are required here.

Accordingly, for the reasons discussed in Bank's Motion and herein, the Court should reaffirm its prior order precluding Stiglitz from offering evidence of his damage claims.

Respectfully submitted,

_____/s/ Richard A. Simpson_____
Richard A. Simpson, D.C. Bar No. 411893
Mary E. Borja, D.C. Bar No. 442462
Kimberly A. Ashmore, D.C. Bar No. 974326
WILEY REIN, LLP
1776 K Street, N.W.
Washington, D.C.  20006
Phone: (202) 719-7000
Fax: (202) 719-7049
Email:  rsimpson@wileyrein.com
            mborja@wileyrein.com
            kashmore@wileyrein.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2011, a copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO REAFFIRM THE COURT'S ORDER PRECLUDING PLAINTIFF'S PURPORTED EVIDENCE OF DAMAGES CLAIMS THAT REQUIRE TESTIMONY BY A DAMAGES EXPERT was filed electronically with the Court through the Court's Electronic Filing System, which will send notification of such filing to the following:

David G. Whitworth
WHITWORTH SMITH LLC
2101 Defense Highway
Crofton, MD 21114-2401
Phone: (301) 261-0035
Fax: (301) 251-0114
Email: dwhitworth@wslegalmal.com

Linda M. Hamilton
LAW OFFICES OF LINDA M. HAMILTON
1300 Mercantile Lane
Suite 149
Largo, MD 20774
Phone: (301) 925-7833
Fax: (301) 925-8368
Email: pglawi@aol.com

Wes Patrick Henderson
HENDERSON LAW, LLC
1153 Maryland State Route 3N
Suite 46
Gambrills, MD 21054
(410) 215-1728
Email: wph@hendersonlawllc.com

_____ s/ Richard A. Simpson _____
Richard A. Simpson
*Attorney for Defendant*